1   Douglas Caiafa, Esq. (SBN 107747)
    DOUGLAS CAIAFA, A Professional Law Corporation
2   11845 West Olympic Boulevard, Suite 1245
    Los Angeles, California 90064
3   (310) 444-5240 - phone; (310) 312-8260 - fax
    Email: dcaiafa@caiafalaw.com

4   Christopher J. Morosoff, Esq. (SBN 200465)
    LAW OFFICE OF CHRISTOPHER J. MOROSOFF
5   77-760 Country Club Drive, Suite G
    Palm Desert, California 92211
6   (760) 469-5986 - phone; (760) 345-1581 - fax
    Email: cjmorosoff@morosofflaw.com

7   Attorneys for Plaintiffs JOSE JACOBO, et al.

8

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                  WESTERN DIVISION

13  JOSE JACOBO, an individual; and          )  Case No. 2:15-cv-04701-MMM-AGRx
    THERESA METOYER, an individual;          )
14  individually and on behalf of all others )
    similarly situated,                      )  FIRST AMENDED CLASS ACTION
15                                           )           COMPLAINT
16                          Plaintiffs,      )
                                             )  1. UNFAIR BUSINESS PRACTICES;
17                                           )  2. FRAUDULENT BUSINESS
              vs.                            )       PRACTICES;
18                                           )  3. UNLAWFUL BUSINESS
                                             )       PRACTICES;
19  ROSS STORES, INC., a Delaware            )  4. FALSE ADVERTISING; and,
    Corporation; and DOES 1 through 10,      )  5. VIOLATION OF CALIFORNIA
20  inclusive,                               )       CONSUMER LEGAL REMEDIES
                                             )       ACT
21                                           )
                                             )
22                          Defendants.      )
                                             )
23                                           )
                                             )
24  _____   )

25

26

27

28

_____
              FIRST AMENDED CLASS ACTION COMPLAINT

This First Amended Class Action Complaint ("Complaint") is brought by individual consumers in California against retailer ROSS STORES, INC. ("Defendant") for using false, deceptive, or misleading comparative reference prices on the price tags of the products sold in Ross Dress for Less ("Ross") stores in California. Plaintiffs JOSE JACOBO ("Jacobo") and THERESA METOYER ("Metoyer") (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated (collectively referred to as "Class Members"), bring this action against Defendant, and for causes of action against Defendant, based upon personal knowledge, information and belief, and investigation of counsel, allege as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) (the Class Action Fairness Act of 2005 ("CAFA")) because the amount in controversy exceeds the value of $5,000,000, exclusive of interest and costs, because the Class consists of 100 or more putative Class Members, and because at least one putative Class Member is diverse from Defendant, a Delaware corporation with its principal place of business in Dublin, California.

2.  This is a civil action brought under and pursuant to California Business & Professions Code §17200, *et seq*. (the Unfair Competition Law or "UCL"), California Business & Professions Code §17500, *et seq*. (the False Advertising Law or "FAL"), and California Civil Code §1750, *et seq*. (the California Consumer Legal Remedies Act or "CLRA").

3.  Venue is proper in the Western Division of the Central District of California because Defendant transacts a substantial amount of business in this District, Plaintiff Jacobo resides in Los Angeles County, California, and the transactions which form the basis of Jacobo's claims against Defendant

- 1 -
FIRST AMENDED CLASS ACTION COMPLAINT

occurred in the cities of La Puente and City of Industry, in Los Angeles County, California.

4. The Central District of California has personal jurisdiction over the Defendant named in this action because Defendant is a corporate business entity authorized to do business in the State of California and registered with the California Secretary of State to do business, with sufficient minimum contacts in California.  Defendant has otherwise intentionally availed itself of the California market through the ownership and operation of approximately 240 retail stores within the State of California, such that the exercise of jurisdiction over Defendant by the California courts is consistent with traditional notions of fair play and substantial justice.

5. Defendant transacts business within the county of Los Angeles, and elsewhere throughout the State of California.  The violations of law alleged herein have been carried out within the County of Los Angeles and throughout the State of California.

## INTRODUCTION

6. A product's regular price, the price at which a product generally sells for in the marketplace, matters to consumers.  The price that a product generally sells for in the marketplace provides important information to consumers about the product's worth and the prestige that ownership of that product conveys.  Many retailers these days use comparative reference prices to assure their customers that their sale prices are lower than the prices their products regularly sell for at other retailers in the marketplace.

7. This is a case about one of the nation's largest retailers, Ross, using deceptive comparative prices at each of its California stores to trick its customers into mistakenly believing that the selling prices of products at Ross stores are significantly lower than the regular prices of those products at other retailers in California.  Plaintiffs are typical reasonable American

FIRST AMENDED CLASS ACTION COMPLAINT

consumers who, like all reasonable consumers, are motivated by the promise of a good deal.  Defendant is a large national retailer that makes enormous profits by promising consumers a good deal.  Defendant owns and operates a chain of so called "off-price" department stores in California known as Ross stores.  Plaintiffs occasionally shop at Ross because of Defendant's promise that they can get name brand products for 20 to 60% below department store prices.  Defendant supports that promise with price tags on each item in each store which feature Defendant's selling prices alongside much higher supposedly comparative prices.  The comparative prices assure consumers like Plaintiffs that they are receiving an exceptionally good deal and saving a specific dollar amount equal to the difference between the two prices.  Defendant's price tags deceptively instruct customers to "compare" the selling prices of Defendant's products to these higher comparative reference prices.  The comparative prices, however, are deceptive.  They are not true, bona fide, or properly substantiated comparative prices.  They are not what typical, reasonable consumers, like Plaintiffs, think they are.  Defendant does not adequately, clearly, or conspicuously disclose to consumers what its "Compare At" reference prices are.  There are no definitions or disclosures at or near the comparative price representations made on the price tags of the items sold at Ross stores in California.  Plaintiffs, having been duped by Defendant's deceptive pricing practices like all other Ross customers, bring this action against Defendant for false, deceptive and misleading advertising on behalf of themselves and all other consumers who have purchased items at Ross stores in California throughout the period from June 20, 2011, to the present (the "Class Period").

## PARTIES

8.    Plaintiff Jacobo is, and at all times relevant hereto has been, an individual and a resident of Los Angeles County, California.  On over 10 occasions

FIRST AMENDED CLASS ACTION COMPLAINT

throughout the Class Period, Jacobo purchased products from the La Puente and City of Industry, California, Ross stores which were falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices.  The marked "Compare At" prices for the products which Jacobo purchased from Defendant were not actual prices at which substantial and significant sales of those products were made at other principal retail outlets in California.  Jacobo purchased products from Defendant throughout the Class Period in reliance on Defendant's false, deceptive and misleading advertising, marketing and pricing schemes, which he would not otherwise have purchased absent Defendant's deceptive advertising and pricing scheme, and Jacobo has lost money and/or property, and has been damaged as a result.  Jacobo is a reasonable consumer.

9.    Plaintiff Metoyer is, and at all times relevant hereto has been, an individual and a resident of Riverside County, California.  On over 10 occasions throughout the Class Period, Metoyer purchased products from the Hemet, Beaumont, Indio, and Mira Loma, California, Ross stores which were falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices.  The marked "Compare At" prices for the products which Metoyer purchased from Defendant were not actual prices at which substantial and significant sales of those products were made at other principal retail outlets in California.  Metoyer purchased products from Defendant throughout the Class Period in reliance on Defendant's false, deceptive and misleading advertising, marketing and pricing schemes, which she would not otherwise have purchased absent Defendant's deceptive advertising and pricing scheme, and Metoyer has lost money and/or property, and has been damaged as a result.  Metoyer is a reasonable consumer.

FIRST AMENDED CLASS ACTION COMPLAINT

10. Defendant is a Delaware corporation, organized under the laws of the state of Delaware, which conducts substantial business on a regular and continuous basis in the state of California.  Defendant's principal place of business is in Dublin, California.

11. The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue such Defendants under fictitious names.  Plaintiffs are informed and believe, and on that basis allege, that these Defendants, DOES 1 through 10, are in some manner or capacity, and to some degree, legally responsible and liable for the damages of which Plaintiffs complain.  Plaintiffs will seek leave of Court to amend this Complaint to set forth the true names and capacities of all fictitiously-named Defendants within a reasonable time after they become known.

## FACTUAL ALLEGATIONS

12. During the Class Period, Plaintiffs bought apparel and other items from various Ross stores in Southern California.

13. Plaintiffs were each lured into Defendant's stores with the promise of significant savings on name brand merchandise such as, without limitation, apparel, handbags, shoes, and bed, bath and home items.

14. Plaintiffs would each shop at Ross stores in California in the future if they could be assured that the comparative reference prices advertised by Defendant were true and accurate reference prices.

**I.   Defendant Labels Its Products With "Compare At" Reference Prices**:

15. Each item offered for sale at Ross is displayed with a comparative price tag which provides 2 prices: the Ross sale price, and another significantly higher price described simply as the "Compare At" price.

16. The price tags used by Defendant at Ross stores throughout California are identical in all material respects.  They each have a sale price (i.e., a price at

FIRST AMENDED CLASS ACTION COMPLAINT

1  which Defendant is selling the item for), and a higher comparative reference

2  price listed above the sale price accompanied by the phrase "Compare At."

3  17.  The price tags do not tell consumers what the phrase "Compare At" means,

4  or give any information about the comparative price other than the dollar

5  amount and the phrase, "Compare At." Nor are consumers told where

6  Defendant came up with the "Compare At" price. They are simply

7  presented with the 2 prices (the sale price, and the higher "Compare At"

8  reference price), left to guess what the "Compare At" price is, and are led to

9  believe that they are actually saving the difference between the 2 prices.

10  **II.**   **Comparative Reference Prices Are Material to Consumers**:

11  18.  Defendant compares the prices of its products with higher reference prices

12  which consumers are led to believe are the prices supposedly charged by

13  other merchants for the same products. Defendant labels those higher

14  comparative prices as the "Compare At" prices for those products.

15  19.  This type of comparison pricing, where the retailer contrasts its selling price

16  for a product with a generally much higher reference price, has become

17  increasingly common in the retail marketplace.

18  20.  Retailers, like Defendant, present these reference prices (commonly referred

19  to as "advertised reference prices" or "ARPs") to consumers with short tag-

20  line phrases such as "former price," "regular price," "list price," "MSRP," or

21  "compare at." These marketing phrases are commonly referred to as

22  "semantic cues."

23  21.  Over 30 years of marketing research unanimously concludes that semantic

24  cues presented with comparative reference prices, such as Defendant's use

25  of the phrase "Compare At" on its price tags, are material to consumers.

26  That is, they influence consumers' purchasing decisions.

27  22.  For example, a well-respected and oft-cited study by Dhruv Grewal & Larry

28  D. Compeau, *Comparative Price Advertising: Informative or Deceptive?,* 11

- 6 -

**FIRST AMENDED CLASS ACTION COMPLAINT**

J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992), concludes that "[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product." In other words, comparative reference prices lead consumers to believe they are saving money, and increase their willingness to buy products.

23. Numerous other consumer and marketing research studies arrive at similar conclusions. For example, Compeau & Grewal, in *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002), conclude that "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." They also conclude that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

24. Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011), conclude that "[r]eference price ads strongly influence consumer perceptions of value. . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."

25. Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003), similarly conclude that "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."

FIRST AMENDED CLASS ACTION COMPLAINT

26. The belief that they are paying a specific amount less than the market retail price of a product, in and of itself, creates a quantifiable value to consumers, including Plaintiffs. When a deceptive reference price leads a reasonable consumer to mistakenly believe he or she is paying less than the market retail price of a product, then the actual value of the product is less than the consumer believed and less than the amount the consumer paid. Because of the false or misleading reference price, the product actually has less value than the consumer believes it has, and therefore the consumer paid more for the product than the value he or she actually received.

27. The results of a study by Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990), conclude that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." This study further concludes that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."

28. Consumers place a higher value on products that have reference prices higher than the selling price. When those reference prices are not what the consumer believes them to be – when they are not true, accurate, verified reference prices – then the consumer pays an additional amount for value he or she does not actually receive, equal to the false savings.

29. The indisputable conclusion of decades of scholarly research concerning comparative reference prices, such as the "Compare At" reference prices used by Defendant, is that they matter – they are material to consumers.

## III. **Defendant Has a Duty to Verify Its "Compare At" Prices**:

30. The FTC requires that "[a]dvertisers must have evidence to back up their claims ("substantiation"). . . . Before disseminating an ad, advertisers must

FIRST AMENDED CLASS ACTION COMPLAINT

have appropriate support for all express and implied objective claims that the ad conveys to reasonable consumers. When an ad lends itself to more than one reasonable interpretation, there must be substantiation for each interpretation. The type of evidence needed to substantiate a claim may depend on the product, the claims, and what experts in the relevant field believe is necessary."

31. Plaintiffs are informed and believe, and on that basis allege, that Defendant does not have sufficient evidence to substantiate the validity of its "Compare At" reference prices.

32. The FTC Pricing Guides, 16 C.F.R. §233.2, provide rules for merchants such as Defendant that claim "to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area."

33. The FTC Pricing Guides require that when merchants such as Defendant use advertising that compares their prices to higher comparative prices for the same merchandise, "the advertised higher price must be based on fact, and not be fictitious or misleading."  The FTC Pricing Guides further provide:

> "Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which *substantial sales* of the article are being made in the area - that is, *a sufficient number of sales* so that a consumer would consider a reduction from the price to represent a genuine bargain or saving." (Emphasis added).

34. Defendant thus has, and has had, a duty to provide "appropriate support" for, and "evidence to back up," its "Compare At" reference prices.

35. Defendant has, and has had, a duty to verify that its "Compare At" reference prices do not "appreciably exceed the price at which substantial sales" of its products have been made in California.

36. Plaintiffs are informed and believe, and on that basis allege, that Defendant does not have such evidence, and has not in fact verified that its "Compare

- 9 -

FIRST AMENDED CLASS ACTION COMPLAINT

1   At" reference prices do not "appreciably exceed the price at which

2   substantial sales" of its products have been made in California.

3   37.   Where the advertiser's comparison price is purportedly based on prices

4   being charged for similar or "comparable" products, the FTC Pricing Guides

5   require that the advertiser make "clear to the consumer that a comparison is

6   being made with other merchandise and the other merchandise is, in fact, of

7   essentially similar quality and obtainable in the area."  In such a case:

8   "The advertiser should, however, be reasonably certain, just as in the
9   case of comparisons involving the same merchandise, that the price
    advertised as being the price of comparable merchandise does not
10  exceed the price at which such merchandise is being offered by
11  representative retail outlets in the area."

12  38.   Where the advertiser's comparison price is purportedly based on a

13  manufacturer's suggested retail price ("MSRP"), the FTC Pricing Guides

14  provide as follows:

15  "Many members of the purchasing public believe that a
    manufacturer's list price, or suggested retail price, is the price at
16  which an article is generally sold. Therefore, if a reduction from this
    price is advertised, many people will believe that they are being
17  offered a genuine bargain. To the extent that list or suggested retail
    prices do not in fact correspond to prices at which *a substantial*
18  *number of sales* of the article in question are made, the advertisement
    of a reduction may mislead the consumer." (Emphasis added).
19  . . .

20  "[t]he widespread failure to observe manufacturer's suggested or list
    prices, and the advent of retail discounting on a wide scale, have
21  seriously undermined the dependability of list prices as indicators of
    the exact prices at which articles are in fact generally sold at retail. . . .
22  Today, only in the rare case are all sales of an article at the
    manufacturer's suggested retail or list price."
23

24  39.   According to the FTC Pricing Guides, an advertised MSRP:

25  "[w]ill not be deemed fictitious if it is the price at which *substantial*
    *(that is, not isolated or insignificant) sales* are made in the
26  advertiser's trade area (the area in which he does business).
    Conversely, if the list price is significantly in excess of the highest
27  price at which *substantial sales* in the trade area are made, there is a
    clear and serious danger of the consumer being misled by an
28  advertised reduction from this price. . . . [B]efore advertising a

- 10 -

**FIRST AMENDED CLASS ACTION COMPLAINT**

manufacturer's list price as a basis for comparison with his own lower price, the retailer should ascertain whether the list price is in fact the price regularly charged by principal outlets in his area." (Emphasis added.).

40. The FTC concludes, in its Pricing Guides, that advertising an MSRP as a comparative reference price is "deceptive" if only "an insubstantial volume of sales" of the product in question have been made at the advertised MSRP in the retailer's trade area. Use of an MSRP as a comparative reference price is not considered "deceptive" if "[i]n a *substantial number of representative communities*, *the principal retail outlets* are selling the product at this price in the regular course of business and *in substantial volume*." (Emphasis added).

41. Defendant thus has, and has had, a duty to verify that its "Compare At" reference prices are and have been prices at which substantial sales of its products are and have been made at a substantial number of other principal retail outlets in California.

## IV.  **Defendant Does Not Adequately Verify Its "Compare At" Prices**:

42. Plaintiffs are informed and believe, and on that basis allege, that when Defendant advertised prices as "Compare At" prices on the price tags of items sold in its California Ross stores, Defendant was not reasonably certain that the higher prices it advertised did not appreciably exceed the prices at which *substantial sales* of the items were being made in California.

43. The "Compare At" prices on Defendant's price tags, including those alleged to be MSRPs, were not prices at which *substantial sales* of those products were made in California.  Rather, the "Compare At" reference prices advertised by Defendant, including those alleged to be MSRPs, were significantly in excess of the highest prices at which *substantial sales* of those products were made in California.

FIRST AMENDED CLASS ACTION COMPLAINT

44.   Plaintiffs are informed and believe, and on that basis allege, that Defendant did not ascertain whether the "Compare At" prices on its price tags, including those alleged to be MSRPs, were in fact the prices regularly charged by a substantial number of principal outlets in California, or whether its "Compare At" prices were prices at which *substantial sales* of such products were made in California.

45.   Plaintiffs are informed and believe, and on that basis allege, that Defendant systematically and routinely used unverified comparative prices, including supposed MSRPs, as comparative reference prices for its products which are not, in fact, prices at which those products sold, or are selling, in any substantial volume at the "principal retail outlets" in California.  Thus, Defendant's "Compare At" prices are, and have been throughout the Class Period, deceptive.

46.   Plaintiffs are informed and believe, and on that basis allege, that often Defendant has not determined or verified the prices other merchants charge for the identical products it sells.  Rather, Defendant has used various misleading methods to make up prices which it claims other merchants charge for those products, and then claims that its own prices are significantly lower than those "Compare At" reference prices.

47.   Defendant's decision to use unverified reference prices, including supposed MSRPs, was likely to deceive consumers, including Plaintiffs, by, among other things, representing that the marketplace had assigned retail prices to its products, and that Defendant's discount off those retail prices made Defendant's prices attractive.  Defendant's misrepresentation of the "Compare At" prices as actual prices at which substantial sales of its products had been made in California was deceptive, misleading, unlawful, unfair, and/or fraudulent.

FIRST AMENDED CLASS ACTION COMPLAINT

**V.    Defendant's "Compare At" Reference Prices Are Misleading, Deceptive, and/or False**:

48.    The result of Defendant's failure to verify its "Compare At" prices, and to otherwise use inflated and/or untrue reference prices, was that consumers, including Plaintiffs, were misled into believing that they were receiving substantial savings on the purchase of Defendant's products when compared to prices charged for those same products at other retailers.  Plaintiffs and other Class Members were misled into paying more for Defendant's products than they would have paid for identical products sold by other merchants.

49.    Plaintiffs were confronted with ARPs on the items they purchased from Defendant, accompanied by the undefined, unqualified phrase, "Compare At."  Plaintiffs reasonably believed, like all reasonable consumers, that the "Compare At" prices represented the prices that they would expect to pay for those same products at other retailers in their general area.  In other words, Plaintiffs reasonably believed that the "Compare At" prices referred to the then prevailing retail prices for those same items - that if they left Defendant's store and shopped around for those same products, they would likely find them elsewhere at the higher "Compare At" prices provided by Defendant.

50.    Defendant, however, had a different definition of what it meant by "Compare At" - a definition undisclosed to consumers and not consistent with the common meaning of the phrase "compare at."

51.    Had Plaintiffs been savvy enough, and stopped their shopping to get to a computer, log onto Defendant's website, find the "Compare at Pricing" hyperlink in fine print at the bottom of the page (alongside Defendant's "Terms of Use," "Privacy Policy," and other related hyperlinks) and click on

1   that hyperlink, Plaintiffs would have found Defendant's definition of

2   "Compare at" as follows:

3

4   "Compare at Pricing

5   We want you to shop with more information, so many of our products

6   include a comparison price. The comparison price represents a recent

7   documented selling price of the same or similar product in full-price

8   department stores or specialty stores. Where identical products are not

9   available we may compare to similar products and styles. Prices

10  charged for the compared to products may change over time, but our

11  goal is to provide you with a useful comparison point of what you

12  may have paid in a competitive store, so you can be sure you are

13  getting a great bargain when you shop at Ross."

14

15  **A.**   **Reasonable Consumers Do Not Interpret Defendant's "Compare**

16  **At" Prices to be Prices Defendant Believes to be Prices of Similar**

17  **Products**:

18  52.   Reasonable consumers believe that ARPs are real, verified comparative

19  retail prices.  Reasonable consumers believe that ARPs are not numbers that

20  retailers estimate or make up.  Reasonable consumers believe that an ARP

21  advertised with the phrase, "Compare At," is a verified retail price for the

22  same item.

23  53.   Reasonable consumers do not understand an ARP to be a manufacturer's

24  suggested retail price ("MSRP") unless the ARP is advertised with the term

25  "MSRP."

26  54.   A 2004 study in The Journal of Consumer Affairs by Larry D. Compeau,

27  Ph.D., *et al*., has concluded that the average reasonable consumer interprets

28  the term "compare at," when presented in comparison to a lower selling

- 14 -
FIRST AMENDED CLASS ACTION COMPLAINT

price for an item, to refer to "prices found in a 'regular price' department store." (The Journal of Consumer Affairs, Vol. 38, No. 1, 2004, at 184).

55. Reasonable consumers, including Plaintiffs, believe the "Compare At" reference prices on Defendant's price tags to be the prices at which other merchants supposedly sell the same products.

56. A reasonable consumer would interpret Defendant's "Compare At" prices as the prices at which a substantial number of vendors are selling the identical products.

57. Defendant does not, and did not, make clear to consumers that a comparison is, and was, being made with other similar products.

58. Nowhere on Defendant's price tags, or in Defendants' price advertising, is it made clear to consumers, including Plaintiffs, that the advertised "Compare At" price is merely what Defendant believes to be the price of a "similar" product.

59. Consumers should not have to sleuth their way into Defendant's website just to find Defendant's, ambiguous, contradictory, misleading and non-intuitive interpretation of what it means by the phrase "Compare At."

60. Even if a consumer were to find Defendant's interpretation of the phrase "Compare At" on its website before purchasing a product from Ross, it is still not clear from Defendant's definition exactly what the "Compare At" price actually is.

61. Viewed in light of Defendant's definition, Defendant's "Compare At" price could be the regular, retail price of the same item at other department stores. Or, it could be the regular, retail price of a "similar" product. It could simply be what Defendant believes a similar product might sell for. Or, it could be none of the above. It may be that the particular item, or even a comparable item, was never offered for sale at the "Compare At" price by

FIRST AMENDED CLASS ACTION COMPLAINT

any other retailer.  And consumers, even if they were to find Defendant's definition, would still be left to guess what a "similar" product might be.

62.     Defendant's depiction of prices, as described herein, deceptively represented to consumers, including Plaintiffs, that the "Compare At" price was the price at which the product typically sold in the marketplace, from which Defendant offered a discount.

63.     Plaintiffs are informed and believe, and on that basis allege, that the "Compare At" prices advertised by Defendant were not the then prevailing retail prices for the products that they purchased from Ross.

64.     Nowhere on Defendant's price tags, or in Defendant's price advertising, is it made clear to consumers, including Plaintiffs, that the advertised "Compare At" price is not the price at which a substantial number of vendors are selling the identical product.

65.     Nowhere on or near Defendant's price tags does Defendant disclose to consumers, including Plaintiffs, what the "Compare At" price is, where Defendant came up with the "Compare At" price, or what Defendant means by the term "Compare At."

66.     The Better Business Bureau ("BBB") Code of Advertising suggests that if a retailer means to compare its selling price to a higher reference price of supposed identical merchandise, the retailer should use clear language in its advertising such as "selling elsewhere at."

67.     If the reference price provided by Defendant is meant to be the price of a "comparable item," then the semantic cue (or phrase) placed on the price tag by Defendant should inform the consumer that the reference price is supposedly the "original price" of a "comparable item."

68.     The BBB Code of Advertising suggests that if a retailer means to compare its selling price to a higher reference price of comparable merchandise, the retailer should use clear language in its advertising such as "comparative

FIRST AMENDED CLASS ACTION COMPLAINT

value," "compares with merchandise selling at," or "equal to merchandise selling for."

69. Confronted with the simple phrase, "Compare At," a reasonable consumer would believe that the higher reference price represents the price at which the same item currently sells for in the marketplace – the then-prevailing retail or market price.

70. Plaintiffs and all other Class Members reasonably relied upon Defendant's deceptive, misleading, and/or false representations of comparative prices and false representations of purported savings, discounts and bargains when purchasing merchandise from Defendant's California stores.

71. Plaintiffs did not, and reasonable consumers would not, interpret the semantic phrase "Compare At" the way Defendant interprets it.

72. Defendant's use of the phrase "Compare At" in connection with its ARPs was, and is, false, misleading, and/or deceptive.

**B.   Defendant's "Compare At" Price Advertising Omits Necessary Information, Including Defendant's Purported Disclosure:**

73. At all times relevant herein, Defendant has been under a duty to Plaintiffs and all other Class Members to adequately disclose the truth about its "Compare At" prices.

74. The FTC, in its Policy Statement on Deception (Oct. 14, 1983), requires that advertisers must disclose material information to consumers if the disclosure of the information would "prevent the claim, practice, or sale from being misleading."

75. The FTC further states that "[a] misleading omission occurs when qualifying information necessary to prevent a practice, claim, representation, or reasonable expectation or belief from being misleading is not disclosed."

76. Defendant uses the phrase "Compare At" on the price tags each product offered for sale at Ross stores throughout California regardless of whether

FIRST AMENDED CLASS ACTION COMPLAINT

the product is a "close-out" item (one which was previously or currently sold at a full-price department store) or a "makeup" item (one that was produced exclusively for Defendant and sold only at Ross stores).

77. Defendant's 2014 Annual Report reveals that Defendant purchases "the vast majority of [its] merchandise directly from manufacturers," as opposed to the leftover or closeout items from department stores.  One buyer intern for Ross has revealed that as much as 70% of the inventory at Ross stores may consist of "make-up" items.  This means that the "vast majority" of the items sold at Ross, and advertised with "Compare At" reference prices, were never offered for sale at any other store or by any other retailer at the "Compare At" price.

78. When Defendant compares its selling price to a supposed "recent documented selling price" of an identical item previously sold at a full-price department store (a "close-out" item), Defendant does so by using the comparative reference phrase "Compare At."  In this case, Defendant is supposedly comparing apples-to-apples.  That is, the phrase "Compare At" supposedly instructs the consumer to compare Defendant's selling price to the price that the same exact product recently sold for at other retailers.

79. When Defendant compares its selling price to a supposed "recent documented selling price" of "similar product" (a "makeup" item), Defendant also does so by using the comparative reference phrase "Compare At."  In this case, Defendant is supposedly comparing apples-to-oranges. That is, the phrase "Compare At" supposedly instructs the consumer to compare Defendant's selling price not to the same exact product, but to the price that a "similar product" recently sold for at other retailers.

80. Defendant, however, does not disclose to consumers whether they are comparing the Ross price to the supposed recent price of the exact same

FIRST AMENDED CLASS ACTION COMPLAINT

product (apples-to-apples), or whether they are comparing the Ross price to the supposed price of a "similar product" (apples-to-oranges).

81. When Plaintiffs were exposed to Defendant's "Compare At" reference prices they, like all typical reasonable consumers, believed they were comparing apples-to-apples.  In reality, however, it is not clear whether they were comparing apples-to-apples, apples-to-oranges, or comparing a made-up, fabricated reference price.

82. Even if Plaintiffs, or any other Class Member, had seen and read Defendant's disclosure before purchasing a product from a Ross store in California, they would not have known whether they were comparing the Ross price to the price of an identical product or a "similar" product.

83. Thus, Defendant's "Compare At" reference prices are at best deceptive, misleading, and/or have a tendency or likelihood to mislead or confuse a reasonable consumer.

84. Defendant's "Compare At" reference prices therefore required, and continue to require, a qualifying disclosure because, amongst other things, Defendant defines and interprets the term "Compare At" in a way that reasonable consumers do not, and would not.

85. Defendant has in fact provided a qualifying disclosure, but that disclosure is ambiguous, unclear, and is buried on its website, and not clearly and conspicuously next to the "Compare At" reference prices, as required by FTC rules.

86. Studies, such as the 2004 study in The Journal of Consumer Affairs by Larry D. Compeau, Ph.D., *et al*., have concluded that the average reasonable consumer interprets the term "compare at," when presented in comparison to a lower selling price for an item, to refer to "prices found in a 'regular price' department store."  (The Journal of Consumer Affairs, Vol. 38, No. 1, 2004, at 184).  These studies also conclude that "about two-thirds" of consumers

"may be deceived by the 'Compare At' phrase if specific information regarding the comparison is not provided." Id. at 186.

87. Defendant attempts to provide that additional "specific information" by way of a disclosure accessible only through a hyperlink at the bottom of its web page, and in small print on signs in its stores not easily seen by, or made clear or conspicuous to, customers.  Defendants' disclosure is inadequate and does not comply with FTC rules and guidelines.

88. Where, as here, the retailer and the consumer do not share the same meaning of the comparative reference phrase ("Compare At"), and thus the term is open to more than one interpretation, the use of that term is misleading and deceptive.  The FTC states, in its Policy Statement on Deception, that "[w]hen a seller's representation conveys more than one meaning to reasonable consumers, one of which is false, the seller is liable for the misleading interpretation."

89. Defendant's own definition conveys more than one meaning.  Either the "Compare At" price refers to the supposed price of the "same" product or a "similar" product.  For any given product, one of those definitions must necessarily be false.  Even if Defendant's dual definitions are reasonable, for each and every item offered for sale at Ross stores in California, at least one of those definitions must be, and is, false.

90. It is a deceptive marketing act and/or practice for Defendant to define its reference prices as what it believes prices of the "same or similar" products, but fail to clearly and conspicuously disclose that definition to consumers.  If the reference prices provided by Defendant on the price tags of its products are meant to be prices of similar items, those price tags should say so.

91. Plaintiffs did not, and reasonable consumers would not, interpret the semantic phrase "Compare At" the way Defendant interprets it.

92.   Where, as here, the retailer ascribes a secret, undisclosed meaning to the phrase that differs from that which reasonable consumers, including Plaintiffs, would ascribe to it, the use of that term is deceptive, misleading, and/or likely to mislead reasonable consumers.

93.   It is a deceptive marketing act and/or practice for Defendant to fail to clearly and conspicuously disclose its definition or interpretation of its phrase "Compare At" to its customers.

94.   Defendant's use of the semantic term "Compare At" in connection with its ARPs for its products was, and is, false, misleading, and/or deceptive.

95.   Defendant's definition of the term "Compare At," which it failed to adequately disclose, provides material facts that a reasonable person would have considered material; i.e., facts that would contribute to a reasonable person's decision to purchase merchandise offered for sale by Defendant. Defendant's deceptive comparison reference prices, and/or false representations of discounts from misleading, deceptive, and/or false comparative prices, and false representations of purported savings, discounts and/or bargains, are objectively material to reasonable consumers.

96.   Plaintiffs and all other Class Members reasonably and justifiably acted and relied to their detriment on Defendant's failure to disclose, and concealment of, the truth about its comparative prices, in purchasing merchandise at Defendant's stores throughout California.

   **C.   Defendant's Failure to Adequately Disclose What Its "Compare At" Prices Are Violates FTC Guidelines:**

97.   The FTC provides detailed requirements concerning the use of purported disclosures in their ".com Disclosures" rules.

98.   Defendant provides a disclosure of its definition or interpretation of its "Compare At" prices on its website, and that disclosure therefore is subject

**FIRST AMENDED CLASS ACTION COMPLAINT**

to the FTC's ".com Disclosures" rules.  Defendant's disclosure is also subject to the FTC's Policy Statement on Deception.

99. The FTC has a "clear and conspicuous requirement" for advertising disclosures, which requires any such disclosures to be presented to consumers "clearly and prominently."  The FTC's "clear and conspicuous requirement" requires that "disclosures must be clear and conspicuous."

100. When making a disclosure related to an advertising claim, the FTC's clear and conspicuous requirement requires that "[d]isclosures should be placed as close as possible to the claim they qualify," or the "triggering claim."

101. The FTC requires that "[w]hen the disclosure of qualifying information is necessary to prevent an ad from being deceptive, the information should be presented clearly and conspicuously so that consumers can actually notice and understand it. A . . . disclaimer that is easily missed on a website [is] not likely to be effective. Nor can advertisers use fine print to contradict other statements in an ad or to clear up misimpressions that the ad would leave otherwise. . . . To ensure that disclosures are effective, advertisers should use clear and unambiguous language, [and] place any qualifying information close to the claim being qualified."

102. Even if the advertisement is small and space-constrained, the FTC requires that "[i]f a space-constrained ad contains a claim that requires qualification, the advertiser disseminating it is not exempt from disclosure requirements."

103. Defendant's "Compare At" reference prices require qualification.

104. Defendant's qualifying disclosures are not presented clearly or conspicuously, nor are they presented so that consumers can notice them.

105. Defendant's disclosures of qualifying information (i.e., that Defendants' "Compare At" reference prices are what it believes to be prices of the "same or similar" items) are not placed close to the "Compare At" claims.  They are placed on a website only accessible by linking to them through a

FIRST AMENDED CLASS ACTION COMPLAINT

1      hyperlink, and on signage in Defendants' stores that is not easily seen by,

2      nor made clear and/or conspicuous to, customers.

3  106.  Defendant does not, and did not, place any disclosure of qualifying

4      information regarding its "Compare At" reference prices close to the

5      "Compare At" claims.

6  107.  Plaintiffs did not see, and were not aware of, Defendant's disclosures.

7  108.  When using a hyperlink to lead to a disclosure, the FTC requires, among

8      other things, that the advertiser make the link "obvious."

9  109.  Defendant's hyperlinks to its disclosures are not obvious.

10  110.  The FTC's disclosure rules further provide that "[d]isclosures that are an

11      integral part of a claim or inseparable from it should not be communicated

12      through a hyperlink. Instead, they should be placed on the same page and

13      immediately next to the claim, and be sufficiently prominent so that the

14      claim and the disclosure are read at the same time, without referring the

15      consumer somewhere else to obtain this important information."

16  111.  Defendant's qualifying disclosures are an "integral part" of its "Compare

17      At" reference price claims. Those disclosures should not be or have been

18      communicated to consumers through a hyperlink. Those disclosures should

19      be, and should have been, placed on the price tags of Defendant's products

20      immediately next to the "Compare At" price claims.

21  112.  The FTC's disclosure rules further provide that "[a]dvertisers are responsible

22      for ensuring that their messages are truthful and not deceptive. Accordingly,

23      disclosures must be communicated effectively so that consumers are likely

24      to notice and understand them in connection with the representations that the

25      disclosures modify. Simply making the disclosure available somewhere in

26      the ad, where some consumers might find it, does not meet the clear and

27      conspicuous standard."

28

FIRST AMENDED CLASS ACTION COMPLAINT

113.   Defendant's disclosures do not meet the FTC's "clear and conspicuous standard."

114.   Defendant's failure to adequately disclose to Class Members, including Plaintiffs, its definition or interpretation of the phrase "Compare At" violates the FTC's "clear and conspicuous standard."

115.   The FTC's disclosure rules further provide that "[i]t is the advertiser's responsibility to draw attention to the required disclosures."

116.   Defendant does not draw attention to its disclosures.

117.   The FTC's disclosure rules further provide that "[d]isclosures must be effectively communicated to consumers before they make a purchase or incur a financial obligation."

118.   Defendant does not effectively communicate its disclosures concerning its "Compare At" prices to consumers before they make their purchase(s) at Ross stores in California.

119.   The FTC's Policy Statement on Deception provides that when determining whether an advertiser's disclosure is adequate, a court should consider "the totality of the ad or the practice and ask questions such as: how clear is the representation? how conspicuous is any qualifying information? how important is the omitted information? do other sources for the omitted information exist? how familiar is the public with the product or service?"

120.   Defendant's disclosure is not clear.  The qualifying information Defendant attempts to provide in its disclosure is not at all conspicuous.  The information provided by Defendant's disclosure is material to consumers, and thus very important to reasonable consumers' purchasing decisions.  Other than Defendant's disclosure, there are no other sources of for consumers to acquire the information provided by the disclosure.

121.   The FTC's disclosure rules further provide that "[i]f the disclosure needs to be in the ad itself but it does not fit, the ad should be modified so it does not

FIRST AMENDED CLASS ACTION COMPLAINT

require such a disclosure or, if that is not possible, that space-constrained ad should not be used. . . . If a disclosure is necessary to prevent an advertisement from being deceptive, unfair, or otherwise violative of a Commission rule, and if it is not possible to make the disclosure clear and conspicuous, then either the claim should be modified so the disclosure is not necessary or the ad should not be disseminated."

122. Defendant was required to put a qualifying disclosure on its price tags. Or, if putting a qualifying disclosure on its price tags was not possible, Defendant's "Compare At" reference prices should not have been, and should not be, used.

**D.    Defendant's Use of Reference Prices Violates California Law**:

123. Plaintiffs are informed and believe, and on that basis allege, that in advertising the "Compare At" price for a product, Defendant did not, and does not, actually present the prevailing market price for that product (i.e. the price at which other merchants were selling the identical product), or the price at which substantial sales of the product were made at principal retail outlets in California.  Rather, Defendant used, and continues to use, vague, misleading, and/or subjective measures to inflate the comparative prices, and thus artificially increase the discounts and savings it claims to be offering consumers.

124. Through its deceptive, misleading, and/or false marketing, advertising and pricing scheme, Defendant has violated, and continues to violate, California law which prohibits advertising goods for sale at a discount when compared to unsubstantiated prices at which other merchants purportedly sell the goods, and prohibits misleading statements about the existence and amount of comparative prices.  Specifically, Defendant has violated, and continues to violate, the UCL, the FAL, the CLRA, and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or

FIRST AMENDED CLASS ACTION COMPLAINT

affecting commerce" (15 U.S.C. §45(a)(1)), and specifically prohibits false advertisements (15 U.S.C. §52(a)).

125.   Under the FTCA, advertising must be truthful and non-deceptive, advertisers such as Defendant must have evidence to back up their claims, and advertisements cannot be unfair.

126.   Defendant's false and/or misleading comparative pricing representations made it more likely that consumers would purchase particular products from Defendant.  Defendant's misleading claims of significant discounts were likely to persuade consumers who were not inclined to purchase products at all to buy them from Defendant solely because they were misled into believing that they were getting an unusually good deal.

127.   Defendant's misrepresentations about its pricing were likely to mislead consumers, and in fact did mislead Plaintiffs, into believing that Defendant's prices would always be significantly lower than the prices offered by other merchants for the identical products.

128.   Defendant misrepresented the existence, nature and amount of price discounts by purporting to offer specific dollar discounts from expressly referenced comparative prices, which were misrepresented as "Compare At" prices.  These purported discounts were false, deceptive, and/or misleading, however, because the referenced comparative prices were not bona fide reference prices and did not represent true comparative prices for identical products sold by other merchants in California.

129.   Defendant has engaged in a company-wide, pervasive and continuous campaign of deceptively claiming that each of its products sold at a far higher price by other merchants in order to induce Plaintiffs and all Class Members to purchase merchandise at purportedly marked-down sale prices. California law prohibits such practices.

130.   Defendant's deceptive and misleading representations, as described herein, accompanied virtually every product sold in California Ross stores each and every day throughout the Class Period, and Defendant is still making such deceptive and misleading comparative price claims for many, if not all, of the products in its California stores.

131.   Throughout the Class Period Defendant routinely and systematically made untrue, deceptive, and misleading comparative advertising claims about the prices of its products, as described herein.

132.   Throughout the Class Period, Defendant's "Compare At" prices constituted material misstatements, and/or omitted material information about its comparative prices, that were likely to mislead reasonable consumers.

133.   Defendant has intentionally failed to disclose to, and/or fraudulently concealed from, Plaintiffs and all other Class Members the truth about its alleged comparative prices for the purpose of inducing Plaintiffs and other Class Members to purchase merchandise at each of its Ross stores throughout California.

134.   Plaintiffs are informed and believe, and on that basis allege, that even if and when a "Compare At" price for a product may have represented an actual recent documented selling price of the same product, Defendant chose the highest price at which the product was selling in the marketplace, and presented that price to consumers as the "Compare At" price.

135.   Defendant knew or should have known that its representations concerning its "Compare At" prices, or the sales of other merchants' identical products, were untrue and/or misleading.

136.   Defendant knows and has known, should reasonably know, or should have known, that its comparative price advertising is, and has been, deceptive, misleading, false, fraudulent, unfair and/or unlawful.

137.   Defendant knew or should have known that using inflated and/or unverified comparative reference prices without verifying that they were prices at which substantial sales of those products had been made in California, thereby creating either fictitious or inflated "Compare At" prices and either fictitious or inflated discounts or savings, was unlawful.

138.   The use of the term "Compare At" by Defendant on the price tags of the products sold in its California Ross stores constituted the dissemination of untrue, deceptive and/or misleading statements to consumers about the prices of the products so listed as compared with the prices offered by other merchants for the same products.  Defendant knew, or by the exercise of reasonable care should have known, that those statements were untrue, deceptive, and/or misleading.  Each such statement constitutes, and has constituted, a separate violation of California Business & Professions Code §17500.  Each such statement also violates, and has violated, California Civil Code §1750(a)(13).

139.   Plaintiffs, individually and on behalf of all others similarly situated, seek restitution and injunctive relief under the UCL, FAL and CLRA to stop Defendant's pervasive and rampant false and misleading advertising and marketing campaign.

## PLAINTIFFS' PURCHASES

140.   Plaintiffs each purchased numerous products throughout the Class Period from Defendant's stores in Southern California, in reliance on Defendant's false, deceptive and/or misleading advertising and false, deceptive, and/or misleading price comparisons, which they would not otherwise have purchased but for Defendant's false, deceptive and/or misleading advertising, and false, deceptive and/or misleading price comparisons as described herein.

FIRST AMENDED CLASS ACTION COMPLAINT

**Plaintiff Jacobo Purchases**:

141.   For example, and without limitation, on May 18, 2015, Jacobo purchased items from Defendant's La Puente, California, Ross store for a total cost of $39.21.  Among other items, Jacobo purchased a Levi's men's belt for $10.99.  The Levi's belt purchased by Jacobo on May 18, 2015, was advertised with a price tag which had two prices advertised on it: a "Ross Price" of $10.99 and a significantly higher "Compare At" reference price advertised as $25.00.

142.   As a further example, and without limitation, Jacobo also purchased a hat from Defendant for $7.99.  The hat was also advertised with a price tag which had two prices advertised on it: a "Ross Price" of $7.99 and a significantly higher "Compare At" reference price of $15.00.

143.   Each product Jacobo purchased from Defendant was advertised with a price tag which had two prices advertised on it: a sale price, and a significantly higher "Compare At" reference price.

144.   The "Compare At" reference prices on the products purchased by Jacobo were not true, bona fide reference prices as discussed herein – i.e., they did not represent the prices at which a substantial volume of sales of the products had sold for at other principal retail outlets in California in or about May 2015.

145.   When Jacobo shopped at Defendant's La Puente, California, Ross store, he was exposed to, saw, believed, and relied on Defendant's "Compare At" price advertising.  Jacobo purchased the products that he did from Ross because he believed he was receiving added value, or saving a quantifiable amount of money, equal to the difference between the "Compare At" prices, which he reasonably believed to be verified market retail prices for the actual products he purchased, and the Ross sale prices.

FIRST AMENDED CLASS ACTION COMPLAINT

146.   When Jacobo shopped at Defendant's La Puente, California, Ross store, he was unaware of Defendant's definition or interpretation of the "Compare At" price.  Defendant failed to clearly, conspicuously, or adequately disclose its definition or interpretation to Jacobo or any other Class Member.

147.   The comparison prices on the items purchased by Jacobo at Defendant's La Puente, California, Ross store, and the corresponding price reductions, added value, and/or savings, were false, misleading and/or deceptive.

148.   Jacobo is informed and believes, and on that basis alleges, that the prevailing retail prices for the items that he purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant.  Jacobo reasonably believed that the "Compare At" prices associated with the items that he purchased from Defendant were the then prevailing retail prices for the identical items at other full-price retailers.  Jacobo reasonably believed that the "Compare At" prices were the prices he would pay for those items at other retailers in his general area.  Jacobo would not have purchased any such product from Defendant in the absence of Defendant's false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

149.   In addition to Jacobo's purchase on May 18, 2015, Jacobo made numerous other purchases of products from Defendant's California, Ross stores throughout the Class Period located in City of Industry, West Covina, La Habra, Brea, and Montebello.  With respect to each such purchase, including the May 18, 2015, purchase, Jacobo purchased those products from Defendant after viewing and relying on Defendant's advertising which included false and/or misleading comparison prices placed on the price tags of the items which he purchased.  Jacobo is informed and believes, and on that basis alleges, that the comparison prices, and the corresponding price reductions and/or savings, were false and deceptive.  Jacobo is further

informed and believes, and on that basis alleges, that the prevailing retail prices for the items that he purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant.  Jacobo would not have purchased any such product from Defendant in the absence of Defendant's false, and/or deceptive, and/or misleading advertising, and/or misrepresentations.

**Plaintiff Metoyer's Purchases**:

150.  Plaintiff Metoyer also made numerous purchases from Ross stores in Southern California throughout the Class Period.  For example, and without limitation, on February 11, 2015, Metoyer purchased items from Defendant's Beaumont, California, Ross store for a total cost of $113.51. Among other items, Metoyer purchased a pair of women's Patricia Wedge Pump shoes for $17.99.  The shoes purchased by Metoyer on February 11, 2015, were advertised with a price tag which had two prices: a "Ross Price" of $17.99 and a significantly higher "Compare At" reference price which, to the best of Metoyer's recollection, was advertised as $65.00.

151.  As a further example, and without limitation, Metoyer also purchased a pair of black cap toe slippers from Defendant for $29.99.  The slippers were also advertised with a price tag which had two prices: a "Ross Price" of $29.99 and a significantly higher "Compare At" reference price which to the best of Metoyer's recollection was over $60.00.

152.  Each product Metoyer purchased from Defendant was advertised with a price tag which had two prices advertised on it: a sale price, and a significantly higher "Compare At" reference price.

153.  The "Compare At" reference prices on the products purchased by Metoyer were not true, bona fide reference prices as discussed herein – i.e., they did not represent the prices at which a substantial volume of sales of the

FIRST AMENDED CLASS ACTION COMPLAINT

products had sold for at other principal retail outlets in California in or about February 2015.

154.   When Metoyer shopped at Defendant's Beaumont, California, Ross store, she was exposed to, saw, believed, and relied on Defendant's "Compare At" price advertising.  Metoyer purchased the products that she did from Ross because she believed she was receiving added value, or saving a quantifiable amount of money, equal to the difference between the "Compare At" prices, which she reasonably believed to be verified market retail prices for the actual products she purchased, and the Ross sale prices.

155.   When Metoyer shopped at Defendant's Beaumont, California, Ross store, she was unaware of Defendant's definition or interpretation of the "Compare At" price.  Defendant failed to clearly, conspicuously, or adequately disclose its definition or interpretation to Metoyer or any other Class Member.

156.   The comparison prices on the items purchased by Metoyer at Defendant's Beaumont, California, Ross store, and the corresponding price reductions, added value, and/or savings, were false, misleading and/or deceptive.

157.   Metoyer is informed and believes, and on that basis alleges, that the prevailing retail prices for the items that she purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant. Metoyer reasonably believed that the "Compare At" prices associated with the items that she purchased from Defendant were the then prevailing retail prices for the identical items at other full-price retailers.  Metoyer reasonably believed that the "Compare At" prices were the prices she would pay for those items at other retailers in her general area.  Metoyer would not have purchased any such product from Defendant in the absence of Defendant's false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

FIRST AMENDED CLASS ACTION COMPLAINT

158.   In addition to Metoyer's purchase on February 11, 2015, Metoyer made numerous other purchases of products from Defendant's California, Ross stores throughout the Class Period located in Hemet, Mira Loma, and Indio. With respect to each such purchase, including the February 11, 2015, purchase, Metoyer purchased those products from Defendant after viewing and relying on Defendant's advertising which included false and/or misleading comparison prices placed on the price tags of the items which she purchased.  Metoyer is informed and believes, and on that basis alleges, that the comparison prices, and the corresponding price reductions and/or savings, were false and deceptive.  Metoyer is further informed and believes, and on that basis alleges, that the prevailing retail prices for the items that she purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant.  Metoyer would not have purchased any such product from Defendant in the absence of Defendant's false, and/or deceptive, and/or misleading advertising, and/or misrepresentations.

**CLASS ACTION ALLEGATIONS**

159.   Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated (the "Class" or "Class Members") against Defendant, namely:

> All persons who, while in the State of California, and between June 20, 2011, and the present (the "Class Period"), purchased from Ross one or more items at any Ross store in the State of California with a price tag that contained a "Compare At" price which was higher than the price listed as the Ross sale price on the price tag, and who have not received a refund or credit for their purchase(s). Excluded from the Class are Defendants, as well as Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any Defendant.

160.   Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon,

- 33 -
FIRST AMENDED CLASS ACTION COMPLAINT

1    among other things, changing circumstances and/or new facts obtained
2    during discovery.

161.    Defendant's deceptive, misleading, and/or false comparative price
        advertising scheme, disseminated to California consumers via
        representations on the price tags of each of Defendant's items in its
        California Ross stores, has been rampant throughout California as part of a
        massive, years-long, pervasive campaign and has been consistent across all
        of Defendant's merchandise at each of its stores throughout California.
        Defendant's pricing scheme has throughout the Class Period been
        prominently displayed directly on the price tag of each item sold, with
        express references to alleged comparative prices that have never existed
        and/or do not, and/or did not then, currently constitute the prevailing market
        retail prices for such merchandise or prices at which a substantial volume of
        sales of each such product had been made in California.

162.    Plaintiffs and all other Class Members were each exposed to Defendant's
        deceptive, misleading, and/or false comparative price advertising.

163.    Plaintiffs are informed and believe, and on that basis allege, that hundreds of
        thousands, of California consumers have been victims of Defendant's
        deceptive, misleading and unlawful pricing scheme.

164.    Plaintiffs are and have been members of the proposed Class described
        herein.

165.    The number of persons in the proposed Class is so numerous that joinder of
        all such persons would be impracticable.  While the exact number and
        identities of all such persons are unknown to Plaintiffs at this time and can
        only be obtained through appropriate discovery, Plaintiffs believe that the
        proposed Class herein includes over 100,000 persons.

166.    Common questions of law and/or fact exist in this case with respect to the
        Class which predominate over any questions affecting only individual

FIRST AMENDED CLASS ACTION COMPLAINT

members of the Class, which do not vary between members thereof, and which drive the resolution of the claims of Plaintiffs and all other Class Members.

167.    The common questions of law and/or fact include, but are not limited to:

   a.    Whether products at Ross stores in California are advertised with "Compare At" reference prices;

   b.    Whether a reasonable consumer would interpret the phrase "Compare At" as Defendant interprets it;

   c.    How a reasonable consumer interprets the phrase "Compare At" on a price tag;

   d.    Whether a reasonable consumer is likely to be deceived by Defendant's use of its "Compare At" reference prices;

   e.    Whether the phrase "Compare At" is susceptible to more than one reasonable interpretation;

   f.    Whether the phrase "Compare At" is misleading and/or deceptive;

   g.    Whether, during the Class Period, Defendant used false and/or misleading "Compare At" prices on the price tags of items sold in its California stores, and whether Defendant falsely advertised comparative price discounts for its merchandise;

   h.    Whether, during the Class Period, the "Compare At" prices advertised by Defendant were in fact the prevailing market prices for the respective identical items sold by other retailers in the marketplace at the time of the dissemination and/or publication of the advertised "Compare At" prices;

   i.    Whether, during the Class Period, the "Compare At" prices advertised by Defendant were in fact prices at which substantial sales of those products were made at principal retail outlets in California;

FIRST AMENDED CLASS ACTION COMPLAINT

j.  Whether Defendant failed to adequately disclose its interpretation of its "Compare At" reference prices to consumers;

k.  Whether Defendant's disclosures of its interpretation of its "Compare At" reference prices comply with established legal requirements for advertising disclosures;

l.  Whether Defendant's price tags omit necessary information;

m.  Whether Defendant adequately verified that its "Compare At" reference prices meet FTC and/or other legal requirements;

n.  Whether Defendant's price-comparison advertising was false, deceptive or misleading within the meaning of the UCL, FAL, CLRA and/or FTCA;

o.  Whether Defendant's comparative pricing on its "Compare At" price tags would be material to a reasonable consumer's purchasing decisions;

p.  Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices under California law;

q.  Whether Defendant misrepresented and/or failed to disclose material facts about its product pricing and purported discounts;

r.  Whether Defendant has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

s.  Whether Class Members are entitled to restitution; and, if so, what the proper measure of restitution is; and,

t.  Whether Defendant continues to use false, deceptive, misleading and/or unlawful price comparisons such that an injunction is necessary.

168.  Plaintiffs' claims and those of all other Class Members arise out of a common course of conduct by Defendant.

FIRST AMENDED CLASS ACTION COMPLAINT

169. All Class Members, including the proposed Class representatives, were exposed to Defendant's misrepresentations or omissions of material fact claiming that its "Compare At" prices were accurate bona fide comparison prices.  Defendant's misrepresentations or omissions of material fact were uniformly made to all respective Class Members.  In addition, it can be reasonably presumed that all Class Members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendant's false comparative price advertising scheme when purchasing merchandise at each and any of Defendant's stores in California.

170. The common questions of law and/or fact in this case are susceptible to common proof.

171. Resolution of the common questions of law and/or fact in this case will resolve issues that are central to Plaintiffs' claims and the claims of all other Class Members.

172. The claims of Plaintiffs and all Class Members involve the same untrue, deceptive, and/or misleading representations by Defendant conveyed to each Class Member by way of representations on the price tags of each product sold to each Class Member.

173. Each Class Members' claims, including those of Plaintiffs, allege that Defendant's price tags convey a deceptive, misleading, and/or untrue representation that the price at which Defendant offered a product was lower compared to a fictitious, deceptive, or misleading "Compare At" price.

174. Common proof in this case will produce a common answer as to whether Defendant's use of "Compare At" reference prices complies with legal requirements for the use of such reference prices, and whether Defendant's price-comparison advertising resulted in false, deceptive, or misleading price comparisons.

175. Common proof will resolve the common questions essential to resolution of the Class claims in this case in one stroke for all Class Members.

176. The claims of the named Plaintiffs in this case are typical of, and not antagonistic to, those of the other Class Members which they seek to represent. Plaintiffs and the Class they seek to represent have all been exposed to and deceived (or were likely to be deceived) by Defendant's false comparative price advertising scheme, as alleged herein.

177. The crux of Plaintiffs' claims - that Defendant's price tags on each item in each of its California stores convey false, deceptive, and/or misleading comparative prices as described more fully herein - is common to all Class Members.

178. Plaintiffs' claims, and those of all Class Members, are based on conduct which is not unique to either of the named Plaintiffs.

179. Plaintiffs and all Class Members have been injured by the same common course of conduct by Defendant, and have suffered the same or similar injury, as alleged herein.

180. Disposition of Plaintiffs' claims in a class action will benefit all parties and the Court.

181. A class action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented herein.

182. If individual Class Members were each required to bring his or her own individual claims, any potential recovery by any such Class Member would be dwarfed by the cost of litigating on an individual basis.

183. In this case, Plaintiffs seek to recover relatively small sums for themselves and all other Class Members. Accordingly, the disparity between the cost of litigating individual claims and the individual recoveries sought make individual claims highly unlikely, if not impossible. Litigation costs would render individual prosecution of Class Members' claims prohibitive. In

cases such as this, where the individual recoveries sought by each Class Member are relatively small and eclipsed by the cost of litigating an individual claim, a class action is the only method by which Class Members may hope to resolve their claims.

184. The prosecution of separate actions by individual members of the proposed Class herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of the proposed Class which would or may establish incompatible standards of conduct for Defendant, and which would also create a risk of adjudications with respect to individual members of the proposed Class herein which would, as a practical matter, be dispositive of the interests of other members of the proposed Class not parties to the particular individual adjudications, and/or would or may substantially impede or impair the ability of those other members to protect their interests.

185. Plaintiffs are adequate representatives of the Class they seek to represent because they are each members of the Class, and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs will fairly and adequately represent and protect the interest of the Class because their interests are not antagonistic to the Class.  Plaintiffs have no conflict of interest with any other Class Member.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.  Plaintiffs and their counsel will prosecute this action vigorously on behalf of the Class.

186. Plaintiffs are informed and believe, and on that basis allege, that Defendant has one or more databases through which a significant majority of Class Members may be identified and ascertained, and that Defendant maintains contact information, including email and home mailing addresses, through

FIRST AMENDED CLASS ACTION COMPLAINT

which notice of this action could be disseminated in accordance with due process requirements.

187.   The definition of the proposed Class herein objectively depicts who the members of the Class are, making it administratively feasible to determine whether a particular person is a Member of the Class described herein. Because the alleged misrepresentations in this case (i.e., the false, deceptive, and/or misleading comparative prices) appear on the price tags of each product purchased, there is no concern that the Class may include individuals who were not exposed to Defendant's misrepresentations.

## **FIRST CAUSE OF ACTION**

### **UNFAIR BUSINESS PRACTICES**

(California Business & Professions Code §17200 *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against Defendant)

188.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

189.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code §17200.

190.   Advertising or promotional practices are unlawful under the UCL if a reasonable consumer is likely to be deceived by them.

191.   Defendant has violated the "unfair" prong of the UCL by representing false, deceptive, and/or misleading comparative prices and corresponding price discounts and/or savings for merchandise where Defendant, in fact, inflated, estimated, or fabricated the purported "Compare At" prices for such products, and failed to adequately disclose to consumers what such "Compare At" prices were, such that the promised discount and/or saving was false, misleading and/or deceptive.

FIRST AMENDED CLASS ACTION COMPLAINT

192.   These acts and practices were unfair because they caused Plaintiffs, and were likely to cause reasonable consumers, to falsely believe that Defendant is, and has throughout the Class Period been, offering value, discounts or bargains from the prevailing market price, value or worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices than what they paid (and were, therefore, worth more or had a higher value than they actually had).  This perception has induced reasonable purchasers, including Plaintiffs, to buy such products, which they otherwise would not have purchased.

193.   Plaintiffs and all other Class Members were likely to be deceived by Defendants' use of the term "Compare At" on the price tags of merchandise at Ross stores in California.

194.   In deciding to purchase merchandise at Ross, Plaintiffs each relied on Defendant's misleading and deceptive representations regarding "Compare At" prices.  The comparative "Compare At" prices placed by Defendant on the price tags of merchandise in its California stores played a substantial role in each Plaintiff's decisions to purchase the products they purchased from Defendant, and neither Plaintiff would have purchased those items in the absence of Defendant's misrepresentations.  Accordingly, Plaintiffs have suffered monetary loss as a direct result of Defendant's unlawful practices described herein.

195.   Plaintiffs, like all other Class Members, saw Defendant's "Compare At" reference prices on the products they purchased before purchasing those products.  The "Compare At" prices were material to Plaintiffs, as they were to all other Class Members.  Plaintiffs relied on the "Compare At" prices in making their purchasing decisions.  Plaintiffs, like all other Class members, placed added value on the products they purchased from Ross because they

believed the "Compare At" reference prices were true, accurate, verified comparative reference prices that represented the market retail prices of the products they purchased.  Because Defendant's "Compare At" prices were not true, accurate, or verified comparative reference prices (as described herein), the actual value of the products Plaintiffs and all other Class Members purchased at Ross was less then they believed and less than what they paid for those products.  Plaintiffs and all other Class Members therefore paid more for the products they purchased from Defendant than the value they received.

196. The gravity of the harm to Class Members resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Defendant for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Defendant engaged in unfair business practices within the meaning of California Business & Professions Code §17200, *et seq*.

197. Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all Class Members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiffs, the Class, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT

# SECOND CAUSE OF ACTION

## FRAUDULENT BUSINESS PRACTICES

(California Business & Professions Code §17200 *et seq*.)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against Defendant)

198. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

199. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

200. Defendant's false comparative prices, including, but not limited to, its "Compare At" prices placed on the price tags of the products sold in its California Ross stores, were "fraudulent" within the meaning of the UCL because they deceived Plaintiffs, and were likely to deceive reasonable consumers and Class Members, into believing that Defendant was offering value, discounts or bargains from the prevailing market price, value or worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices than what they paid (and were, therefore, worth more and had a higher value than they actually had).  This perception induced reasonable purchasers, including Plaintiffs, to buy such products from Defendant's stores in California, which they otherwise would not have purchased.

201. Defendant's acts and practices as described herein have deceived Plaintiffs and were highly likely to deceive reasonable members of the consuming public.  In deciding to purchase merchandise at Ross, each Plaintiff relied on Defendant's misleading and deceptive representations regarding its "Compare At" prices.  The comparative "Compare At" prices placed by Defendant on the price tags of merchandise at Ross stores in California

FIRST AMENDED CLASS ACTION COMPLAINT

played a substantial role in each Plaintiff's decisions to purchase those products, and Plaintiffs would not have purchased those items in the absence of Defendant's misrepresentations.  Accordingly, Plaintiffs have suffered monetary loss as a direct result of Defendant's unlawful practices, and did not receive the value they thought they were getting, as described herein.

202.  As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and all other Class Members. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and/or deceptive conduct.

203.  Through its fraudulent acts and practices, Defendant has improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all Class Members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiffs, the Class, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES

(California Business & Professions Code §17200 *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against Defendant)

204.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

205.  A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

FIRST AMENDED CLASS ACTION COMPLAINT

206. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false advertisements.  15 U.S.C. §52(a)).

207. Cal. Civ. Code §1770(a)(13), prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

208. Defendant's use of and reference to materially misleading, deceptive, and/or false "Compare At" prices on the price tags of merchandise sold to consumers in California Ross stores violated and continues to violate the FTCA, 15 U.S.C. §45(a)(1) and 15 U.S.C. §52(a), as well as FTC Pricing Guides.  It also violated and continues to violate Cal. Bus. & Prof. Code §§17200 and 17501, and Cal. Civ. Code §1770(a)(13), by, among other things, advertising false comparative prices as described herein.

209. As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and other Class Members.  Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

210. Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all Class Members, and to enjoin Defendant from continuing to violate the UCL, and/or from violating the UCL in the future.  Otherwise, Plaintiffs, the Class, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

/ / /

/ / /

# FOURTH CAUSE OF ACTION

## FALSE ADVERTISING

(California Business & Professions Code §17500 *et seq*.)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against Defendant)

211.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

212.  The FAL prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value and former price.

213.  The FAL makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

214.  Defendant's practice of disseminating allegedly comparative "Compare At" prices associated with its merchandise, which were materially greater than the true prevailing prices of those products, and/or not true or verified comparative prices for those products, as alleged more fully herein, was an unfair, deceptive and/or misleading advertising practice because it gave the false impression that the products sold by Defendant regularly sold in the retail marketplace at substantially higher prices than they actually did (and were, therefore, worth more than they actually were, and had greater value than they actually did).

215.  Defendant's practice of failing to adequately disclose to consumers what the phrase "Compare At" means on the price tags of the merchandise in California Ross stores, was misleading to Plaintiffs and all other Class Members.  Defendant knew, or by the exercise of reasonable care should have known, that reasonable consumers, such as Plaintiffs, would not interpret the phrase "Compare At" the way Defendant interprets it.

FIRST AMENDED CLASS ACTION COMPLAINT

216. On each day throughout the Class Period, Defendant, with the intent to induce members of the public to purchase products offered at its California stores, made or caused to be made each of the untrue and/or misleading statements, claims, and/or representations described herein.

217. On each day throughout the Class Period, Defendant, with the intent to induce members of the public to purchase products offered at its California stores, made or caused to be made untrue and/or misleading claims to consumers throughout California including, but not limited to, the following claims with respect to products offered for sale at California Ross stores:

   a. That when other merchants offered an identical product for sale, Defendant had previously ascertained and/or determined the price at which substantial sales of that product had been made by principal retail outlets in California.

   b. That the "Compare At" price for a product was the price at which other principal retail outlets in California regularly sold that identical product.

   c. That Defendant's sale price for a product was lower than the price at which other principal retail outlets in California regularly sold that identical product.

   d. That Defendant's sale price for a product was a discount from the price at which other principal retail outlets in California regularly sold that identical product.

218. Defendant knew, or by the exercise of reasonable care should have known, that these claims were untrue, deceptive, and/or misleading.

219. In addition to the allegations made above, each of Defendant's statements, claims, and/or representations described herein were untrue, deceptive, and/or misleading because, among other things:

FIRST AMENDED CLASS ACTION COMPLAINT

a.  Defendant set "Compare At" prices without ascertaining and/or determining the prices at which other principal retail outlets in California regularly sold the identical products;

b.  Defendant's "Compare At" prices were fictitious, having been based on something other than the prices at which other principal retail outlets in California regularly sold the identical products;

c.  Defendant's "Compare At" prices were calculated by using the highest sales price at which another merchant was offering, or had offered, the identical product for sale, instead of the price at which other principal retail outlets in California regularly sold the identical products;

d.  A reasonable consumer would not interpret the phrase "Compare At" the way Defendant interprets it; and/or

e.  Defendant's "Compare At" prices were higher than the lowest price at which a consumer would commonly be able to purchase the identical product at a retail establishment in the consumer's area, and:

   i.  Defendant knew that the "Compare At" price was higher than the lowest price at which a consumer would commonly be able to purchase the identical product at other retail establishments in the consumer's area; or

   ii.  Defendant did not know whether other merchants regularly sold the product at the "Compare At" price.

220.  When Defendant made or caused to be made the untrue and/or misleading claims, statements, and/or misrepresentations described herein to consumers in California, including Plaintiffs, Defendant failed to adequately disclose the facts pleaded herein.

221.  Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs

- 48 -

FIRST AMENDED CLASS ACTION COMPLAINT

request that this Court cause Defendant to restore this money to Plaintiffs and all other Class Members, and to enjoin Defendant from continuing to violate the FAL, and/or from violating the FAL in the future.  Otherwise, Plaintiffs, the Class, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT

(California Civil Code §1750 *et seq*.)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against Defendant)

222.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

223.   On each day throughout the Class Period, Defendant, with the intent to induce members of the public to purchase products offered at its California stores, made or caused to be made false and/or misleading claims to consumers throughout California including, but not limited to, the following claims with respect to products offered for sale at its California stores:

   a.   The existence and/or amounts of price reductions represented by the difference between Defendant's "Compare At" reference price and its sale price; and,

   b.   The existence and/or amount of the savings to a consumer purchasing a particular product from Defendant instead of another merchant represented by the difference between Defendant's "Compare At" reference price and its sale price.

224.   Plaintiffs and each Class Member are "consumers" within the meaning of California Civil Code §1761(d).

FIRST AMENDED CLASS ACTION COMPLAINT

225. Defendant's sale of merchandise at its Ross stores in California to Plaintiffs and other Class Members are "transactions" within the meaning of California Civil Code §1761(e).

226. The merchandise purchased by Plaintiffs and other Class Members at Defendant's stores in California throughout the Class Period are "goods" within the meaning of California Civil Code §1761(a).

227. Defendant has engaged in unfair methods of competition, and/or unfair and/or deceptive acts or practices against Plaintiffs and other Class Members, in violation of the CLRA, by making false and/or misleading statements of fact concerning the reasons for, the existence of, and/or the amount(s) of price reductions for products sold to Plaintiffs and other Class Members at California Ross stores throughout the Class Period.  Defendant provided false, deceptive, and/or misleading "Compare At" prices on the price tags of the merchandise sold in its California stores, and compared those false and/or misleading comparative prices to the prices at which Defendant sold its merchandise, to give the illusion to consumers that they were receiving a discount, or achieving a saving or bargain when compared to the purchase of those same items at other retailers in the consumers' area. The promised discounts, savings, and/or bargains, however, were deceptive, misleading, and/or false.

228. The price reductions alleged by Defendant to be the difference between the "Compare At" prices and Defendant's sale prices did not exist, and were false, deceptive, and/or misleading.

229. Defendant's acts and/or practices described herein are in violation of California Civil Code §1770(a)(13).

230. As a result of Defendant's acts and/or practices described herein, Plaintiffs and other Class Members have been damaged in that Defendant's unlawful, false and/or misleading acts and/or practices described herein played a

FIRST AMENDED CLASS ACTION COMPLAINT

substantial and material role in Plaintiffs' and other Class Members'
decisions to purchase products at Defendant's Ross stores in California.
Absent these acts and/or practices, Plaintiffs and other Class Members
would not have purchased the products that they did from Defendant.

231.   Pursuant to California Civil Code §1780(a)(2), Plaintiffs, on behalf of
themselves and all other Class Members, request that this Court enjoin
Defendant from continuing to engage in the unlawful and deceptive
methods, acts and/or practices alleged herein.  Unless Defendant is
permanently enjoined from continuing to engage in such violations of the
CLRA, California consumers will continue to be damaged by Defendant's
acts and/or practices in the same way as those acts and/or practices have
damaged Plaintiffs and other Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all Class
Members, pray for judgment against Defendant as follows:

**CLASS CERTIFICATION**

1.   That the Court certify the Class herein to proceed as a class action pursuant
to Fed. R. Civ. Proc. 23(b)(1), 23(b)(2) and/or 23(b)(3), adjudge Plaintiffs to
be adequate representatives of the Class, and appoint Plaintiffs' counsel as
class counsel for the Class.

**VIOLATION OF BUSINESS & PROFESSIONS CODE §§17200 *et seq*., and
17500 *et seq*.:**

2.   A judgment awarding Plaintiffs and all Class Members restitution and/or
other equitable relief, including, without limitation, restitutionary
disgorgement of all profits, or some portion of profits, and/or unjust
enrichment that Defendant obtained from Plaintiffs and the Class as a result
of the unlawful, unfair and/or fraudulent business practices described herein.

FIRST AMENDED CLASS ACTION COMPLAINT

3.   An order enjoining Defendant from continuing to violate the UCL and/or FAL as described herein, and/or an order enjoining Defendant from violating the UCL and/or FAL in the future.

4.   A judgment awarding Plaintiffs their costs of suit, including reasonable attorneys' fees pursuant to California Code of Civil Procedure §1021.5 and as otherwise permitted by statute or law, and pre- and post-judgment interest; and,

5.   For such other and further relief as the Court may deem proper.

**VIOLATION OF CIVIL CODE §1770**:

6.   An order enjoining Defendant from continuing to violate the CLRA as described herein, and/or an order enjoining Defendant from violating the CLRA in the future;

7.   A judgment awarding Plaintiffs their costs of suit, including reasonable attorneys' fees pursuant to California Civil Code §1780(d) and as otherwise permitted by statute, and pre- and post-judgment interest; and,

8.   For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims so triable.

Dated: October 12, 2015      By: LAW OFFICE OF CHRISTOPHER J. MOROSOFF

_/s/ Christopher J. Morosoff_
CHRISTOPHER J. MOROSOFF,
Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT