1   DAVID F. MCDOWELL (CA SBN 125806)
    DMcDowell@mofo.com
2   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
3   Los Angeles, California  90017-3543
    Telephone: 213.892.5200
4   Facsimile: 213.892.5454

5   KEVIN M. COLES (CA SBN 271518)
    KColes@mofo.com
6   MORRISON & FOERSTER LLP
    425 Market Street
7   San Francisco, California  94105-2482
    Telephone: 415.268.7000
8   Facsimile: 415.268.7522

9   Attorneys for Defendant
    ROSS STORES, INC.

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| 14  JOSE JACOBO, et al., | Case No. 2:15−cv−04701−MMM (AGRx) |
|---|---|
| 15              Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 16       v. | |
| 17  ROSS STORES, INC., a Delaware Corporation, and DOES 1 through 100, inclusive, | |
| 18  inclusive, | |
| 19              Defendants. | |
| 20 | Date:      February 8, 2016<br>Time:      10:00 a.m.<br>Dept.:      780<br>Judge:  Hon. Margaret M. Morrow |
| 21 | |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    PLAINTIFFS' ALLEGATIONS.................................................................3
      A.    The Purported Scheme ................................................................3
      B.    Plaintiffs' Alleged Purchases .....................................................4
      C.    Plaintiffs' Subjective Interpretation of "Compare At." .........4
      D.    Ross's Purported Misrepresentations........................................5
      E.    Ross's Actual Representations ...................................................5
      F.    Plaintiffs' Flawed Theory of How They Were Deceived....................6
      G.    The FTC Pricing Guides and Other Guidelines................................7
      H.    Plaintiffs' Lack of Financial Injury........................................8
II.   LEGAL STANDARD ................................................................................8
III.  ARGUMENT ...........................................................................................11
      A.    Plaintiffs Lack Standing for Failure to Show Any Injury in Fact
            Caused by Ross ...........................................................................11
            1.    Plaintiffs Similarly Lack Statutory Standing...........................11
            2.    Plaintiffs Cannot Sue Over Products Not Purchased ..............12
      B.    Plaintiffs Fail to State a Claim under Rule 12(b)(6)..........................13
            1.    The FAC Fails to Allege Facts Showing that Ross's
                  "Compare At" Pricing Is Inaccurate or Deceptive .................14
            2.    Plaintiffs' Omission Theory Fails Because Plaintiffs Fail
                  to Identify any Cognizable Legal Duty to Disclose ................18
            3.    Dr. Compeau's 2004 Study is Irrelevant ................................21
      C.    The FAC Fails to Satisfy Additional Pleading Requirements
            Under UCL, FAL, and CLRA................................................................21
            1.    Plaintiffs Fail to State a Claim "Upon Which Relief Can
                  Be Granted." ..........................................................................22
            2.    The FAC Cannot Support an "Unfairness" Claim ...................23
            3.    The FAC Cannot Support an "Unlawful" Claim.......................24
            4.    The FAC Fails to Support A False Advertising Claim ...........24
            5.    The FAC Fails to State a Claim under the CLRA ...................25
IV.   CONCLUSION .......................................................................................26

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ackerman v. Northwestern Mut. Life Ins. Co.*,
  172 F.3d 467 (7th Cir. 1999)...................................................................10

*Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n, Inc.*,
  171 Cal. App. 4th 1356 (2009)...............................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................9, 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................9, 23

*Branca v. Nordstrom, Inc.*,
  No. 14-cv-2062 (S.D. Cal. Oct. 9, 2015).................................................16

*Branca v. Nordstrom, Inc.*,
  No. 14-cv-2062 (S.D. Cal. March 20, 2015)...............................16, 17, 24

*Buller v. Sutter Health*,
  160 Cal. App. 4th 981 (2008).................................................................19

*Calamore v. Juniper Networks Inc.*,
  364 F. App'x 370 (9th Cir. 2010)............................................................23

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. Aug. 1, 2014)......................................................22

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  475 F. App'x 113 (9th Cir. 2012)............................................................18

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
  765 F. Supp. 1467 (C.D. Cal. 1991)........................................................10

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000)............................................................................22

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006)............................................................18, 19

*Davidson v. Kimberly-Clark Corp.*,
  76 F. Supp. 3d 964....................................................................9, 15, 18

ii

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) .................................................................. 22

*Fraker v. Bayer Corp.*,
    No. CVF 08-1564 AWI, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ............. 10

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .................... 9

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) .................................................... 12, 25

*Horosny v. Burlington Coat Factory of California, LLC*,
    No. CV15-05005 SJO (C.D. Cal. Oct. 26, 2015) ............................................ 20

*Johns v. Bayer Corp.*,
    No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ............................ 12

*Johnson v. Jos. A. Bank Clothiers, Inc.*,
    No. 2:13CV756, 2014 WL 4129576 (S.D. Ohio Aug. 19, 2014) .................... 23

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................... 9, 10

*Kowalsky v. Hewlett-Packard Co.*,
    771 F. Supp. 2d 1156 (N.D. Cal. 2011) .................................................... 25

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) .................................................... 12, 22

*Lacano Investments, LLC v. Balash*,
    765 F.3d 1068 (9th Cir. 2014) .................................................... 9

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) .................................................... 15

*Lazar v. Hertz Corp.*,
    69 Cal. App. 4th 1494 (1999) .................................................... 24

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) .................................................... 19

*Linda Rubenstein v. The Neiman Marcus Group LLC, et al.*,
    No. 14-cv-07155 (C.D. Cal. May 12, 2015) ................................................ 16

iii

*Linda Rubenstein v. The Neiman Marcus Group LLC, et al.*,
No. 14-cv-07155 (C.D. Cal March 2, 2015) ......................................... 16, 17, 25

*Lingsch v. Savage*,
213 Cal. App. 2d 729 (1963) ............................................................... 19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................................................................... 8, 11

*McCrary v. Elations Co.*,
No. EDCV 13-0242 JGB OPX, 2013 WL 6402217 (C.D. Cal. Apr. 24,
2013) .................................................................................................. 10

*Mehta v. Wells Fargo Bank, N.A.*,
737 F. Supp. 2d 1185 (S.D. Cal. 2010) ............................................... 24

*Miller v. Ghirardelli Chocolate Co.*,
912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................................. 25

*Mlejnecky v. Olympus Imaging Am. Inc.*,
No. 2:10-CV-02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ................. 13

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*,
107 Cal. App. 4th 1336 (2003) ........................................................... 25

*Nilon v. Natural-Immuniogenics Corp.*,
No. 3:12CV00930 LAB, 2013 WL 5462288 (S.D. Cal. Sept. 30, 2013) ......... 22

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ................................................................ 9

*People v. Duz-Mor Diagnostic Lab., Inc.*,
68 Cal. App. 4th 654 (1998) ............................................................... 24

*Red v. Kraft Foods, Inc.*,
No. CV 10-1028-GW AGRX, 2012 WL 5504011 (C.D. Cal.
Oct. 25, 2012) ................................................................................... 18

*Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW JEMX, 2013
WL 658251 (C.D. Cal. Feb. 21, 2013) ................................................. 11

*Scripps Clinic v. Superior Court*,
108 Cal. App. 4th 917 (2003) ............................................................. 23

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
   72 Cal. App. 4th 861 (1999) ................................................................... 20

*Stanley v. Bayer Healthcare LLC*,
   No. 11CV862 BLM, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ............. 10, 11

*Stephenson v. Neutrogena Corp.*,
   No. C 12-0426 PJH, 2012 WL 8527784 (N.D. Cal. July 27, 2012) ................. 12

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) ............................................................. 17

*Vess v. Ciba–Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................. 9, 15

*Warren v. Fox Family Worldwide, Inc.*,
   328 F. 3d 1136 (9th Cir. 2003) ................................................................. 8

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ............................................................................... 8

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) .................................................................. 15

**STATUTES**

Bus. & Prof. Code § 17200 ................................................................ 13, 23

Bus. & Prof. Code § 17508 .................................................................... 11

Cal. Bus. & Prof. Code § 17204 ......................................................... 11, 23

Cal. Bus. & Prof. Code § 17500 .............................................................. 25

Cal. Bus. & Prof. Code § 17501 ......................................................... 24, 25

Cal. Bus. & Prof. Code § 17535 .............................................................. 11

Cal. Civ. Code § 1770 ........................................................................... 25

Cal. Civ. Code § 1770(a)(13) .................................................................. 25

Cal. Civ. Code § 1780(a) .................................................................... 12, 25

Cal. Civ. Code § 3343(a) ....................................................................... 23

# OTHER AUTHORITIES

16 C.F.R. § 233 ...................................................................................... 25

16 C.F.R. § 233.2(a) ............................................................................... 16

16 C.F.R. § 233.2(b) ............................................................................... 16

16 C.F.R. § 233.2(c) .............................................................. 2, 16, 17, 20

16 C.F.R. §233.3(d) ................................................................................. 7

16 C.F.R. §233.3(g) ................................................................................. 7

Fed. R. Civ. P. 8(a) .................................................................................. 3

Fed. R. Civ. P. 8(a)(2) ........................................................................ 9, 15

Fed. R. Civ. P. 9(b) .............................................................................. 3, 4

Fed. R. Civ. P. 12(b)(1) ........................................................................... 8

Fed. R. Civ. P. 12(b)(6) .................................................................. *passim*

sf-3587817

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that on February 8, 2016, at 10:00 a.m., or as soon

3 thereafter as the matter may be heard, in Courtroom 780 of this Court, located at

4 255 East Temple Street, Los Angeles, California, Defendant Ross Stores, Inc. will

5 and hereby does move this Court for an order dismissing the complaint pursuant to

6 Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 8(a), and 9(b) for lack of

7 standing, failure to state a claim upon which relief can be granted, and failure to

8 meet pleading standards.

9      The motion is based upon this Notice, the accompanying Memorandum of

10 Points and Authorities, and the pleadings, files, and record in this action, and upon

11 such additional evidence and arguments that may be presented at the hearing of this

12 motion.

13      This motion is made following a conference of counsel pursuant to L.R. 7-3,

14 which took place via telephone on October 27, 2015.

15

16 Dated:  October 29, 2015           MORRISON & FOERSTER LLP

17

18                                    By:  _____/s/ David F. McDowell_____

19                                         DAVID F. MCDOWELL

20                                    Attorneys for Defendant
                                      ROSS STORES, INC.

21

22

23

24

25

26

27

28

sf-3587817

## MEMORANDUM OF POINTS AND AUTHORITIES

At its retail stores, Ross Stores, Inc. ("Ross") typically includes two prices on its price tags:  the selling price and a "Compare At" price.  (FAC ¶ 7.)  On signs posted in each of its stores and on its website, Ross explains what it means by "Compare At":

> "Compare at Pricing
>
> We want you to shop with more information, so many of our products include a comparison price. The comparison price represents a recent documented selling price of the same or similar product in full-price department stores or specialty stores. Where identical products are not available we may compare to similar products and styles. Prices charged for the compared to products may change over time, but our goal is to provide you with a useful comparison point of what you may have paid in a competitive store, so you can be sure you are getting a great bargain when you shop at Ross."

(FAC ¶ 51; *see also id.* ¶ 87.)

The Federal Trade Commission ("FTC") has long recognized that "comparable value comparisons," precisely like Ross's "Compare At" prices, are a permissible form of advertising. *See* 16 C.F.R. § 233.2(c).  Nevertheless, despite these FTC guidelines, and despite Ross's disclosures of its "Compare At" definition, Plaintiffs have filed this putative class action alleging claims under the California False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and Consumer Legal Remedies Act ("CLRA").

Plaintiffs allege that Ross used "deceptive" "Compare At" prices to "lure[]" them and others into its stores and "trick" them into believing they were receiving good deals.  (FAC ¶¶ 7, 13.)  The FAC does not, however, offer any factual support to demonstrate that Plaintiffs were exposed to any deceptive prices, let alone that Ross fabricated prices with the intent to deceive customers.  Rather, Plaintiffs' allegations concerning price are purely legal conclusions based on unspecified, undisclosed "information and belief."

Plaintiffs lack standing, because they fail to allege facts showing that, with

1  respect to the items they purchased, Ross's "Compare At" prices did not correspond

2  with their understanding of the phrase, and otherwise suffered no economic injury.

3  Plaintiffs also lack standing to sue over items they never purchased.

4      Plaintiffs' claims must also be dismissed under Fed. R. Civ. P. 12(b)(6), 8(a)

5  and 9(b) for failure to state a claim upon which relief may be granted.  Plaintiffs fail

6  to allege facts, as opposed to legal conclusions "on information and belief."  Courts

7  have rejected their conclusory theory that the term "Compare At" is misleading.

8  Plaintiffs also fail to identify any duty to disclose Ross's definition of "Compare

9  At" on every price tag for every item sold in its stores, and cannot show they are

10  entitled to restitution for failure to allege that their purchased items were worth less

11  than what they paid.  Plaintiffs' statutory claims fail for additions reasons.

12      The Court should therefore grant this motion in its entirety.

13  **I.    PLAINTIFFS' ALLEGATIONS**

14      **A.    The Purported Scheme.**

15      Plaintiffs' FAC contends that Ross deceives customers by including

16  "unverified" or "made-up" "Compare At" reference prices on items sold in stores

17  located throughout California.  Plaintiffs allege that these comparison prices are

18  "fabricated" in order to "trick" its customers into believing that they are getting a

19  good deal.  This claim is reiterated throughout the FAC, but Plaintiff alleges no

20  supporting facts.  Examples of these conclusory and boilerplate allegations include:

21
22  - "Defendant has used various misleading methods to make up prices which
     it claims other merchants charge for those products, and then claims that
     its own prices are significantly lower . . . ." (FAC ¶ 46.)

23
24  - "Defendant used, and continues to use, vague, misleading, and/or
     subjective measures to inflate the comparative prices, and thus artificially
     increase the discounts and savings it claims to be offering consumers."
     (FAC ¶ 123.)

25
26  - "Throughout the Class Period Defendant routinely and systematically
     made untrue, deceptive, and misleading comparative advertising claims
     about the prices of its products, as described herein." (FAC ¶ 131.)

27
28  - "Each Class Members' claims, including those of Plaintiffs, allege that
     Defendant's price tags convey a deceptive, misleading, and/or untrue
     representation that the price at which Defendant offered a product was

3

sf-3587817

lower compared to a fictitious, deceptive, or misleading "Compare At" price."  (FAC ¶ 173.)

### B.    Plaintiffs' Alleged Purchases.

Plaintiffs both allege purchasing products that were "falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices" from various Ross Stores in California.  (FAC ¶ 8.)  Although each Plaintiff alleges making purchases "on over 10 occasions" since June 20, 2011 (FAC ¶¶ 8, 159), the FAC only identifies four specific purchases.  Plaintiff Jacobo allegedly purchased a Levi's belt for $10.99 with a "Compare At" reference price of $25.00, and a hat for $7.99 with a "Compare At" reference price of $15.00."  (FAC ¶¶ 141, 142.)  Plaintiff Metoyer allegedly purchased "women's Patricia Wedge Pump shoes for $17.99," which "to the best of Metoyer's recollection" was advertised with a "Compare At" reference price of $65.00, and a "pair of black cap toe slippers" with a "'Ross Price' of $29.99 and a "'Compare At' reference price which to the best of Metoyer's recollection was over $60.00."  (FAC ¶¶ 150, 151.)

Significantly, the FAC is entirely devoid of any factual allegations as to whether other retailers sell the four specified products purchased by Plaintiffs, or at what price.  Instead, Plaintiffs' claims that Ross's prices are somehow fictional are based largely on unspecified and undisclosed "information and belief."  While "information and belief" might be acceptable for information purely in another parties' possession, Plaintiffs have access to all sources of information needed to allege that Ross's "Compare At" prices were false.  Plaintiffs fail to do so or to plead any kind of investigation into items sold and prices charged by other retailers.

### C.    Plaintiffs' Subjective Interpretation of "Compare At."

Plaintiffs also allege that they made their purchases in reliance on the listed "Compare At" prices (FAC ¶¶ 145, 154), which they variously interpreted as the "verified market retail prices for the actual products" purchased (*id.*), and the "prices [they] would pay for those items in [their] general area[s]" (FAC ¶¶ 148,

4

157), and "the then prevailing retail prices for those same items-that if they left Defendant's store and shopped around for those same products, they would likely find them elsewhere at the higher "Compare At" prices" (FAC ¶ 49), and as indicating that Ross was "offering value, discounts or bargains from the prevailing market price, value or worth of the products sold" (FAC ¶ 192) and as the "true, accurate, verified comparative reference prices that represented the market retail prices of the products they purchased."  (FAC ¶ 195.)

### D.   Ross's Purported Misrepresentations.

Without offering any specific facts, Plaintiffs further allege that Ross "made or caused to be made untrue and/or misleading claims to consumers throughout California," including that Ross had "previously ascertained and/or determined the price at which substantial sales" of other merchants' products were made, that "other principal retail outlets in California regularly sold [the] identical product," and that Ross's price was "lower than" or "a discount from" theirs.  (FAC ¶ 217.)

Despite these allegations, the FAC fails to identify any place where Ross represented that its "Compare At" prices were established in conformity with Plaintiff's alleged understanding of the term, or any facts showing that the "Compare At" prices to which Plaintiffs were exposed were not, in fact, the prices actually charged by other retailers.  Regardless of Plaintiffs' subjective understanding, they fail to tie that understanding to anything that Ross actually said.

### E.   Ross's Actual Representations.

In fact, the only specific representations found in the FAC that are actually attributable to Ross (other than four "Compare At" prices for Plaintiffs' belt, hat, shoes, and slippers) are a largely irrelevant statement in Ross's 2014 Annual Report[1] (¶ 77), and—significantly—a disclosure on Ross's website, which

---

[1] Plaintiffs also allude to a purported revelation made by "[o]ne buyer intern for Ross" that "as much as 70% of the inventory at Ross stores may consist of" items produced exclusively for Ross and sold only at Ross stores.  (FAC ¶ 77.) Plaintiffs do not identify this "buyer intern" by name or otherwise describe the

(Footnote continues on next page.)

sf-3587817

1    specifically defines "Compare at Pricing" as representing "a recent documented

2    selling price of the same or similar product in full-price department stores or

3    specialty stores" and clarifies that "[w]here identical products are not available we

4    may compare to similar products and styles."  (FAC ¶ 51.)  In other words, virtually

5    the only statement alleged in the FAC attributable to Ross is a disclosure that

6    undermines each of Plaintiffs' purported interpretations of the phrase "Compare

7    At," as well as Plaintiffs' claims of omissions and intentional concealment.

8                    **F.      Plaintiffs' Flawed Theory of How They Were Deceived.**

9          Nevertheless, Ross's website definition of "Compare At" pricing lies at the

10   heart of Plaintiffs' flawed theory that Plaintiffs were somehow misled by Ross's

11   "Compare At" prices.  According to Plaintiffs, Ross uses the phrase "Compare At"

12   on price tags for each product offered for sale at Ross stores, including products

13   that were "previously or currently sold at a full-price department store" (for which

14   the "Compare At" prices represent retail price comparisons with identical products)

15   and products "produced exclusively for Defendant and sold only at Ross stores"

16   (for which the "Compare At" prices represent comparable value comparisons with

17   similar products).  (FAC ¶ 76.)  Plaintiffs fault Ross for using the phrase "Compare

18   At" without disclosing which items are which on the tags.  (*See* ¶¶ 79-80.)

19   Plaintiffs conclude that "[e]ven if Defendant's dual definitions [of "Compare At"

20   pricing] are reasonable, for each and every item offered for sale at Ross stores in

21   California, at least one of those definitions must be, and is, false."  (FAC ¶ 89.)

22         Plaintiffs' theory fails, of course, because it does not take "Compare At"

23   prices for what they are: reference points.  If Plaintiffs were on a road trip, for

24   example, would they hold the navigator liable for getting them to their destination

25   _____

26   (Footnote continued from previous page.)

27   circumstances surrounding his purported revelation.  In any event, the allegation is
     irrelevant because Plaintiffs fail to tie it to any of their alleged purchases.

28

1  by using road signs *and* mountains, rather than one and only one kind of reference

2  point?  Plaintiffs fail to point to any per se rule or limiting comparison pricing

3  references, as Plaintiffs would have it, to identical and only identical products.

4        Even accepting Plaintiffs' theory as legally cognizable, Plaintiffs still fail to

5  allege facts showing they were actually deceived.  Plaintiffs allege that they

6  believed Ross's "Compare At" prices to be comparing identical products at other

7  full-price retailers.  (*See, e.g.*, FAC ¶¶ 148, 157.)  Crucially, however, Plaintiffs do

8  not allege that the items they purchased were exclusively sold at Ross.[2]  The FAC

9  therefore fails to give rise to any inference that Plaintiffs' alleged purchases failed

10  to meet their alleged expectations.  In fact, Plaintiffs admit that Ross's "Compare

11  At" prices "could be the regular, retail price of the same item at other department

12  stores" (FAC ¶ 61), thus meeting expectations.  This admission dooms their claims.

13        **G.    The FTC Pricing Guides and Other Guidelines.**

14        Although Plaintiffs cite the FTC Guides Against Deceptive Pricing ("Pricing

15  Guides") in support of their claim that Ross should verify the "prevailing price" in

16  each area in which it does business (FAC ¶¶ 30-41), they selectively omit that the

17  Pricing Guides specifically note that retailers who do business on a "national []

18  scale cannot be required to police or investigate in detail the prevailing prices of his

19  articles throughout so large a trade area."  16 C.F.R. §233.3(g).  For these

20  manufacturers, "[i]f [the retailer] advertises or disseminates a list or preticketed

21  price in good faith (i.e., as an honest estimate of the actual retail price) which does

22  not appreciably exceed the highest price at which substantial sales are made in his

23  [national] trade area, he will not be chargeable with having engaged in a deceptive

24  practice."  (*Id.*)  The FTC has defined "substantial" to mean "not isolated or

25  insignificant."  16 C.F.R. §233.3(d).  It does ***not*** require any specific sales volume.

26  _____

27      [2] And in fact, a simple internet search readily shows that Levi's belts and Patricia Wedge Pump shoes are sold at a number of different retailers.

28

1    Nowhere have Plaintiffs pled actual facts showing that Ross's "Compare At" prices

2    appreciably exceed the highest price at which substantial sales are made of

3    comparable products.

4         Plaintiffs also rely on the FTC's ".com Disclosures," yet Plaintiffs fail to

5    allege ever visiting Ross's website, and the ".com Disclosures" simply do not apply

6    to the kind of in-store price tags that Plaintiffs challenge here.  Plaintiffs' reliance

7    on FTC's 1983 Policy on Deception and Better Business Bureau's Code of

8    Advertising similarly fail to rehabilitate their claims.  (*See, e.g.* FAC ¶¶ 66, 74-75.)

9                    **H.    Plaintiffs' Lack of Financial Injury.**

10        Finally, the FAC does not reveal any financial injury incurred by Plaintiffs.

11   The FAC does not claim that Plaintiffs could have bought the belt, hat, shoes, or

12   slippers for less anywhere else, that those items did not have a value commensurate

13   with what they paid, or that they were dissatisfied with the products they received.

14   Plaintiffs therefore fail to show they did not receive the benefit of their bargain.

15        **II.    LEGAL STANDARD**

16        Article III of the United States Constitution dictates that jurisdiction of the

17   federal courts extends only to actual cases or controversies.  To satisfy the Article

18   III standing requirements, a plaintiff must allege: (1) that he has suffered injury in

19   fact; (2) a causal connection between the injury and the conduct complained of; and

20   (3) the likelihood that the injury will be redressed by a favorable decision.  *Lujan*

21   *v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Federal Rule of Civil

22   Procedure 12(b)(1) requires dismissal of a complaint over which the Court lacks

23   subject matter jurisdiction.  Where the face of the complaint does not demonstrate a

24   basis for standing, the Court should dismiss the action.  *Warren v. Fox Family*

25   *Worldwide, Inc.*, 328 F. 3d 1136, 1139 (9th Cir. 2003).  A plaintiff "must clearly

26   and specifically set forth facts sufficient to satisfy these Article III standing

27   requirements."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  The court need

28   not accept legal conclusions in the complaint as true, even if "cast in the form of

factual allegations." *Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (citation omitted).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Furthermore, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Rule 8(a)(2) requires a claim for relief to contain a short and plain statement of the claim that shows that the plaintiff is entitled to relief.  Where a plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face," the court should dismiss.  *Twombly*, 550 U.S. 544 at 570;  *Iqbal*, 556 U.S. at 678.

A plaintiff alleging fraudulent conduct must further satisfy Rule 9(b), which requires the plaintiff to plead the circumstances constituting fraud with particularly.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *see also Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 WL 3448531, at *14 (N.D. Cal. Sept. 1, 2010) (dismissing UCL and CLRA claims because plaintiffs did not plead with particularity).  Rule 9(b) requires that a plaintiff's pleading include "the time, place and specific content of the false representations…." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  "It is not enough for her to simply claim that it is false—she must allege facts showing why it is false." *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 974 (N.D. Cal. 2014); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097,

9

1106 (9th Cir. 2003); *McCrary v. Elations Co.*, No. EDCV 13-0242 JGB OPX, 2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) (Bernal, J.) ("In order to sufficiently plead a claim for false and misleading advertising under the CLRA, FAL, and UCL, Plaintiff must plausibly allege that the claims in Defendant's marketing or advertising are false.") (citing *National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1342 (2003)). In addition, "[i]t is well settled that fraud '[a]llegations based on information and belief' do not satisfy the particularity requirement of Rule 9(b) unless the complaint sets forth the facts on which the belief is founded.'" *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) (citing *In re Worlds of Wonder Securities Litig.*, 694 F.Supp. 1427, 1432–33 (N.D. Cal. 1988)).

Requiring a plaintiff to provide at least this much is intended to require him or her "to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *see also Kearns*, 567 F.3d at 1125 (the additional pleading requirement serves to "deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'" and "to 'prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis'").

Under California law, if a consumer suspects an advertisement about a product is false or misleading, he or she cannot merely bring suit, set forth the advertisement, and allege that the company's statements or claims about the product in its advertising lack substantiation. *See Stanley v. Bayer Healthcare LLC*, No. 11CV862 BLM, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012). Instead, the consumer must allege actual facts explaining how and why the claims about the product were false or misleading. *Fraker v. Bayer Corp.*, No. CVF 08-1564 AWI, 2009 WL 5865687, at *8–9 (E.D. Cal. Oct. 6, 2009) (dismissing false advertising

1   claim where plaintiff alleged only that defendant had "no reasonable basis,

2   consisting of competent and reliable scientific evidence to substantiate" its health-

3   benefit claim related to "WeightSmart" multivitamin).  Indeed, California Business

4   & Professions Code section 17508 makes clear:  there is no private right of action

5   for lack of substantiation.  This rule "prevent[s] undue harassment of advertisers."

6   *Stanley*, 2012 WL 1132920, at *3; *Route v. Mead Johnson Nutrition Co.*, No. CV

7   12-7350-GW JEMX, 2013 WL 658251, at *4 (C.D. Cal. Feb. 21, 2013).

### III.   ARGUMENT

#### A.   Plaintiffs Lack Standing for Failure to Show Any Injury in Fact Caused by Ross.

11       To satisfy the Article III standing requirements, a plaintiff must allege facts

12   showing she suffered an injury "fairly traceable to the challenged action of the

13   defendants." *Lujan*, 504 U.S. at 560.  Here, Plaintiffs claim that they were injured

14   because they purchased items that they would not have purchased if they had

15   understood that the listed "Compare At" prices were not the "prevailing retail

16   prices" for those items.  (FAC ¶¶ 148, 157.)  Crucially, however, Plaintiffs offer no

17   support for their belief that the "Compare At" prices for the items they purchased

18   were not, in fact, the "prevailing retail prices" that they allegedly understood them

19   to be.  Plaintiffs allege that Ross's website defines "Compare at Pricing" to

20   represent "a recent documented selling price of the same or similar product in full-

21   price department stores or specialty stores" (FAC ¶ 51), but this definition is not

22   necessarily inconsistent with Plaintiffs' alleged understanding.  Plaintiffs allege no

23   facts showing otherwise.

#### 1.   Plaintiffs Similarly Lack Statutory Standing.

25       Additionally, the UCL, FAL, and CLRA have statutory standing

26   requirements.  The UCL and FAL limit standing to those persons who "ha[ve]

27   suffered injury in fact and ha[ve] lost money or property as a result of" alleged

28   unfair competition or false advertising.  Cal. Bus. & Prof. Code §§ 17204 (UCL),

1   17535 (FAL); *see Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011).[3]

2   The CLRA similarly requires a consumer to have "suffer[ed] . . . damages as a

3   result of" a violation of the statute. Cal. Civ. Code § 1780(a).

4       Here, Plaintiffs made their purchases for economic reasons.  They were

5   "motivated by the promise of a good deal" (FAC ¶ 7) and allegedly purchased items

6   because they believed they were "receiving added value, or saving a quantifiable

7   amount of money, equal to the difference between [what they] reasonably believed

8   to be verified market retail prices for the actual products [they] purchased, and the

9   Ross sale prices" (FAC ¶¶ 145, 154).  They knew what they would be charged and

10  paid those amounts.  Plaintiffs fail to allege any facts showing that they received

11  something worth less than what they paid, or that they did not get a "good deal."

12      **2.      Plaintiffs Cannot Sue Over Products Not Purchased.**

13      Plaintiffs broadly purport to bring claims on behalf of persons who

14  "purchased from Ross one or more items" of merchandise.  (FAC ¶ 159.)  They do

15  not limit the definition of "items" in any way.  District courts in this circuit have

16  held that a named plaintiff in a putative class action under the UCL or FAL "cannot

17  expand the scope of his claims to include a product he did not purchase or

18  advertisements relating to a product that he did not rely upon."  *Johns v. Bayer*

19  *Corp.*, No. 09-cv-1935, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010); *see also*

20  *Stephenson v. Neutrogena Corp.*, No. C 12-0426 PJH, 2012 WL 8527784, at *1

21  (N.D. Cal. July 27, 2012) (dismissing plaintiff's claims based on products other

22  _____

23  [3] In *Kwikset*, the California Supreme Court recognized that a

24  misrepresentation about the nature of a product could be equated with a loss of
    money or property for purposes of determining standing. The Ninth Circuit, in
    *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105-06 (9th Cir. 2013), extended that

25  holding to a retailer's alleged misrepresentations about its own earlier offering price
    for the same product. Notably, however, no court has ever held that an alleged

26  misrepresentation about what a *third party* may have charged for a similar product
    at some point in time could equate with a loss of money or property. Standing based

27  on a third party comparison claim goes far beyond any scenario contemplated by
    the California Supreme Court in *Kwikset* or the Ninth Circuit in *Kohl's*.

28

sf-3587817

1   than those he purchased where the purchased products were not sufficiently similar

2   to the non-purchased products); *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10-

3   CV-02630, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (finding that this

4   limitation on standing is "in line with the recent standard delineated by the

5   California Supreme Court in *Kwikset*").  Even if Plaintiffs were able to adequately

6   allege claims with respect to their own purchases, they cannot credibly claim to

7   represent purchasers of thousands of other "items" across dozens of highly

8   differentiated product categories such as those sold at Ross stores in California.

9   **B.   Plaintiffs Fail to State a Claim under Rule 12(b)(6).**

10  Plaintiffs' FAC purports to state five causes of action.  The first three are

11  styled as claims under California's Unfair Competition Law ("UCL"), Business &

12  Professions Code §17200, *et seq.*  Plaintiffs allege that Ross employed: 1) "Unfair,"

13  business practices by "representing false, deceptive, and/or misleading comparative

14  prices and corresponding price discounts and/or savings for merchandise" (FAC

15  ¶ 191); 2) "Fraudulent" business practices by placing false comparative prices "on

16  the price tags of the products sold in its California Ross stores [that] deceived

17  Plaintiffs . . . into believing that Defendant was offering value, discounts or

18  bargains from the prevailing market price, value or worth of the products sold that

19  did not, in fact, exist" (FAC ¶ 200); and 3) "Unlawful" business practices by its

20  "use of and reference to materially misleading, deceiving and/or false 'Compare At'

21  prices on the price tags of merchandise sold to consumers in California Ross stores"

22  in violation of the Federal Trade Commission Act, the FTC Pricing Guides, and

23  California consumer protection statutes.  (FAC ¶ 208.)

24  The fourth cause of action, styled as a claim under California's False

25  Advertising Law, alleges that Ross "fail[ed] to adequately disclose to consumers

26  what the phrase 'Compare At' means on the price tags of the merchandise in

27  California Ross stores."  (FAC ¶ 215.)  Plaintiffs also allege that Ross, apparently

28  through its simple use of the term "Compare At", "made or caused to be made [a

1  series of] untrue and/or misleading claims" regarding everything from "when other

2  merchants offered an identical product for sale" to "Defendant's sale price for a

3  product [being] a discount from the price at which other principal retail outlets in

4  California regularly sold that identical product." (*See* FAC ¶ 217.)  Plaintiffs allege

5  that the Ross set "Compare At" prices "without ascertaining and/or determining the

6  prices at which other principal retail outlets in California regularly sold the identical

7  products" and that the prices were somehow "fictitious" or "calculated by using the

8  highest sales price at which another merchant was offering" or "higher than the

9  lowest price at which a consumer would commonly be able to purchase the

10  identical product at a retail establishment in the consumer's area." (FAC ¶ 219.)

11      The fifth cause of action, styled as a claim under the Consumer Legal

12  Remedies Act ("CLRA"), alleges that Ross "made false or misleading claims to

13  consumers throughout California" about "price reductions" and the "amount of

14  savings" from purchasing particular products from Ross, not others.  (FAC ¶ 223.)

15      Although each of Plaintiffs' claims stem from allegations that Ross's prices

16  tags were "falsely, deceptively and/or misleadingly" labeled (FAC ¶¶ 8, 9),

17  Plaintiffs fail to allege any facts showing any falsehood or likelihood of deception

18  or any duty to disclose information not already disclosed by Ross.  These

19  deficiencies are fatal to each of Plaintiffs' claims.

20          **1.    The FAC Fails to Allege Facts Showing that Ross's**
21          **"Compare At" Pricing Is Inaccurate or Deceptive.**

22      Plaintiffs' lack a sound theory for how or why the "Compare At" prices to

23  which they were exposed were, in fact, misleading.  Plaintiffs' claims all rest on

24  vague and conclusory assertions that Ross's "Compare At" pricing is somehow

25  "made-up" or " fabricated" or "either fictitious or inflated" or improperly calculated

26  or improperly substantiated (FAC ¶¶ 81, 137, 219), yet Plaintiffs fail to allege any

27  specific facts to support these conclusions.  Plaintiffs have not identified a single

28  false statement attributable to Ross, let alone pled with particularity how any such

1    statement is fraudulent as required under Rule 9(b).  *See Davidson*, 76 F. Supp. 3d

2    at 974; *Vess*, 317 F.3d at 1106.  Nor have Plaintiffs pled with sufficient particularity

3    how any statement made by Ross would be likely to deceive a reasonable

4    consumer.  "'Likely to deceive' implies more than a mere possibility that the

5    advertisement might conceivably be misunderstood by some few consumers

6    viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is

7    such that it is probable that a significant portion of the general consuming public or

8    of targeted consumers, acting reasonably in the circumstances, could be misled."

9    *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Plaintiffs'

10   conclusory allegations about how a "reasonable consumer" would interpret Ross's

11   "Compare At" prices fail to meet this standard.  (*See* FAC ¶¶ 7, 49, 52-56, 69-71,

12   81-84, 86, 88, 91-92, 95, 120, 132, 167, 192, 200, 215, 219.)

13   　　　Because Plaintiffs fail to plead facts supporting their claim that Ross's

14   pricing is false or likely to deceive a reasonable consumer, their claims for UCL

15   fraud, FAL, and CLRA necessarily fail.  *See Williams v. Gerber Products Co*., 552

16   F.3d 934, 938 (9th Cir. 2008).

17   　　　Plaintiffs attempt to circumvent these pleading requirements by claiming that

18   Ross's use of the phrase "Compare At" would be considered deceptive under the

19   FTC's Pricing Guides or 1983 Policy Statement on Deception or Better Business

20   Bureau (BBB) Code of Advertising.  (*See, e.g.* FAC ¶¶ 30-41, 66, 74-75.)  But none

21   of these guidance publications create a "per se" rule that use of the phrase

22   "Compare At" is inherently deceptive or requires that a definition be disclosed on

23   the price tag.  In fact, both the BBB and the FTC recognize that "Compare At"

24   pricing "promot[es] vigorous competition among retailers" and can "help[]

25   consumers make informed purchasing decisions."  (*See, e.g.*, BBB Code of

26   Advertising, https://www.bbb.org/council/forbusinesses/code-of-advertising/.)

27   　　　Plaintiffs' discussion of the Pricing Guides also overlooks the fact that it

28   specifically allows for "Comparable Value Comparisons," which "merely indicate

15

that merchandise of 'like grade and quality' are sold by the advertiser or others in the area at the listed price" and this "can be indicated by language such as 'Comparable Value $15.00.'" 16 C.F.R. §§ 233.2(c).  Reasonable consumers would more likely interpret "Compare At" this way, rather than as a "Retail Price Comparison," which is indicated by language such as "Price Elsewhere $10, Our Price $7.50" or "Retail Value $15.00." 16 C.F.R. § 233.2(a)-(b).

At least two courts in California have recently considered the term "Compare At" and concluded that a reasonable consumer is most likely to interpret that phrase as reflecting a comparable value comparison.  *See* Order Granting Defendant's Motion to Dismiss Plaintiff's Complaint ["Order"] at 6, *Linda Rubenstein v. The Neiman Marcus Group LLC, et al.*, No. 14-cv-07155 (C.D. Cal March 2, 2015), ECF No. 32 (RJN, Exhibit A); Order Granting in Part and Denying in Part Defendant's Motion to Dismiss at 14, *Branca v. Nordstrom, Inc.* No. 14-cv-2062 (S.D. Cal. March 20, 2015), ECF No. 18 (RJN, Exhibit B).  Both courts found that bare allegations that "Compare At" pricing is "deceptive" are not sufficient to satisfy the plaintiff's burden.  The *Rubenstein* plaintiff subsequently amended the complaint to allege, as here, that the defendant was not "reasonably certain" that its prices reflected prices used by other retailers for comparable items, yet even then, the court held that the plaintiff failed to state a claim.  *See* Order Granting Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint at *supra* p. 7, *Linda Rubenstein v. The Neiman Marcus Group LLC, et al.* ("*Rubenstein II*"), No. 14-cv-07155  (C.D. Cal. May 12, 2015), ECF No. 45 (RJN, Exhibit C).

The *Branca* plaintiff also amended the complaint, but this time survived a motion to dismiss.  *See* Order Denying Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint at *supra* p. 1*, Branca v. Nordstrom, Inc.* ("*Branca II*"), No. 14-cv-2062 (S.D. Cal. Oct. 9, 2015), ECF No. 30 (RJN, Exhibit D).  That decision is distinguishable, however, because the plaintiff finally alleged *why* the "Compare At" prices were necessarily false.  Specifically, the plaintiff interpreted

16

the "Compare At" prices to represent former prices, and plausibly alleged that, contrary to this belief, the specific items were never sold elsewhere for any other price.  (*Id.* at 14.)  It was therefore logically impossible for Plaintiffs' reasonable interpretation of the "Compare At" pricing to be correct.  Here, on the other hand, Plaintiffs allege that they believed the "Compare At" prices to represent the "prevailing retail prices for the identical items at other full-price retailers" (FAC ¶¶ 148, 157), yet the FAC is entirely devoid of specific facts that would contradict this belief.  To the contrary, Plaintiffs go so far as to admit that "Defendant's 'Compare At' price could be the regular, retail price of the same item at other department stores."  (FAC ¶ 61.)  In other words, Plaintiffs not only fail to show that Ross's "Compare At" prices were necessarily false, they admit that those prices could well have been accurate.  This admission is fatal to Plaintiffs' claims.

Moreover, Plaintiffs convoluted theories are even less plausible than those asserted in *Rubenstein* and *Branca I*.  Those plaintiffs merely contended that a reasonable consumer would believe that the items had previously been sold by other retailers for the "Compare At" price.  Here, Plaintiffs insists that the items must also have been sold in the same "general area" (FAC ¶¶ 148, 157) and that Ross was required to verify that "a substantial volume of sales of the products had sold for at other principal retail outlets in California" (*See, e.g.*, FAC ¶¶ 8, 9, 41, 123, 144, 153, 217, 219.)

Plaintiffs also allege that "[r]easonable consumers believe that ARPs are not numbers that retailers estimate or make up."  (FAC ¶ 52.)  Yet the FTC guidelines recognize that comparable value comparisons may reflect good faith estimates.  *See* 16 C.F.R. § 233.2(c) (requiring only that retailer "be *reasonably certain* . . . that the price advertised . . . does not exceed the price at which merchandise is being offered by representative retail outlets in the area.") (emphasis added).

The Ninth Circuit has affirmed dismissal of UCL claims at the pleading stage where the plaintiff's theory "def[ies] common sense."  *See Stuart v. Cadbury Adams*

1   *USA, LLC*, 458 F. App'x 689, 690 (9th Cir. 2011) (affirming dismissal with

2   prejudice of UCL claim because no amendment "would cure Stuart's allegations

3   concerning the deceptive nature of Cadbury's claim that Trident White 'whitens

4   teeth' or of Cadbury's failure to make clear that its product only works with proper

5   oral hygiene"); *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x

6   113, 115 (9th Cir. 2012); *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRX,

7   2012 WL 5504011, at *4 (C.D. Cal. Oct. 25, 2012) (rejecting theory "that a

8   reasonable consumer will be deceived into thinking a box of crackers is healthful or

9   contains huge amounts of vegetables simply because there are pictures of

10  vegetables and the true phrase 'Made with Real Vegetables' on the box.")

11       Here too, consumers could not reasonably believe that, for each area in which

12  Ross does business, and for each of its thousands of products, Ross has access to

13  and reviews the proprietary sales records of other retailers to ensure that they are

14  selling substantial volumes of the item at Ross's "Compare At" price.  Plaintiffs'

15  case, based on this strained theory, should be dismissed.

16       **2.       Plaintiffs' Omission Theory Fails Because Plaintiffs**
             **Fail to Identify any Cognizable Legal Duty to Disclose.**
17

18       Plaintiffs attempt to save their UCL, FAL, and CLRA claims by alleging that

19  Ross has "intentionally failed to disclose to, and/or fraudulently concealed from,

20  Plaintiffs and all other Class Members the truth about its alleged comparative

21  prices" (FAC ¶ 133) and "failed to disclose material facts about its product pricing

22  and purported discounts."  (FAC ¶ 167(q).)  Plaintiffs fail, however, to allege any

23  actionable omission.

24       In order for an omission to be actionable under the CLRA, it must either be

25  (1) "contrary to a representation actually made by the defendant" or (2) a "fact the

26  defendant was obligated to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144

27  Cal. App. 4th 824, 835-36 (2006); *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp.

28  3d 964, 972 (N.D. Cal. 2014) ("California courts have generally rejected a broad

obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty*").  Similarly, "it appears settled that [a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008) (quoting *Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1557 (2007)) (internal quotations omitted).  A duty to disclose exists only in the following circumstances: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; and (4) the defendant makes partial representations but also suppresses some material fact.  *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997).

Plaintiffs fail to allege a basis for any purported duty of disclosure.  First, Plaintiffs do not contend that Ross is their fiduciary.  Second, the FAC does not allege any specific "affirmative acts on the part of the [D]efendants in hiding, concealing or covering up the matters complained of" and thus also fails to state a claim for active concealment.  *See Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (1963) (concluding complaint alleges "mere nondisclosure, rather than active concealment" for failure to allege affirmative acts); *see also Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n, Inc.*, 171 Cal. App. 4th 1356, 1382 (2009).

Third, Plaintiffs do not allege facts showing that Ross had exclusive knowledge of any material facts.  Plaintiffs' alleged injury relates to whether Ross's "Compare At" prices refer to the prices used by other retailers in the area.  But information about the prices charged by other retailers is equally available to them, other consumers, and Ross.  Whether Ross somehow had exclusive knowledge as to its own definition of "Compare At" (despite its website and in-store disclosures) is irrelevant under Plaintiffs' theory of causation, because as long as Ross' "Compare At" prices "could be the regular, retail price of the same item at other department stores" (FAC ¶ 61), then their expectations were met and they suffered no injury.

Fourth, to the extent Plaintiffs' duty of disclosure claim can be interpreted as relying on a theory that Ross's "Compare At" pricing was a partial disclosure—which would obligate Ross to reveal its definition on every price tag for every item in its stores—the claim still fails because Plaintiffs have not alleged any facts to show that Ross's own definition was inconsistent with Plaintiffs' beliefs with respect to the items they actually purchased.  For example, Plaintiffs offer no facts from which to conclude that prevailing price for Plaintiff Jacobo's hat was anything other than Ross's alleged $15.00 "Compare At" price.  (*See* FAC ¶ 142.)  The same is true for his Levi's belt and Plaintiff Metoyer's shoes and slippers.  (*See* FAC ¶¶ 141, 150.)  Plaintiffs simply offer no reason why the alleged "Compared At" prices for these four items could not have been the prevailing price they expected.

Moreover, even where there is a duty to disclose, if the information is in fact already available to the consumer, the defendant's business practice is not deceptive, misleading, or fraudulent as a matter of law.  *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 879-90 (1999).  Here, as Plaintiffs point out, Ross does, in fact, disclose its definition of "Compare At" pricing, both on its website and in its stores.[4]  (FAC ¶¶ 51, 87.)

Plaintiffs attempt to salvage their claim by citing extensively to sources like the FTC's Pricing Guides and ".com Disclosures" rules.  (*See, e.g.*, FAC ¶¶ 97-122.)  Unfortunately for Plaintiffs, however, the Guides state that it is *not* deceptive for retailers to label items using "Comparable Value Comparisons" such as Ross's.  (*See* 16 C.F.R. §§ 233.2(c).)  With respect to the ".com Disclosures," which Plaintiffs claim imposes a "clear and conspicuous requirement" for *any* advertising disclosures made online (*see, e.g.*, FAC ¶ 121), Plaintiffs misrepresent both the

---

[4] This important fact distinguishes the present case from the recent decision in *Horosny v. Burlington Coat Factory of California, LLC*, No. CV15-05005 SJO (MRWx), slip op. at 8 (C.D. Cal. Oct. 26, 2015) (denying motion to dismiss UCL, FAL and CLRA claims where plaintiff adequately pled a failure to disclose "what Defendant means by the term 'Compare'").

1   applicability and substance of this document.  As the publication itself explains, the

2   "clear and conspicuous requirement" referenced by Plaintiffs only applies "if a

3   disclosure is required."  (*See FTC .com Disclosures – How to Make Effective*

4   *Disclosures in Digital Advertising, 5* (March 2013), https://www.ftc.gov/sites

5   /default/files/attachments/press-releases/ftc-staff-revises-online-advertising-

6   disclosure-guidelines/130312dotcomdisclosures.pdf.)  Here, no disclosure was

7   required.  Moreover, Plaintiffs do not allege that they were confused about

8   something they saw online.  The ".com Disclosures" standards simply do not apply.

9                **3.      Dr. Compeau's 2004 Study is Irrelevant.**

10          Plaintiffs cite an 11-year old study from psychologist Larry Compeau to

11  show that the phrase "Compare At" is deceiving on its face.  Although

12  Dr. Compeau opined in 2004 that a customer "may" be deceived by the phrase

13  "Compare At," his study does not support a conclusion that the phrase is deceptive

14  in the present case.  Furthermore, it is simply untrue that Dr. Compeau "concludes"

15  that the "average reasonable consumer interprets the term 'compare at,' when

16  presented in comparison to a lower selling price for an item, to refer to 'prices

17  found in a 'regular price' department store.'" (FAC ¶ 54.)  This quotation refers to a

18  different study.  (The Journal of Consumer Affairs, Vol. 38, No. 1, 2004, at 185.)

19  In fact, Dr. Compeau's conclusion actually contradicts Plaintiff's claims here: "In

20  the present study, 'Compare At' appears to have the fairly consensual meaning of

21  the price one would pay for a comparable product at another store, or for an

22  alternative brand at the same store when not on sale. . . . When probed as to how a

23  store might obtain these 'Compare At' prices, however, only one participant

24  believed that a store would actually check the prices at other stores." (*Id.* at 184.)

25          **C.      The FAC Fails to Satisfy Additional Pleading Requirements**
                **Under UCL, FAL, and CLRA.**

26

27          Plaintiffs' UCL, FAL, and CLRA claims each fail due to the deficiencies set

28  forth above, but there are additional reasons why these claims should be dismissed.

### 1.     Plaintiffs Fail to State a Claim "Upon Which Relief Can Be Granted."

In addition to seeking injunctive relief (FAC, Prayer for Relief ¶ 6), Plaintiffs seek monetary relief under the UCL and FAL.  (FAC, Prayer for Relief ¶¶ 2-5.) They claim to be entitled to such relief on the basis that Ross improperly obtained money from them as a result of its allegedly deceptive practices (FAC, ¶¶ 197, 203, 210, 221.)  Because Plaintiffs have not alleged facts to show that the prices they paid exceed the value of the items they bought, their request for restitution fails.

Under the UCL, restitution is "confined" to "restoration of any interest in 'money or property, real or personal, which may have been acquired by means of such unfair competition.'" *Kwikset*, 51 Cal. 4th at 336; *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173-74 (2000) (defining "restitution" as "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received."); *Nilon v. Natural-Immuniogenics Corp.*, No. 3:12CV00930 LAB, 2013 WL 5462288, at *1 (S.D. Cal. Sept. 30, 2013) ("restitution . . . [is] equal to the difference between the price paid for [the consumer product at issue] and the value actually received."); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) (restitution under the UCL "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice.").

Here, because Plaintiffs have not alleged facts to show that they received something worth less than what they paid, they fail to show that they are entitled to any restitution.  The FAC fails to state any facts showing that the "Compare At" prices were not an accurate reflection of the value of the purchased items or that they were not an accurate reflection of prices actually charged by other retailers. Therefore, restitution is inappropriate.

Two recent decisions in other cases involving pricing practices support this conclusion.  *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41,

1  (7th Cir. Aug. 1, 2014) (dismissing claims under the Illinois statute because

2  plaintiff failed to plead "that he paid more than the actual value of the merchandise

3  he received"); *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13CV756, 2014 WL

4  4129576, at *7 (S.D. Ohio Aug. 19, 2014) (dismissing substantially similar claims

5  under Ohio statute because plaintiffs had not alleged "that the suits [they]

6  purchased . . . were not worth, collectively, the amount that plaintiffs paid or that

7  similar suits could have been purchased elsewhere for less").[5]

8       Because Plaintiffs have not alleged a right to any recovery, they have failed

9  to state a claim "upon which relief can be granted" (Fed. R. Civ. P. 12(b)(6)), and

10  the Court should dismiss the Complaint.  *Calamore v. Juniper Networks Inc.*, 364

11  F. App'x 370, (9th Cir. 2010) (affirming dismissal where plaintiff "requests no

12  remedy that the court can provide").

13                   **2.      The FAC Cannot Support an "Unfairness" Claim.**

14       The UCL defines "unfair competition" to include unlawful, fraudulent, and

15  unfair business acts and practices and furnishes a private right of action to a

16  plaintiff who has suffered injury in fact and lost money or property as a result.

17  Cal. Bus. & Prof. Code §§ 17200, 17204.  A business act or practice is "unfair"

18  when it "offends an established public policy or ... is immoral, unethical,

19  oppressive, unscrupulous or substantially injurious to consumers."  *Scripps Clinic*

20  *v. Superior Court*, 108 Cal. App. 4th 917, 939 (2003).  As the FAC fails to allege

21  any unfair conduct, or facts to show that Ross's prices are deceptive, other than an

22  unsubstantiated belief that the "Compare At" prices were too high, they fail to state

23  any UCL unfairness claim. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

24  ────────────────

25  [5] Although these cases concern damages rather than restitution, the holdings demonstrate the basic principle that a plaintiff is not entitled to damages or restitution if the value of the goods she received is not less than amount she paid for

26  them.  *See, e.g.*, Cal. Civ. Code § 3343(a) (measure of damages in fraud cases is the "difference between the actual value of that with which the defrauded person parted

27  and the actual value of that which he received").

28

### 3. The FAC Cannot Support an "Unlawful" Claim.

To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999); *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 673 (1998) ("[T]he Act requires a violation of law, and…a defense to the underlying offense is a defense under the Act"); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1206 (S.D. Cal. 2010) (UCL claim "stands and falls with the viability of Plaintiff's other claims").

Here, Plaintiffs claim that Ross violated the "unlawful" prong of the UCL by violating the CLRA, the other prongs of the UCL, the FAL, and the FTCA. Plaintiffs' claims under each of these "laws" is grounded in Plaintiffs' theory that Ross's "Compare At" pricing is false or misleading. Because Plaintiffs offer no support for this premise, Plaintiffs' claims necessarily fail.

### 4. The FAC Fails to Support A False Advertising Claim.

Plaintiffs claim that Ross violated Cal. Bus. & Prof. Code § 17501 (FAC ¶ 208), which prohibits advertising "a former price of any advertised thing, unless the alleged former price was the prevailing market price [i.e. the worth or value of any thing advertised] within three months next immediately preceding the publication of the advertisement." (*See also* FAC ¶ 212.) However, Plaintiffs do not allege that they believed Ross's "Compare At" prices represented a former price at which Ross or any other retailer sold items, or that they purchased the items based on this assumption. (*See Branca*, RJN, Exhibit B at 12.) ("Plaintiff fails entirely to allege that he believed the "Compare At" price constituted a former price at which retailers other than Nordstrom had previously sold the same item, when in fact such stores did not."). Accordingly, Plaintiffs cannot show that the FAL statute applies.[6]

---

[6] Even if the statute were applicable in this case, Plaintiffs fail to allege any facts indicating that Ross's "Compare At" prices were not the "prevailing market

(Footnote continues on next page.)

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

sf-3587817

1    A plaintiff bringing a claim under the FAL must also sufficiently plead "the

2 defendants knew, or by the exercise of reasonable care should have known, that the

3 statements were untrue or misleading." Cal. Bus. & Prof. Code § 17500; *Miller v.*

4 *Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 873 (N.D. Cal. 2012); *see also*

5 *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011);

6 *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App.

7 4th 1336, 1342 (2003).  Because Plaintiffs fail to allege facts supporting their claim

8 that "Compare At" pricing is deceptive, there is no basis to infer that Ross had

9 knowledge of any false statement allegedly made to Plaintiffs.

10          **5.**     **The FAC Fails to State a Claim under the CLRA.**

11    Plaintiffs claim that Ross violated California Civil Code § 1770(a)(13),

12 which prohibits certain statements regarding "price reductions."  (FAC ¶ 229.)

13 Plaintiffs fail to state a claim because they do not identify any misleading statement

14 of fact by Ross regarding "price reductions."  Although the FAC uses the phrase

15 "price reductions" to describe Ross's "Compare At" pricing, Plaintiffs do not allege

16 that the "Compare At" price represents a reduction from any other price.

17    Furthermore, § 1770(a)(13) of the CLRA does not even address the kind of

18 comparable-value comparison pricing alleged in the FAC.  *See Rubenstein*, p. 8

19 (May 12, 2015) (". . . advertising a price as a "Compared to" price is not advertising

20 a price as a former price.").  Plaintiffs' CLRA claim fails even if they could allege

21 facts demonstrating a failure to comply with 16 C.F.R. § 233, which they have not.

22    Finally, the CLRA claim fails because Plaintiffs never allege "any damage as

23 a result of a method, act, or practice declared to be unlawful by Section 1770." Cal.

24 Civ. Code § 1780(a); *Hinojos*, 718 F.3d at 1107-08.

25

26 (Footnote continued from previous page.)

27 price as above defined within three months next immediately preceding the
publication of the advertisement."  Cal. Bus. & Prof. Code § 17501.

28

IV.   CONCLUSION

For the foregoing reasons, Ross respectfully requests that the Court grant its motion to dismiss for failure to state a claim under which relief can be granted and for lack of standing.

Dated:  October 29, 2015                    MORRISON & FOERSTER LLP


By:  _____/s/ David F. McDowell_____
        DAVID F. MCDOWELL

        Attorneys for Defendant
        ROSS STORES, INC.

sf-3587817

1

**CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that on the 29th day of October, 2015, the

3   foregoing document was filed electronically on the CM/ECF system, which caused

4   all CM/ECF participants to be served by electronic means.

5

6   Dated:  October 29, 2015                    MORRISON & FOERSTER LLP

7

8                                        By:       /s/ David F. McDowell
                                               DAVID F. MCDOWELL
9
                                               Attorneys for Defendant
10                                              ROSS STORES, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

sf-3587817