Douglas Caiafa, Esq. (SBN 107747)
DOUGLAS CAIAFA, A Professional Law Corporation
11845 West Olympic Boulevard, Suite 1245
Los Angeles, California 90064
(310) 444-5240 - phone; (310) 312-8260 - fax
Email: dcaiafa@caiafalaw.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
77-760 Country Club Drive, Suite G
Palm Desert, California 92211
(760) 469-5986 - phone; (760) 345-1581 - fax
Email: cjmorosoff@morosofflaw.com

Attorneys for Plaintiffs JOSE JACOBO, et al.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JOSE JACOBO, et al.,<br><br>                    Plaintiffs,<br><br>       vs.<br><br>ROSS STORES, INC., et al.,<br><br>                    Defendants. | Case No. 2:15-cv-04701-MWF-AGRx<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Courtroom: 1600<br>Date:        February 5, 2016<br>Time:        11:00 a.m.<br>Judge:      Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

**Page**

I.   ISSUES PRESENTED ................................................................. 1

II.  SUMMARY OF ARGUMENT..................................................... 1

III. INTRODUCTION AND SUMMARY OF FACTS........................................ 3

IV.  ARGUMENT.............................................................................. 4

A.   Plaintiffs Have Article III and Statutory Standing ......................................... 5

   1.   This Court's Broad Power to Order Restitution in False
        Advertising Cases is Not Restricted to One Narrow Measure............ 7

B.   Plaintiffs' FAC Satisfies Rule 12(b)(6).......................................... 12

   1.   No Reasonable Consumer Would Believe the Phrase "Compare At"
        May Have Two Different Possible Meanings...................................... 13

        a.   *How a Reasonable Consumer Would Interpret*
             *"Compare At" Requires a Determination of the*
             *Ultimate Disputed Issue of Fact and Should*
             *Not be Made on a Motion to Dismiss* ........................................ 14

        b.   *Reasonable Consumers Interpret "Compare At" to be a*
             *Reference to Actual Retail Market Prices* ................................. 16

i

c.    *No Reasonable Consumer Would Believe a "Compare At" Price May Be a Reference to Either One of Two Different Possible Prices* ........................................................................ 17

2.    Defendant's "Compare At" Price Advertising is Misleading and Violates FTC Guidelines ...................................................... 18

a.    *FTC Guidelines Require More than the Simple Unqualified Phrase, "Compare At"* ............................................. 19

b.    *Defendant's Disclosure is Not Clear or Conspicuous* .............. 20

C.    Plaintiffs Provide Sufficiently Specific Factual Allegations ........................ 21

1.    Defendant Demands More Specificity Than is Required ................... 22

2.    Plaintiffs Have Met the Required Pleading Standards ........................ 22

D.    Plaintiffs Have Standing To Pursue Claims On Behalf of All Customers Who Purchased Items With "Compare At" Price Tags ................................. 23

V.    CONCLUSION ........................................................................... 24

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

<u>**Page Nos.**</u>

**FEDERAL CASES**

*Astiana v. Kashi Co.*
     291 F.R.D. 493 (S.D. Cal. 2013) ..................................................9

*Branca v. Nordstrom, Inc.*,
     14-cv-02062-MMA (JMA) (U.S.D.C. S.D. Cal., October 9, 2015) ......... passim

*Camasta v. Jos. A. Bank Clothiers, Inc.*
     761 F.3d 732 (7th Cir. 2014) ......................................................5

*Cliffdale Assocs., Inc.*,
     103 F.T.C. 110 (1984) ...............................................................20

*Daghlian v. DeVry Univ., Inc.*
     461 F.Supp.2d 1121 (C.D. Cal. 2006) .........................................10

*Dean v. Colgate-Palmolive Co.*,
     2015 WL 3999313 (C.D. Cal. 2015) .......................................21,23

*Dorsey v. Rockhard Laboratories, LLC*,
     2014 WL 4678969 (C.D. Cal. 2014) ................................... 13,21,24

*Hinojos v. Kohl's Corporation*,
     718 F.3d 1098 (9th Cir. 2013) .............................................. passim

*Horosny, et al. v. Burlington Coat Factory of CA, LLC*, et al.,
     15-cv-05005-SJO (MRWx) (U.S.D.C. C.D. Cal. October 26, 2015) ....... passim

*In re ConAgra Foods, Inc.*,
     908 F.Supp.2d 1090 (C.D. Cal. 2012) ......................................12,13

*Johnson v. Jos. A. Bank Clothiers, Inc.*
     2014 WL 4129576 (S.D. Ohio 2014) ...........................................5

*Matoff v. Brinker Rest. Corp.*,
     439 F.Supp.2d 1035 (C.D. Cal. 2006) .......................................11,12

*Mazza v. Am. Honda Motor Co.,*

    666 F.3d 581 (9th Cir. 2012) ....................................................................5,6

*Miller v. Ghirardelli Chocolate Co.,*

    912 F.Supp.2d 861 (N.D. Cal. 2012)........................................... passim

*Morongo Band of Mission Indians v. Rose,*

    893 F.2d 1074 (9th Cir. 1990).................................................................25

*Pulaski & Middleman, LLC, v. Google, Inc.,*

    -- F.3d -- (9th Cir. 2015), 2015 WL 5515617 (Sept. 21, 2015) ..................7,14

*Russel v. Kohl's Department Stores, Inc.,*

    15-cv-01143-RGK (SPx) (U.S.D.C. C.D. Cal. October 6, 2015) ...............11,12

*Spann v. J.C. Penney Corp.*

    2015 WL 1526559 (C.D. Cal. 2015) ..................................................... 9,10,11

*Starr v. Baca,*

    652 F.3d 1202 (9th Cir. 2011) ....................................................................13

*Williams v. Gerber Products Co.,*

    552 F.3d 934 (9th Cir. 2008) .................................................................. passim


**STATE CASES**

*Colgan v. Leatherman Tool Group, Inc.*

    135 Cal.App.4th 663 (2006).........................................................................9

*Cortez v. Purolator Air Filtration Prod's Co.,*

    23 Cal.4th 163 (2000).................................................................8,9,10,11

*Fletcher v. Security Pac. Nat'l Bank*

    22 Cal.3d 442 (1979)..............................................................................8,11

*In re Vioxx Class Cases*

    180 Cal.App.4th 116 (2009).........................................................................10

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Kwikset Corp. v. Sup. Ct.*
    51 Cal.4th 310 (2011) ................................................................6
*People v. Jayhill Corp*.
    9 Cal.3d 283 (1973) ...................................................................8
*People v. Overstock.com* (Statement of Decision)
    (Alameda Cty. Sup. Ct. Case No. RG10-546833; Feb. 5, 2014) ........... 15,16,18
*People v. Thomas Shelton Powers, M.D., Inc*.
    2 Cal.App.4th 330 (1992) ......................................................... 11
*People v. Toomey*,
    157 Cal.App.3d 1 (1984) .............................................................8

**STATUTES AND RULES**

U.S. Const. Art. III ....................................................................5
Cal. Bus. & Prof. Code §17200 (UCL) ............................................. passim
Cal. Bus. & Prof. Code §17500 (FAL) .............................................. passim
Fed. R. Civ. Proc. 9(b) ..............................................................21,22
Fed. R. Civ. Proc. 12(b)(6) ..........................................................12,22
Fed. R. Civ. Proc. 15(a) ..............................................................25
Illinois Consumer Fraud and Deceptive Business Practices Act ...........................5
Illinois Uniform Deceptive Trade Practices Act ......................................5
Ohio Consumer Sales Practices Act .....................................................5
16 Code of Fed. Regs. § 233 ........................................................ passim

**OTHER AUTHORITIES**

Better Business Bureau Code of Advertising
    http://www.bbb.org/council/for-businesses/code-of-advertising ................18
Compaeu, *et al*.,
    *Consumers' Interpretations of the Semantic Phrases Found in*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Reference Price Advertisements*,

The Journal of Consumer Affairs, Vol. 38, No. 1 (2004) ...........................16,18

Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald,

*An Investigation Into the Effects of Advertised Reference Prices*

*On the Price Consumers Are Willing To Pay For the Product*,

6 J. of App'd Bus. Res. 1 (1990) .................................................................18

FTC Policy Statement on Deception

(Oct. 14, 1983) .........................................................................................16,20

Joan Lindsey-Mullikin & Ross D. Petty,

*Marketing Tactics Discouraging Price Search:*

*Deception and Competition*,

64 J. of Bus. Research 67 (January 2011) ....................................................18

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    ISSUE PRESENTED:

The overriding issue here is whether the Court should decide at the pleading stage on a motion to dismiss whether a reasonable consumer is likely to be misled or confused by the undefined, unqualified phrase "Compare At" on a price tag.  In other words, should the Court decide, on the pleadings alone, whether Defendant's Compare At price advertising is deceptive, misleading, or confusing to a reasonable consumer?

### II.    SUMMARY OF ARGUMENT:

Each product offered for sale at Ross stores is displayed with a comparative price tag which provides 2 prices: the Ross sale price and another significantly higher price described simply as the "Compare At" price. (Plaintiffs' First Amended Complaint ("FAC") at ¶¶ 15-16).  Defendant purports to provide a disclosure of what the phrase "Compare At" is supposed to mean, but that disclosure is buried on Defendant's website or out of plain view on a sign in its stores. (FAC ¶¶ 50-51, 80, 85, 87).  Defendant's disclosure is not placed anywhere near the Compare At price tags themselves. (Id.).  More importantly, Defendant's disclosure, even if a consumer were to see it prior to purchasing an item, does not actually define what the Compare At price associated with any specific item is.  Defendant's disclosure describes the "Compare At" price as being *either* the price of the "same" "identical" item, or the price of a "similar" item. (FAC ¶51).  Consumers, including Plaintiffs, are left to interpret on their own what the Compare At price is, or guess which of the two alternative definitions apply to any item. (FAC ¶¶ 82, 87).

No reasonable consumer would interpret the phrase "Compare At" on a price tag the way that Defendant defines it.  Defendant contends that its Compare At prices may be a reference to one of two different alternatives: "a recent documented selling price" at other stores of either (1) "the same" "identical product; or (2) a "similar" product, or a product with a similar style.  (Defendants' Motion to Dismiss ("MTD")

at p. 2:2-12).  Defendant further contends that it fully discloses this multi-part definition to consumers.  (Id.).  Plaintiffs' FAC alleges that: (1) reasonable consumers do not interpret Defendant's Compare At prices as comparable value or "similar product" comparisons, but rather as actual retail prices of identical products (FAC ¶¶ 55, 69, 71, 81); (2) Defendant's disclosure is not made clear or conspicuous to consumers, as required by FTC guidelines (FAC ¶¶ 50-51, 80, 85, 87); and, (3) the disclosure itself, even if it were conspicuous, is misleading, and shows the unlawfulness of Defendant's Compare At prices (FAC ¶¶ 51, 78-83, 89).

Defendant's Compare At pricing violates FTC guidelines.  The FTC Guides Against Deceptive Pricing, 16 Code of Fed. Regs. § 233.2(c) ("FTC Guides"), require that if Defendant intends its Compare At reference prices to be comparable value comparisons, it must make "clear to the consumer that a comparison is being made with other merchandise."  The FAC alleges that Defendant does not make clear to consumers that its Compare At prices are comparable value comparisons. (FAC ¶¶ 51, 78-83, 87, 89).  The FAC alleges that Defendant's supposed disclosure is unclear, deceptive and misleading.  (Id.).  The FAC further alleges that Defendant's disclosure is not presented conspicuously to consumers, but is buried on a website or placed out of plain view on signage in Defendant's stores far from and nowhere near where the Compare At price is actually presented to customers.  (FAC ¶¶ 50-51, 80, 85, 87).

Defendant's use of a dual definition of its phrase, "Compare At," is deceptive and does not comply with FTC guidelines.  The FTC does not permit retailers to use two different possible definitions for a reference price.  The FTC Guides require that a reference price be *either* a valid, verifiable reference to an identical item *or* a comparable item – not either/or, or both.  FTC Guides, 16 Code of Fed. Regs. §233.2. Defendant's disclosure itself reveals that its Compare At prices are misleading and do not comply with this requirement.  (FAC ¶¶ 51, 78-83, 89).

Reasonable consumers do not understand Defendant's "Compare At" prices to be a reference to one of two different possible prices.  The FAC alleges that a

-2-

reasonable consumer would not believe that a comparative reference price on an item accompanied by the simple undefined, unqualified phrase, "Compare At," could have two different possible definitions. (FAC ¶¶ 55, 69, 71, 81). Yet that is precisely how Defendant defines its Compare At reference prices. (FAC ¶ 51).

The FAC also adequately alleges facts which, taken as true, show that Defendant's Compare At prices were material to Plaintiffs, and that Plaintiffs suffered injury (i.e., lost money or property) as a result of Defendant's deceptive reference price advertising. (FAC ¶¶ 7-9, 140-158). Finally, Plaintiffs' claims do not depend on what type of products they purchased, the specific characteristics of those products, or the exact prices listed on the tags of the products they purchased. Rather, Plaintiffs' claims relate to the consistent format of the tags: the juxtaposition of two prices and the term "Compare At" in relation to the higher price. Thus, Plaintiffs have standing to sue on behalf of all Ross customers who purchased any item during the Class Period with a Compare At price tag.

## III.   INTRODUCTION AND SUMMARY OF FACTS:

Plaintiffs' FAC alleges that: (1) Plaintiffs purchased products from Ross which were advertised with Compare At reference prices (FAC ¶¶ 7-9, 140-158); (2) Defendant's Compare At prices are false, deceptive, and/or misleading (Id.); (3) Plaintiffs saw and relied on the reference prices in making their decisions to buy the items they bought from Defendant (Id.); (4) the Compare At prices were material – they mattered to Plaintiffs (FAC ¶¶ 7-9, 18-29, 140-158); (5) Plaintiffs reasonably believed that the Compare At prices were current, or at least recent, prevailing market prices of identical items (FAC ¶¶ 55, 69, 71, 81, 140-158); (6) the products they purchased from Ross had a higher value to them because of the Compare At prices (FAC ¶¶ 26, 28, 145, 154); and, (7) Plaintiffs lost money as a result of their reliance on the Compare At prices in that they paid more for the items they purchased than the actual value they received (FAC ¶¶ 26, 28, 140-158).

/ / /

## IV.   **ARGUMENT**:

To state a claim for violation of California's false advertising laws, Plaintiffs need only allege that Defendant disseminated advertising that is false, misleading or "has a capacity, likelihood or tendency to deceive or confuse the public," and that reasonable consumers are likely to be deceived by Defendant's advertising. *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008). Plaintiffs here allege that Defendant disseminated deceptive price comparison advertising in the form of "Compare At" price tags affixed to each item sold at each of its California stores, and that reasonable consumers are deceived by Defendant's "Compare At" prices.

Plaintiffs must also allege that they purchased merchandise from Defendant on the basis of the deceptive, misleading, or confusing "Compare At" price tags, and that they would not have made those purchases but for the comparative price representations. *Hinojos v. Kohl's Corporation*, 718 F.3d 1098, 1104 (9th Cir. 2013). Plaintiffs' FAC alleges that Defendant's "Compare At" prices have the capacity or tendency to deceive or confuse a reasonable consumer, Plaintiffs purchased merchandise from Ross in reliance on Defendant's "Compare At" prices, and they would not have purchased that merchandise but for the deceptive or misleading reference prices. (FAC ¶¶ 7-9, 140-158). Plaintiffs have therefore alleged facts sufficient to state claims for violation of California's UCL, FAL, and CLRA.

The Ninth Circuit has recently held that "all a consumer need allege to establish standing to bring a UCL or FAL claim is that (1) the defendant made a false representation about a product, (2) the consumer purchased the product in reliance on the misrepresentation, and (3) he would not have purchased the product otherwise." *Hinojos*, 718 F.3d at 1109. Plaintiffs' FAC satisfies this pleading requirement. The FAC alleges that Defendant's use of the simple unqualified phrase "Compare At" is misleading, or at least has a tendency to mislead or confuse a reasonable consumer, and therefore requires a qualifying disclosure to eliminate the phrase's inherent ambiguity. The FAC further alleges that Defendant's disclosure is inadequate, is not

-4-

clear and/or conspicuous, and does not comply with FTC guidelines. The FAC alleges all that is necessary to state valid claims. Defendant's MTD should be denied because Plaintiffs have adequately alleged that Defendant's "Compare At" reference price advertising "has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938.

## A. Plaintiffs Have Article III and Statutory Standing:

To have standing under Article III of the United States Constitution: (1) the plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the challenged conduct; and, (3) it must be likely that the injury can be redressed by a favorable decision. U.S. Const. Art. III, § 2; *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 594 (9th Cir. 2012). Defendant erroneously argues that Plaintiffs have suffered no injury in fact because they got what they paid for – they got "the benefit of their bargain." (MTD at p. 8:14). Defendant's "benefit of the bargain" defense, however, has been soundly rejected by the Ninth Circuit.

Defendant cites to and relies on 2 irrelevant out of circuit cases to support its "benefit of the bargain" argument. What Defendant fails to mention is that the courts of this circuit, including the Ninth Circuit in *Hinojos*, reject that theory. In *Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732 (7th Cir. 2014), the Seventh Circuit held that under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) and Uniform Deceptive Trade Practices Act (UDTPA) the plaintiff failed to state facts sufficient to show that he lost money as a result of defendant's false advertising because he got "the benefit of the bargain." *Id*. at 739-740. In *Johnson v. Jos. A. Bank Clothiers, Inc*., 2014 WL 4129576 (S.D. Ohio 2014), a case brought under Ohio's Consumer Sales Practices Act ("OCSPA"), the district court in Ohio considered *Hinojos* and specifically "decline[d] to import the Ninth Circuit's theory of loss" articulated in *Hinojos*. *Id*. at *6-7. Instead, the court decided to follow *Camasta's* "benefit of the bargain" rule, specifically contrasting the rule in *Camasta* with the rule in *Hinojos*. *Id*. at *7.

It suffices the say that this case is not brought under the ICFA, UDTPA, or the OCSPA, and is not governed by the Seventh Circuit's "benefit of the bargain" rule. This case is brought under the UCL, FAL, and CLRA, and is governed by the Ninth Circuit's contrary ruling in *Hinojos*.

The Ninth Circuit has "explained that when, as here, 'Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *Hinojos*, 718 F.3d at fn. 3 (citing *Mazza,* 666 F.3d at 595). In this case, Plaintiffs allege that they paid more for the items they bought from Defendant than they otherwise would have paid, and that they bought those items from Defendant when they otherwise would not have done so, as a result of Defendant's deceptive price comparisons. Plaintiffs' FAC thus adequately alleges that they suffered Article III injury in fact.

Plaintiffs here allege that they purchased products in reliance on deceptive price comparison advertising, and have thus also adequately alleged that they suffered an "obvious economic injury." *Hinojos*, 718 F.3d at 1106. "[T]he bargain hunter's expectations about the product he just purchased is *precisely* that it has a higher perceived value and therefore has a higher resale value." *Id*. (emphasis in original). *Hinojos* ruled that false advertising plaintiffs adequately allege that they "paid more than [they] actually valued the product" when, as here, they allege "that the advertised discounts conveyed false information about the goods [they] purchased," and that they "would not have purchased the goods in question absent this misrepresentation." *Id*. at 1104-1105. *Hinojos* specifically found that allegations such as those in the FAC here adequately allege that Plaintiffs paid more for the products they purchased than the value they received. *Id*.

Quoting from the California Supreme Court's decision in *Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310 (2011), the court in *Hinojos* explained:

"From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue."

*Hinojos*, 718 F.3d at 1104.

The FAC adequately alleges that in reliance on Defendant's deceptive reference prices Plaintiffs paid more for Defendant's products than they actually valued those products. "Where plaintiffs are 'deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately.'" *Pulaski & Middleman, LLC, v. Google, Inc.*, -- F.3d -- (9th Cir. 2015), 2015 WL 5515617 (Sept. 21, 2015), at *7 (emphasis in original). Here, Plaintiffs allege that they were deceived into making purchases. Plaintiffs have therefore adequately alleged that they suffered economic harm and have both Article III and statutory standing.

### 1. This Court's Broad Power to Order Restitution in False Advertising Cases is Not Restricted to One Narrow Measure:

The UCL, Cal. Bus. & Prof. Code §17203, authorizes the Court to make any order that "may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, . . . or as may be necessary to restore to any person … any money or property … which may have been acquired by means of such unfair competition." Likewise, the FAL, Cal. Bus. & Prof. Code §17535

-7-

empowers the Court to enjoin any person or corporation which violates the FAL, and issue any order "as may be necessary to prevent the use or employment by any person, [or] corporation, . . . of any practices which violate [the FAL], or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice . . . declared to be unlawful." Defendant reads these provisions incorrectly. This Court is not restricted to only one limited measure of restitution.

The UCL and FAL grant trial courts broad powers to fashion remedies "to effect complete justice" in any given case. *Fletcher v. Security Pac. Nat'l Bank*, 22 Cal.3d 442, 449 (1979), long ago held that "[t]he general equitable principles underlying §17535 (and presumably also §17203) as well as its express language arm the trial court with the cleansing power to order restitution to effect complete justice." See also, e.g. *People v. Toomey*, 157 Cal.App.3d 1, 20 (1984) ("§17535 vests the trial court with broad authority to fashion a remedy that will prevent unfair trade practices and will deter the defendant and others from engaging in such practices in the future."); *People v. Jayhill Corp*., 9 Cal.3d 283, 286 (1973) (under the FAL, a trial court "may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the status quo ante as nearly as may be achieved."). Defendant's reading of the UCL and FAL as severely limiting the Court's authority to order restitution or injunctive relief is at clear odds with both the plain language of the statutes and judicial interpretation of them.

Defendant's argument that there is only one limited measure of restitution available to this Court is wrong. Defendant cites *Cortez v. Purolator Air Filtration Prod's Co.,* 23 Cal.4th 163 (2000) ("*Cortez*"), for the incorrect proposition that the only measure of restitution available under the UCL or FAL is the difference between what the plaintiff paid and the value of what the plaintiff received. Defendant's reliance on *Cortez*, however, is misplaced. *Cortez* in fact imposes no such limitation. In *Cortez*, the California Supreme Court held that a trial court's discretion in

fashioning a remedy under the UCL "is very broad," and that the purpose of UCL remedies are "deterrence of and restitution for unfair business practices." *Id.* at 179-180. *Cortez* did not hold that there was only one measure of restitution available to courts in false advertising cases. Rather, *Cortez* instructed that one "element of restitution," not the *only* measure, is "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received." *Id.* at 174. This excess payment measure of restitution is one element of restitution, not the *only* element. The *Cortez* Court actually ruled that "[t]he concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person." *Id.* at 178. This ruling belies Defendant's insistence that this Court is somehow limited in its ability to fashion a restitutionary remedy in false advertising cases.

The broad authority conferred upon the Court to measure and award restitution in false advertising cases such as this permits the Court to order, among other things, disgorgement of gross receipts and/or profits. The district court in *Spann v. J.C. Penney Corp.*, 2015 WL 1526559 (C.D. Cal. 2015), confronting the issue of available remedies in false advertising cases, recently examined the question of what measures of restitution are available to district courts in cases such as this. Relying on the language of the statutes themselves, as well as California case law such as *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 (2006), and *Cortez*, the district court found that the UCL and FAL's restitution provisions are to be given "a broad, liberal reading," and that they "arm the trial court with the cleansing power to order restitution to effect complete justice." *Spann*, 2015 WL 1526559, at *3. See also, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) ("A court awarding restitution under the California consumer protection laws has 'very broad' discretion to determine an appropriate remedy award . . .").

The district court in *Spann* recognized at least three alternative measures of restitution which may be available to courts in false advertising cases such as this.

-9-

*Spann* at \*4 ("although California case law makes clear that repayment of the difference between what the plaintiff paid and the value of what the plaintiff received can be a measure of restitution, *see, e.g., In re Vioxx Class Cases,* 180 Cal.App.4th 116, 131 (2009), defendant has not cited, nor has the court found, any authority indicating that is the only way restitution can be calculated.").  The measures of restitution available in false advertising cases such as this include, among others:

- **Complete restitution with rescission** (i.e., return of the product purchased): "Rescission with complete restitution can be an appropriate remedy under the laws at issue in this case," (i.e., the UCL, FAL, and/or CLRA).  *Spann* at \*6.  *Cortez* also reiterated that one available remedy to victims of false advertising is to provide those consumers the opportunity to rescind the transaction and obtain a refund.  23 Cal.4th at 177.  Therefore, one possible remedy in this case, as properly pled and requested in Plaintiffs' FAC here, is for the Court to offer Plaintiffs the opportunity to return the products they purchased from Defendant and receive a refund of the total purchase price of those items.

- **False discount value**:  an amount of restitution based on "the crux of this case: . . . that defendant's discounts were false, and that customers did not actually save any money at all."  *Spann* at \*7.  In other words, an amount that compensates for the consumer's deceptively induced "expectation of a discount."  *Id.*  The court held that because "the amount plaintiff thought she was saving was a factor in her purchase decisions," the amount of the false discount may also be a proper measure of restitution because it may "restore sums acquired through defendant's allegedly unfair pricing practices."  *Id.*  See also, *Daghlian v. DeVry Univ., Inc.*, 461 F.Supp.2d 1121, 1156 (C.D. Cal. 2006) ("The fact that [plaintiff] may have received some value . . . does not mean that he suffered no injury.").

- **Defendant's net profits**:  The court found that "restitutionary disgorgement" is another available remedy to false advertising plaintiffs, including the return of any monies that the defendant retailer received directly from the plaintiff class

members, minus "the cost basis for the products purchased." *Spann* at *8.  In other words, net profits.  The court found that the disgorgement of all net profits may "yield a proper measure of restitution" in cases such as this.  *Id*.  See also, e.g., *Cortez*, 23 Cal.4th at 182 (concurring opinion) ("in general, as between a person who is enriched as the result of his or her violation of the law, and a person intended to be protected by the law who is harmed by its violation, for the violator to retain the benefit would be unjust."); *Fletcher*, 22 Cal.3d at 450 ("The requirement that a wrongdoing entity disgorge improperly obtained moneys surely serves as the prescribed strong deterrent."); *People v. Thomas Shelton Powers, M.D., Inc*., 2 Cal.App.4th 330, 340 (1992) ("there is little question but that the broad range of remedies provided for [in §17203] includes restitution and/or disgorgement of profits. . . . [I]t is settled that such remedies are proper in an action brought for false advertising."); *Matoff v. Brinker Rest. Corp*., 439 F.Supp.2d 1035, 1038-1039 (C.D. Cal. 2006) ("Disgorgement of profits is available under the UCL" if it is "restitutionary.").

The court in *Russel v. Kohl's Department Stores, Inc*., 15-cv-01143-RGK (SPx) (U.S.D.C. C.D. Cal. October 6, 2015), in another deceptive price tag case pending in this district, recently agreed with *Spann* and ruled that "Plaintiffs need not allege a cost-minus-value measure of restitution to survive a Motion to Dismiss because alternative measures of restitution are available."  *Id*. at *6.  In denying defendant's motion to dismiss based on the same argument raised by Defendant here, Judge Klausner ruled that "Plaintiffs may pursue a measure of restitution similar to any of the methods discussed in *Spann*."  *Id*.  The court went on to state:

> "While it remains to be seen whether Plaintiffs can adduce sufficient evidence of a measurable amount of restitution, such an inquiry is premature at this early stage. . . . Here, Plaintiffs allege that Defendant's misrepresentation as to the nature and amount of price discounts induced them to purchase Defendant's merchandise which they otherwise would

-11-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

not have purchased. As a result, Plaintiffs seek restitution for the amount
by which Defendant has been unjustly enriched. Even though Plaintiffs
have not alleged that the price they paid exceeds the value of the
merchandise they purchased, they have still alleged sufficient facts to
support a claim for restitution under the UCL and FAL."

*Id*. Similarly here, the FAC alleges that Defendant's misrepresentation as to the
nature and amount of price discounts induced them to purchase Defendant's
merchandise which they otherwise would not have purchased.  Plaintiffs here also
seek restitution for the amount by which Defendant has been unjustly enriched.  As in
*Russell*, Plaintiffs here have "alleged sufficient facts to support a claim for restitution
under the UCL and FAL."  *Id*.

**B.**    <u>**Plaintiffs' FAC Satisfies Rule 12(b)(6)**</u>:

To prevail on its MTD, Defendant must convince the Court that Plaintiffs have
failed to plead facts, which taken as true, support the claim that Defendant's price
advertising is either actually misleading or has a capacity, likelihood or tendency to
deceive or confuse a reasonable consumer.  *Williams*, 552 F.3d at 938.  Defendant has
failed to carry its burden.

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the
complaint.  *In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1096-1097 (C.D. Cal.
2012).  Under Rule 12(b)(6), dismissal is proper only where there is either a "lack of
a cognizable legal theory," or where there is "the absence of sufficient facts alleged
under a cognizable legal theory."  *Id*.  "A complaint should not be dismissed unless it
appears beyond doubt that the plaintiff can prove no set of facts in support of the
claim that would entitle the plaintiff to relief."  *Matoff*, 439 F.Supp.2d at 1036.

"In considering a motion to dismiss, a court must accept all of the plaintiff's
allegations as true and construe them in the light most favorable to the plaintiff."
*Miller v. Ghirardelli Chocolate Co*., 912 F.Supp.2d 861, 873 (N.D. Cal. 2012)
("*Miller*").  The court's review is limited to the face of the complaint, materials

incorporated into the complaint by reference, and matters of which the court may take judicial notice.  *In re ConAgra*, 908 F.Supp.2d at 1096-1097.  "A complaint will survive a motion to dismiss when it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Dorsey v. Rockhard Laboratories, LLC*, 2014 WL 4678969 at *2 (C.D. Cal. 2014).  The pleading must contain more than mere "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions," to survive a motion to dismiss.  *Id*.  A motion to dismiss, though, "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."  *Williams*, 552 F.3d at 938.

To survive a motion to dismiss, a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  In this case, the FAC contains sufficient factual allegations to give Defendant fair notice of Plaintiffs' claims and enable Defendant to effectively defend itself.  The factual allegations also plausibly suggest Plaintiffs are entitled to relief, and it is therefore not unfair to require Defendant to answer Plaintiffs' FAC and litigate this case.  It is a "rare situation" where dismissing claims brought under California's false advertising laws at the pleading stage is warranted, and occurs only when "the advertisement itself ma[kes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."  *Williams*, 552 F.3d at 939.  This case is not that "rare situation."

### 1.   No Reasonable Consumer Would Believe That the Phrase "Compare At" May Have Two Different Possible Meanings:

"[T]he primary evidence in a false advertising case is the advertising itself."  *Id*. at 938.  The advertising in this case is Defendant's Compare At price tags.  Plaintiffs' claims here are governed by the "reasonable consumer" test.  *Id*.  To state a

-13-

claim under California's false advertising laws "it is necessary only to show that members of the public are likely to be deceived."  *Pulaski*, 2015 WL 5515617, at *4. Defendant says that its Compare At prices could be either one of two different things, and that reasonable consumers should understand that.  Defendant is wrong.

> a.  *How a Reasonable Consumer Would Interpret "Compare At" Requires a Determination of the Ultimate Disputed Issue of Fact and Should Not be Made on a Motion to Dismiss*:

The ultimate question in this case is whether Defendant's Compare At pricing has the capacity, likelihood or tendency to deceive or confuse reasonable consumers. The Ninth Circuit in *Williams* instructed that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer. Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."  552 F.3d at 938-939.  Similarly, in *Miller* the court refused to dismiss the plaintiff's UCL, FAL and CLRA claims at the pleading stage, relying on this general principle that "the question whether a business practice is deceptive is an issue of fact not appropriate for decision on a motion dismiss."  912 F.Supp.2d at 873.  That admonition is equally appropriate here.

A recent decision examining another retailer's use of "Compare At" price tags is also instructive.  In *Branca v. Nordstrom, Inc*., 14-cv-02062-MMA (JMA) (U.S.D.C. S.D. Cal., October 9, 2015) ("*Branca*"), the court denied a motion to dismiss raising nearly identical arguments as Defendant's MTD here, and addressing the same "Compare At" phrase on defendant Nordstrom's price tags.  In denying defendant's motion, the court cited *Williams* for the proposition that the determination of whether an advertising practice is deceptive, fraudulent, or unfair generally should not be made on a motion to dismiss.  *Branca* at *12-13.

Another recent decision from this district is instructive here as well.  In *Horosny, et al. v. Burlington Coat Factory of CA, LLC*, et al., 15-cv-05005-SJO

-14-

(MRWx) (U.S.D.C. C.D. Cal. October 26, 2015) ("*Horosny*"), the court denied another nearly identical motion to dismiss raising the same arguments as Defendant's MTD here, and addressing the nearly identical term "Compare" on Burlington's price tags.  The court also cited *Williams* for the proposition that the determination of whether defendant's "Compare" pricing practice is deceptive, fraudulent, or unfair generally should not be made on a motion to dismiss.  *Horosny* at *6.

A recent state trial court decision in Alameda County, California, cited and relied on by the court in *Horosny*, is instructive here as well.  In 2010, the People of the State of California brought suit against online retailer Overstock.com for advertising deceptive comparative reference prices with the phrase "Compare At" in violation of California's UCL, FAL, and CLRA.  In a Statement of Decision filed February 5, 2014, following a bench trial, Superior Court Judge Hon. Wynne S. Carville found, among other things, that the term "Compare At" was likely to mislead a reasonable consumer.  (Overstock.com Statement of Decision (Alameda Cty. Sup. Ct. Case No. RG10-546833; Feb. 5, 2014) at ¶ 112).

After hearing expert testimony, including review of the results of marketing experiments and surveys, the court concluded that, among other things, "an appreciable number of consumers" believe that the term "compare" refers to the price of "the same product rather than an estimated price or a price for a 'similar' product." (Id.).  The court concluded that use of the term "compare" as a reference to "similar products without any disclosure invites abuse," and that to avoid such abuse and confusion on the part of consumers, "qualifiers" that can easily be inserted on a price tag such as "compare similar" or "compare estimated value," should be used.  (Id.). If nothing more, the *Overstock.com* decision shows that after hearing all available evidence, one reasonable conclusion is that the phrase "Compare At" on a price tag may lead "an appreciable number of consumers" to believe that the term refers to the price of "the same product rather than . . . a price for a 'similar' product."  (Id.).

"These are fact questions that should not be decided on a motion to dismiss." *Miller*, 912 F.Supp.2d at 874.

The FTC has also advised that before a trier of fact decides whether a challenged advertisement has the tendency to mislead, deceive or confuse, it should "evaluate the totality of the ad or the practice and ask questions such as: how clear is the representation? how conspicuous is any qualifying information? how important is the omitted information? do other sources for the omitted information exist?" FTC Policy Statement on Deception (Oct. 14, 1983). Here, before resolving the ultimate factual issue in this case, the Court should have the opportunity to receive and consider evidence related to, among other things, how a reasonable consumer would interpret Defendant's Compare At price tags and whether Defendant's qualifying disclosure is clear, conspicuous, and/or adequate.

> b.   *Reasonable Consumers Interpret "Compare At" to be a Reference to Actual Retail Market Prices*:

A 2004 study in The Journal of Consumer Affairs by Larry D. Compeau, Ph.D., *et al.*, has concluded that the average reasonable consumer interprets the term "compare at," when presented in comparison to a lower selling price for an item, to refer to "prices found in a 'regular price' department store." (The Journal of Consumer Affairs, Vol. 38, No. 1, 2004, at 184).[1] This conclusion comports with the findings of the trial court in the *Overstock.com* case, which found that "an appreciable number of consumers" believe that the term "compare" refers to the price of "the same product rather than an estimated price or a price for a 'similar' product." This conclusion also comports with the findings of a study cited to and relied on in the *Branca* case, which found that 90% of consumers surveyed interpreted a

---

[1] The Court may rely on articles from marketing journals at the motion to dismiss stage. *Hinojos*, 718 F.3d at fn. 7 ("We see no merit to the Defendants' objection that we may not rely on articles from a marketing journal at the motion to dismiss stage. We do not rely on the cited article to establish facts about [plaintiff's] case that are not contained in the pleadings, but rather in support of the conclusion that false advertisements about a product's true market price are significant to consumers.").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  "Compare At" price tag to mean that the actual "associated item" was previously sold

2  for the "Compare At" price either at the defendant retailer's mainline stores or other

3  retail stores.  *Branca* at *13.

4          The point here is that it is not reasonable to conclude, on the pleadings alone,

5  that a reasonable consumer would interpret the unqualified phrase "Compare At" to

6  be a reference to the price or value of a "similar" product.  Plaintiffs' FAC pleads that

7  reasonable consumers reasonably interpret the phrase "Compare At" on a price tag to

8  refer to the price of the same product, not the price for a similar or comparable

9  product.  The studies and cases cited herein support that conclusion.

        c.      *No Reasonable Consumer Would Believe a "Compare At" Price*

10                *is a Reference to Either One of Two Different Possible Prices*:

11

12          Defendant contends that its "Compare At" prices could be a reference to one of

13  two different possible prices.  The FTC Guides require that an advertised reference

14  price be a reference to either the price of an identical item, or the price of a

15  comparable item – not both.  Not only would no reasonable consumer understand the

16  phrase "Compare At" on a price tag to have two different possible meanings, but by

17  definition Defendant's reference prices fail to comply with the FTC's guidelines.

18  Further, a reasonable consumer, even if they were to actually see Defendant's

19  "Compare at Pricing" disclosure, would still be left to guess whether the Compare At

20  price is the price of an identical item, or the price of a similar item.  In the best case

21  scenario for Defendant, where a consumer actually found and read its "Compare at

22  Pricing" disclosure, the consumer is still likely to be deceived, misled, or confused.

23          Recognizing this, the FTC Guides require that where an advertised reference

24  price is intended to be a reference to a similar item, retailers must make clear to

25  consumers that a comparison is being made to other non-identical merchandise.  FTC

26  Guides, 16 Code of Fed. Regs. § 233.2(c).  Plaintiffs allege, and Defendant's

27  disclosure reveals, that Defendant's Compare At price advertising, even if read in

28  conjunction with its "Compare at Pricing" disclosure, does not make clear to

-17-

consumers what a comparison is being made to.  If a consumer has to guess between two different alternative definitions, then the comparison is not clear.

The court in *Overstock.com* recognized the requirement of clarity when it decided that to avoid confusion on the part of consumers, "qualifiers" that can easily be inserted on a price tag such as "compare similar" or "compare estimated value," should be used instead of the simple unqualified phrase, "Compare At."  The Better Business Bureau also recognizes this in its Code of Advertising which provides that if a retailer means to compare its selling price to a higher reference price of comparable merchandise, the retailer should use clear language in its advertising such as "comparative value," or "compares with merchandise selling at," or "equal to merchandise selling for."

## 2.      Defendant's "Compare At" Pricing is Misleading and Violates FTC Guidelines:

The phrase "Compare At" is misleading to reasonable consumers.  Over 30 years of empirical research, including the 2004 Compeau study, conclude that the average reasonable consumer interprets the term "compare at," when presented in comparison to a lower selling price for an item, to refer to "prices found in a 'regular price' department store."  (The Journal of Consumer Affairs, Vol. 38, No. 1, 2004, at 184).  These studies conclude that "about two-thirds" of consumers "may be deceived by the 'Compare' term if specific information regarding the comparison is not provided." Id. at 186.  Similarly, a study by Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011), concludes that "[r]eference price ads strongly influence consumer perceptions of value[,] . . . . change consumers' purchasing behavior and may deceive consumers."  Likewise, a study by Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990), concludes that "consumers are likely to be misled into a

-18-

willingness to pay a higher price for a product simply because the product has a higher reference price."  The conclusion of decades of scholarly research concerning comparative reference prices, such as the reference prices used by Defendant here, is that they matter – they are material to consumers – and when accompanied by unqualified, undefined, vague terms such as "Compare At," have a tendency to mislead or confuse consumers.

In *Branca*, the court found that reasonable consumers may be deceived by the simple undefined phrase "Compare At" on a price tag.  *Branca* at *13.  Examining Nordstrom's "Compare At" price tags, the court ruled that "Plaintiff sufficiently alleges that [defendant's] 'Compare At' tags are misleading."  *Branca* at *15.  Similarly here, taking Plaintiffs' allegations as true, Plaintiffs here sufficiently allege that Defendant's "Compare At" price tags are misleading.

a.   *FTC Guidelines Require More than the Simple Unqualified Phrase, "Compare At"*:

Defendant argues that the FTC Pricing Guides require merely that Defendant's comparative reference price be a "reference point," not an actual verified comparative price.  Defendant is wrong.  In fact, the FTC Pricing Guides require, among other things, that if Defendant intends to compare its prices to the value or price of similar (i.e., non-identical) merchandise, Defendant is, and has been, required to make "clear to the consumer that a comparison is being made with other merchandise." Defendant's Compare At price tags do not make clear, or even mention or imply, that a comparison is being made with other merchandise.  In fact, Defendant's price tags do not make clear what a comparison is being made to.  Reading Defendant's price tags in context with the FAC's allegations about Defendant's marketing, it cannot be said, "as a matter of law, that no reasonable consumer would be deceived" by Defendant's Compare At reference price advertising.  *Miller*, 912 F.Supp.2d at 874.

The FTC Guides also require that when comparing the price of an item to the supposed comparative price of a similar item, the retailer must ensure that "the price

-19-

advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area." 16 Code of Fed. Regs. § 233.2(c). The court in *Horosny* found that to comply with the FTC Guides, "comparable value comparisons [must] merely indicate" that similar products have actually been "sold by the advertiser or others in the area at the listed price". *Horosny* at *8. In other words, the law requires much more than that the advertised Compare At price merely be a "reference point." The law requires that the advertised Compare At price be a verified price at which the item has actually been "sold by the advertiser or others in the area." *Id.*

b. *Defendant's Disclosure is Not Clear or Conspicuous*:

Defendant asks the Court to ignore the FTC's decades old, well established policy of requiring a disclosure when necessary to prevent an ad from being deceptive. The FTC, as set forth in its Policy Statement on Deception (Oct. 14, 1983) (appended to *Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984)), has for over 30 years required "qualifying disclosures" when necessary to prevent "misleading representations." Similarly, the FTC Pricing Guides addressing comparable value comparisons, specifically require that *if* a retailer's reference prices are intended to be comparable value comparisons the retailer must make "clear to the consumer that a comparison is being made with other merchandise." Defendant's use of the simple, unqualified phrase "Compare At" does not make clear to reasonable consumers, and did not make clear to Plaintiffs, what the "Compare At" prices were, let alone whether they were references to the value of other "similar" merchandise.

In *Horosny*, the court found that without a conspicuous qualifying disclosure, a price tag which simply asks the consumer to "Compare" a higher reference price to the retailer's selling price "is misleading within the meaning of the FAL." *Horosny* at *9. The court based its ruling on both the language of the FTC Guides and the FTC's Policy Statement on Deception. *Id.* at *8. The court explained that the FTC's Policy Statement on Deception requires that where, as here, qualifying information is

-20-

necessary to prevent a claim from being misleading, that qualifying information must be adequately disclosed to consumers. *Id*. The court found that when a retailer's reference prices are supposedly based on "similar products," the retailer must "effectively disclos[e] that the comparison is to a non-identical item." *Id*. Defendant's disclosure fails to satisfy these requirements.

Plaintiffs allege that Defendant's definition of its Compare At prices is not adequately disclosed to consumers. The focus of Plaintiffs' claims is on Defendant's price tags. The challenged misleading representation (i.e., "Compare At") is presented on Defendant's price tags. Defendant's disclosure of what it means by "Compare At" is admittedly not on or near the price tags. The Ninth Circuit in *Williams* held that "reasonable consumers should [not] be expected to look beyond misleading representations . . . to discover the truth" about a claim. 552 F.3d at 939. Similarly here, Defendant's customers should not be expected to look beyond the misleading Compare At price tag to discover what Defendant means by "Compare At," or guess between two alternative definitions offered by Defendant. Plaintiffs here adequately allege that Defendant's disclosure is not clear or conspicuous, is inadequate, and does not comply with FTC guidelines.

## C. **Plaintiffs Provide Sufficiently Specific Factual Allegations**:

Defendant contends that Plaintiffs' claims in the FAC are not pled with the specificity required by Rule 9(b). Defendant is wrong. "Rule 9(b) is not an insurmountable hurdle that bars the pleading of any fraud claim, as Defendant seems to suggest. Rather, to satisfy Rule 9(b), '[a]verments of fraud must be accompanied by the 'the who, what, when, where, and how' of the misconduct charged.'" *Dean v. Colgate*, 2015 WL 3999313 (C.D. Cal. 2015), at *7; *Dorsey* at *4. The FAC "must be specific enough to give defendants notice of the particular misconduct." *Id*.

Plaintiffs provide sufficiently specific factual allegations in the FAC to support each of their claims. Defendant demands more specificity than is required in false advertising cases. Plaintiffs adequately allege the who, what, when, where, and how,

regarding Defendant's deceptive reference prices.  The factual allegations of the FAC meet the pleading requirements established by Rules 9(b) and 12(b)(6).

### 1.     Defendant Demands More Specificity Than is Required:

The court in *Branca*, examining the identical "Compare At" language on Nordstrom's price tags, held that "Plaintiff cannot be expected to have detailed personal knowledge of [defendant's] internal pricing policies and procedures at this stage of the litigation." *Branca* at *15.  "Moreover, the Rule 9(b) heightened pleading standard is relaxed as to facts supporting allegations of fraud that are exclusively within the defendant's possession and of which a plaintiff cannot be expected to have personal knowledge prior to discovery." *Id*.  In denying defendant's motion to dismiss, the court found that plaintiff's allegations that he had purchased "one pair of cargo shorts," "one hooded sweatshirt," and "one pair of pants," were specific enough to satisfy Rule 9(b).  *Id*. at *2.

Similarly, the court in *Horosny* found that plaintiff Horosny's allegations that he purchased "a denim vest," a "Soccer Polo shirt," and a "pair of cargo fleece pants," were likewise specific enough to satisfy Rule 9(b).  *Horosny* at *3.  The court further found that co-plaintiff Price's allegations that she made "an unspecified number of purchases" from defendant of products with "Compare" price tags was sufficient to satisfy Rule 9(b).  *Id*.

### 2.     Plaintiffs Have Met the Required Pleading Standards:

Here, the FAC explains that Defendant (the "who") advertised the "Compare At" prices (the "what") on price tags accompanying each of its products at the Ross stores in La Puente, City of Industry, Hemet, Beaumont, Indio, and Mira Loma, California (the "where"), beginning in June 2011, and specifically February 11 and May 18, 2015 (the "when").  (FAC ¶¶ 7-9, 140-158).  The FAC alleges that the "Compare At" prices are deceptive or misleading as (1) reasonable consumers would not believe the phrase "Compare At" to have two different alternative definitions, (2) Defendant's use of the unqualified phrase "Compare At" is misleading, or has a

-22-

tendency or likelihood to deceive or confuse reasonable consumers, and (3) the Compare At prices Defendant advertised were not true, verified reference prices as required by FTC guidelines.  The FAC further alleges that Plaintiffs relied on these deceptive Compare At prices when making their purchases (the "how").  "In other words, Plaintiff has sufficiently alleged [her] fraud claims."  *Dean* at *7.

Plaintiffs' FAC alleges: (1) Defendant made deceptive representations about its products; (2) Plaintiffs purchased those products in reliance on Defendant's misrepresentations; and, (3) Plaintiffs would not have purchased those products if not for Defendant's misrepresentations.  At the pleading stage, that is all that is required.  See, *Hinojos*, 718 F.3d at 1109.  To state a claim for economic injury as a result of false advertising, Plaintiffs need only allege that they "would not have bought the product but for the misrepresentation."  *Id.* at 1104.  The FAC alleges that Plaintiffs would not have bought the items they did from Defendant but for Defendant's deceptive Compare At prices.

**D.**   **Plaintiffs Have Standing To Pursue Claims On Behalf of All Customers Who Purchased Items With "Compare At" Price Tags**:

Defendant mistakenly contends that Plaintiffs lack standing to bring claims for products other than the particular products they purchased.

The court in *Branca* determined at the pleading stage that a plaintiff bringing a nearly identical claim for deceptive advertising based on the defendant retailer's use of "Compare At" price tags could pursue claims on behalf of any consumer who purchased any item from the defendant retailer with "Compare At" price tags. *Branca* at *10.  The court examined the Ninth Circuit district court cases which have addressed this issue and concluded that "it is immaterial for the purposes of [plaintiff's] claims whether one purchased a pair of shoes versus a hat, so long as the item bore a 'Compare At' tag. His allegations do not relate to the exact prices, percentages of savings listed on the tags, or specific characteristics of the underlying

products, which would vary by product. Rather, his claims relate to the consistent format of the tags." *Id*. at *9.

Likewise here, it is immaterial to Plaintiffs' claims whether they purchased a belt, a hat, or houseware.  Their allegations do not relate to the exact prices listed on the tags, or specific characteristics of the underlying products.  Rather, their claims relate to the consistent and identical misleading "Compare At" price representations on Defendants' price tags.  Thus, should the Court decide this issue at this stage of the case, Plaintiffs should be permitted to pursue claims on behalf of all purchasers of any product with "Compare At" price tags because Plaintiffs challenge "the same basic mislabeling practice across products." *Id*. at *10.

In *Dorsey*, the court, citing *Miller*, found that "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Dorsey* at *3.  It further found that "some courts have held that 'the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation' at the class certification stage." *Id*.  Based on these authorities, the court decided to "revisit this issue at the class certification stage in determining whether a class can be certified and, if so, the contours of that class." *Id*. at *4.

## V.    CONCLUSION:

Defendant's Motion should be DENIED because Plaintiffs' FAC alleges facts sufficient to state claims upon which relief may be granted for violation of California's UCL, FAL, and CLRA.  If, however, the Court finds that Plaintiffs have not alleged facts sufficient to state a claim upon which relief may be granted, Plaintiffs respectfully request leave to amend their FAC to more specifically allege facts to support each of their claims.  Even where, as here, the complaint has been

voluntarily amended or the time for amending it as a matter of course has run, the Federal Rules provide that leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a).  The Ninth Circuit requires that the policy favoring amendment be applied with "extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, (9th Cir. 1990); see also, *Miller*, 912 F.Supp.2d at 873 ("If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made 'unless it determines that the pleading could not possibly be cured by the allegation of other facts.'").


Dated:  January 15, 2016          Respectfully submitted,
                                  LAW OFFICE OF CHRISTOPHER J. MOROSOFF


                                  By:  /s/ *Christopher J. Morosoff*
                                       Christopher J. Morosoff
                                       Attorneys for Plaintiffs JOSE JACOBO, et al.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS