1

1         UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3    HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

4

5

6

7    JOSE JACOBO, an individual; and    )
     THERESA METOYER, an individual;    )
8    individually and on behalf of all  )
     others similarly situated,         )
9                                        )
                      PLAINTIFFS,        )
10                                       )
             vs.                         ) No. 2:15-CV-04701-MWF
11                                       )
     ROSS STORES, INC., a Delaware       )
12   Corporation, and DOES 1 through     )
     100, inclusive,                     )
13                      DEFENDANTS.      )
     _____)
14

15

16         REPORTER'S TRANSCRIPT OF PROCEEDINGS

17              LOS ANGELES, CALIFORNIA

18           THURSDAY, FEBRUARY 11, 2016

19                   3:10 P.M.

20

21

22    _____

23         *SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR*
           *Official Court Reporter, U.S. District Court*
24          *255 East Temple Street, Room 181-F*
            *Los Angeles, CA  90012*
25               *213.894.5949*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                        A-P-P-E-A-R-A-N-C-E-S

 2

 3     FOR PLAINTIFFS, JOSE JACOBO, ET AL.:

 4             LAW OFFICES OF CHRISTOPHER J. MOROSOFF
               BY:  CHRISTOPHER J. MOROSOFF, ATTORNEY AT LAW
 5             77-760 COUNTRY CLUB DRIVE, SUITE G
               PALM DESERT, CALIFORNIA  92211
 6             760.469.5986

 7             LAW OFFICES OF DOUGLAS CAIAFA
               BY:  DOUGLAS CAIAFA, ATTORNEY AT LAW
 8             11845 WEST OLYMPIC BOULEVARD, SUITE 1245
               LOS ANGELES, CALIFORNIA  90064
 9             310.444.5240

10

11     FOR DEFENDANT, ROSS STORES, INC.:

12             MORRISON & FOERSTER LLP
               BY:  DAVID F. McDOWELL, ATTORNEY AT LAW
13             707 WILSHIRE BOULEVARD
               LOS ANGELES, CALIFORNIA  90017-3543
14             213.892.5200

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              LOS ANGELES, CALIFORNIA; THURSDAY, FEBRUARY 11, 2016

 2                                  3:10 P.M.

 3                                   - - -

 4          THE CLERK:  Calling item No. 3, case No. CV

 5     15-4701-MWF, Jose Jacobo versus Ross Stores, Incorporated,

 6     et al.

 7       Counsel, please rise and state your appearance for the

 8     record.

 9          MR. MOROSOFF:  Good afternoon, Your Honor.

10       Chris Morosoff for plaintiffs.

11          MR. CAIAFA:  Good afternoon, Your Honor.

12       Douglas Caiafa for plaintiffs.

13          THE COURT:  Good afternoon, Counsel.

14          MR. McDOWELL:  Good afternoon, Your Honor.

15       David McDowell for Ross.

16          THE COURT:  Good afternoon, Mr. McDowell.

17       Let me disclose that Mr. McDowell and I were associates

18     together at Heller Ehrman back in the early 1990s.  So that was

19     quite a while ago.  Neither of us had any gray hair at that

20     point, so things have definitely changed a little in the past

21     22 years, so...

22       But anyway, Mr. McDowell, it's a pleasure to see you.

23       All right.  Counsel, you've gotten my tentative.  What I'd

24     like would be for the plaintiffs to address the Rule 9(b)

25     issues, and then I'll hear from Ross in regard to a response
```

```
 1    and as well some of the other issues, such as the standing
 2    issues in which I'm ruling against Ross, and then I'll let the
 3    plaintiffs have the final word.
 4         All right.  Counsel.
 5         MR. MOROSOFF:  Thank you, Your Honor.  Chris Morosoff
 6    again for plaintiffs.
 7         As I read Your Honor's tentative, it seems that you're --
 8    obviously, 9(b) is what you want me to address, and there is
 9    discussion about whether or not we did a pre-lawsuit
10    investigation and whether we've adequately alleged under 9(b),
11    and 9(b) requires us to allege the who, what, where, when and
12    how, or why -- "how" and "why" is sort of interchanged, and I
13    believe the complaint does, and at least let me tick off the
14    who -- or is it the "how" and the "why" that Your Honor is more
15    concerned about?
16         THE COURT:  Well, it seems to me -- I guess one way of
17    looking at it is the information and belief.  I don't see why
18    it is solely within the province of Ross that these goods were
19    sold for different prices or than what was stated on the
20    "Compare At."  I mean, it basically comes down to, you're
21    saying, in part, because it's similar, it seems -- look, it
22    seems what you're saying is, "We have a hunch, especially in
23    light of the duplicity in regard to the using similar goods and
24    not identical goods, that these goods in fact are not being
25    sold at significantly higher prices at other stores."  And I
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    just don't think that under 9(b) that's good enough.  Or, for

2    that matter, the other district court cases that have looked at

3    this haven't looked on that as being good enough.

4              MR. MOROSOFF:  I understand, Your Honor.

5         I think it's more than a hunch, and I think it's the

6    definition itself, and the reference or the contention by Ross

7    that the price that you're looking at, the "Compare At" price

8    you're looking at, might be the price of what they consider to

9    be a similar item, that is the impediment to doing some more

10   robust pre-lawsuit investigation.  If I tell you that you're

11   looking at the price of a similar item, but I don't tell you

12   what that similar item is, how are you going to go find whether

13   that supposedly similar item sold for anything?  We don't know

14   what it is.

15             THE COURT:  Yeah, but how do you know, based on what

16   you're saying, that there is not an identical -- to the extent

17   that your clients have bought certain goods, how do you know

18   that there is not an identical item which is being sold at

19   precisely the "Compare At" price or higher?  You know,

20   that's -- the thing here is, you're saying, "Well, maybe it's

21   the case that this isn't true," and that just doesn't seem to

22   be good enough.

23             MR. MOROSOFF:  Well, that is the point, though.  How

24   do we know?

25             THE COURT:  Because you --

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          MR. MOROSOFF:  But wait.

2          THE COURT:  Because you go to Macys and you see if

3    they have the identical good being sold for that price.  At

4    least then it would come in and say, "Look, we did this, there

5    are no" -- the similar ones, as it is, it just seems to me that

6    there's this thing that you're saying, "Well, if it's similar,

7    then our clients have been cheated," but you don't know that

8    this is necessarily the one, that there aren't those identical

9    goods.  It just seems as a logical predicate for what you're

10   talking about that you haven't shown that the similar is what

11   is bad for your clients.

12         MR. MOROSOFF:  I understand.

13     So what the complaint is saying and what the clients are

14   saying is:  When we went into Ross, we saw two prices.  We saw

15   a selling price.  Looked good, especially in relation to this

16   "Compare At" price.  Made us feel good.  We thought we were

17   saving money.  We thought we were comparing apples to apples.

18   And there was nowhere, despite the argument that there's a sign

19   somewhere in the store and on the website -- the reasonable

20   consumer shouldn't be required to go look beyond the price

21   tag itself to the website to find out what Ross means by

22   "Compare At."  And the signage in the store, at least in the

23   allegations in the complaint, we say, are not clear and

24   conspicuous.  It's not on the price tag.

25         I know Your Honor looked at some of the other cases that

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    are going on in this district.  Like, for example, in

 2    Steinmart, there were asterisks on the price tag that says if

 3    you want to know what "Compare At" means, go look on our

 4    website or look at the sign in the store.

 5         We don't think that's enough, but it's more than Ross.

 6    Ross has nothing about the word "Compare At."

 7         So when our clients finally realized, after purchasing,

 8    hey, that price that you thought that particular item sold for

 9    might not have been, it might have been just something we

10    consider to be a similar product, at that point, they were

11    deceived.  They were misled into believing they were comparing

12    apples to apples.  There's the misleading nature.

13         And the standard -- and I know it keeps getting thrown

14    out, you don't allege that it's false, it's false, it's false.

15    That's just not the standard under Williams vs. Gerber and

16    under all the subsequent cases.  The standard is whether or not

17    the advertisement has a capacity to confuse or is likely to

18    mislead or is false, but it's not simply -- we don't have to

19    prove, at least, especially at this stage of the litigation,

20    that the price was false.  And as a matter of fact, because of

21    the standard, there's really not a requirement that the

22    plaintiffs plead that it was false.  We certainly have to plead

23    that it fits within the "misleading" definition, which, under

24    Gerber/Williams -- I refer to it as Gerber, it's just easier

25    for me to remember -- is whether it has a capacity or
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

8

```
1    likelihood to mislead or confuse the reasonable consumer.
2         Well, if I thought I was comparing apples to apples, then
3    I finally find, when I go on the website or somebody tells me,
4    hey, it wasn't really apples to apples, I was misled.  That
5    price tag has a capacity to confuse the consumers.  That's what
6    we're alleging.
7         Now, if I bought a belt, and I can't find that same belt
8    or a comparative price for that belt, and I think, well, maybe
9    they were comparing a Kia to a BMW, I don't know if they were
10   comparing the Kia to the BMW.  They might have been comparing
11   the Kia to the Camry.  I won't know until I hear from them.
12   And they're not telling me.  There's no way I can find out what
13   Ross -- what similar product Ross used to arrive at that
14   "Compare At" price.  Without discovery, it's just not going to
15   happen.  It's a very tight-lipped industry.  It's very hard to
16   find any information about pricing.  Not just at Ross.  At
17   Burlington, at all of them.  So therein lies the problem.
18        I understand Your Honor's concern.  I understand Your
19   Honor's tentative.  And I understand that we go back and we can
20   take that hat that Mr. Jacobo bought or that belt that he
21   bought, and we can go and we can look and see, which we did,
22   and we weren't able to find anything, if that hat and that
23   belt were selling at Macys or Neiman-Marcus at that higher
24   "Compare At" price.  But -- and if that's what Your Honor wants
25   us to do, is go make that more clear that we did that and we
```

```
 1   didn't find anything, so therefore we believe that the
 2   "Compare At" price was to a similar product, once we arrive at
 3   that stage where we believe that the "Compare At" price was to
 4   a similar product, what do we do?  How do we find out?  Do we
 5   have to guess what similar product it is, or do we have to go
 6   to Ross and say, hey, I bought the belt for seven bucks.  You
 7   said compare it to 30.  What belt?  Is it a Calvin Klein belt?
 8   Is it a Guess belt?  Is it diamond studded?  I mean, what belt
 9   am I comparing it to?  How do I find out that price?
10         That's the dilemma that we're in, and that's why I think
11   the cases cited in Branca vs. Nordstrom -- and Branca itself
12   raises that issue and says at this stage it's not an
13   insurmountable hurdle, 9(b); you don't have to allege facts
14   that are only within the defendant's knowledge.  And those
15   facts are only within the defendant's knowledge.  I don't know
16   what they compared it to.  Clearly, they're comparing some, a
17   good portion of their products, I would imagine, to similar
18   products.  I don't know what those similar products are.  And
19   I -- "I" meaning the plaintiff -- feel that I was deceived into
20   thinking I was comparing apples to apples; now you're telling
21   me I was comparing apples to something else.  Tell me they're
22   oranges.  I'll go find the price of oranges.  But I don't know
23   what they were, what was I comparing it to.
24         So that's the problem that we would have jumping over the
25   hurdle that I think Your Honor's interpretation -- not just
```

```
 1   Your Honor's interpretation, but that strict interpretation,
 2   don't mean that you're strict, but of 9(b), would require.  And
 3   that's why, in cases like Branca, which is a "Compare At" price
 4   tag case, that they discuss the relaxed standard when you're in
 5   the situation that, you know, where do I find that information,
 6   except from them?  And the only way I'm going to get it is in
 7   discovery.
 8            THE COURT:  Is it the case -- I understand that we're
 9   dealing with these California statutes here, and is it, then,
10   the case -- I guess in that sense I didn't quite understand
11   Gerber, or just, I mean, as broad as the California statutes
12   are, that there could be this lack of kind of just false --
13   you're saying the capacity to confuse or all of this.  But even
14   in the absence of any real deception, you're saying that
15   there's still a cause of action here; is that right?  And it
16   just seems a little counterintuitive, really, I mean, in regard
17   to that, that even in the absence of someone actually, in a
18   sense, being deceived, but I guess here what you're saying is
19   the deception consists of, and perhaps only consists of, that
20   it was similar goods and not just identical goods.
21            MR. MOROSOFF:  That's correct.  If it was apples to
22   apples and that's what the consumers think.  So Your Honor is
23   correct, that if it turns out that we were comparing apples to
24   apples, and that "Compare At" price really was for that same
25   item, and it was a real documented selling price, that's what
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   we thought, great, fine.  But you can see, from the definition

2   that Ross uses, that's not the case.

3        And so to address Your Honor's question about the standard

4   under *Gerber*, I'm not suggesting that the plaintiff doesn't

5   ultimately have to prove that he -- and plead, that he or she

6   was deceived, but I think we do.  I think we say we were

7   deceived.  We didn't know we were comparing apples to oranges,

8   so we were deceived.  The reference to *Gerber* --

9   *Williams/Gerber* -- talks about advertising in California is

10  unlawful, even if not false, if it has the capacity or

11  likelihood to deceive, mislead, confuse.  There's a list of

12  three or four words they use.  I can quote it if Your Honor

13  wants.

14            THE COURT:  No.  I understand the --

15            MR. MOROSOFF:  We cite it, we quote it in the brief.

16  But when you read that, that's the standard.  Even if true, if

17  it has a capacity or likelihood to confuse a reasonable

18  consumer, to deceive, to mislead, it's unlawful in California.

19       So then you get to the next question, which is, well,

20  there's two points to every case, like Article III standing

21  requires.  Okay, you were deceived.  Did you lose money?  Well,

22  I think -- I'll address that if Your Honor wants us to.  I

23  think Your Honor went our way on that one.

24            THE COURT:  I'll let you address what Ross has to say

25  in that regard.  I don't need to hear it.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. MOROSOFF:  All right.

 2              THE COURT:  All right.  Thank you, Counsel.

 3              MR. MOROSOFF:  Okay.  Thank you, Your Honor.

 4              THE COURT:  Mr. McDowell, first of all, what's your

 5    understanding of what California law requires generally in

 6    regard to these statutes?

 7         What counsel's really saying here is that I'm kind of

 8    imposing this Rule 11 test by forcing it to show up in the

 9    complaint in a way that's not necessarily appropriate, where,

10    yes, it's -- the point really isn't if through just sheer

11    happenstance there happened to be the identical good that was

12    being sold at the "Compare At" price, but generally it's

13    reasonable to think, in regard to 12(b)(6), that that's not

14    what's happening here, that there are these similar things, and

15    that their argument is that it's good enough, at least right

16    now, to get by on 12(b)(6), and it's specific enough to get by

17    on Rule 9, that this "similar," when a reasonable person would

18    think it was identical, is just inherently, then, confusing or

19    deceptive in the general way that that's meant under California

20    law.

21              MR. McDOWELL:  Well, and I think on that point, Your

22    Honor, your example is exactly right if the allegation is this

23    was a good that there was no comparable price for.

24         It's a Levi's belt.  I think we can -- it's not

25    unreasonable to believe that one could look up the price of a
```

1   Levi's belt that he purchased, and you could then look at the

2   price comparison.

3       So if the allegation ultimately came down to "These are

4   all similar goods, and we were somehow deceived," then this

5   argument about whether or not they have to do more at this

6   point might be an interesting discussion.  But as the complaint

7   is, it's, "Well, these are the same or similar goods, and these

8   are prices that are not accurate."  And so until we get to that

9   allegation, we're really in the world of hypotheticals here

10  that don't have any application.

11      I think the question of can you have a capacity to mislead

12  if the information is in fact correct, I don't think California

13  has yet gone to the standard that you can bring a unfair

14  competition claim for truthful information.  It may be that

15  information -- you know, California is of the view that you

16  could present information in a way that is designed to mislead

17  a consumer.  Certainly we've seen there is plenty of case law

18  for that.  But all that requires at some level is, something

19  has to be wrong.  And that's not in this complaint, and that's

20  exactly what the shortcoming is, and that ought to be

21  addressed, and I think having that repleaded and having the

22  Rule 9 standard apply makes perfect sense in the circumstance.

23          THE COURT:  But I guess the argument, though, is -- I

24  guess I have two issues.  One is, is it appropriate, even in

25  looking at the other district court cases to deal with this, to

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    put a standard that can't be met -- I guess one of the problems

2    is, the way counsel's phrased it, either it's a standard that's

3    met by kind of saying, "Look, under Rule 11 this is what we

4    did, we went around and looked, tried to look for same belt at

5    Macys or Neiman-Marcus or Sacks Fifth Avenue or whatever, and

6    we didn't really see it."  What if this was mattresses instead

7    of belts?  It's well-known in the mattress industry that

8    they're particularly -- things are set up so it's impossible to

9    directly comparison shop and that you can't determine exactly

10   whether it's identical or not, and the industry's set up in a

11   way to make that very difficult, if not impossible.  Then

12   either it's being set up as a standard that could never be met,

13   and there is a question, then, of whether 9(b) is meant to do

14   that, especially where this isn't some securities case or

15   anything like that.  It's governed by these California

16   statutes.  And then the second thing is whether, if it can be

17   met, then what are we getting by forcing that into the

18   complaint when it's really more of a Rule 11 thing?

19        I take it Ross -- is Ross saying that if the sheer

20   language was there saying that there were no identical goods

21   being sold at the "Compare At" price in the relevant market,

22   that just that would be viewed as enough by Ross?  I take it

23   not.  But if not, then what is it that Ross thinks would be

24   appropriate?

25             MR. McDOWELL:  If plaintiff could plead, consistent

1   with Rule 11, that there were no identical goods, these were

2   all similar, and that these were -- no way that anyone could do

3   the comparison, then I'd probably be standing here with a

4   different argument.  I'd be fighting about Rule 11.  I wouldn't

5   be fighting about Rule 9.  That allegation is not made.  And I

6   do not believe it can be truthfully made for the goods, at

7   least some of the goods alleged to have been purchased.  Now,

8   you know, they're pleaded so vaguely, I can't -- I couldn't

9   come in here with all the comparison advertisement, but if

10  that's the pleading, then I've gotta have a different argument

11  to present to Your Honor.  But that's not the pleading, and I

12  don't think that pleading can be made.

13          THE COURT:  I understand.

14      What would you like to say in regard to the other parts of

15  the tentative?

16          MR. McDOWELL:  So I'm not going to belabor the

17  standing argument.  The Court analyzed it carefully, and I have

18  a disagreement, but I don't think that's worth spending your

19  time or anyone else's on.

20      I do think -- I want to turn to the issue of items not

21  purchased.  And I understand that courts have looked at that

22  issue differently.  Some courts have said, you know, it needs

23  to be limited to these goods.  Some courts have said, well, if

24  it's substantially similar.

25          The problem, I think, when you look at the "substantially

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

similar" cases, are that those are allegations about, you know,

no sugar added, no trans fats, healthy, where I might have

purchased the cherry yogurt and I didn't purchase the blueberry

and the 43 other products that are all really the same thing.

Here, we're talking about every good in Ross.  And every

good goes through an authentication process of, what is the

comparison price that we can use?  What is sold at Macys?

What's sold here?  What's sold there?  And if, by virtue of

purchasing a belt, we're now going to look at every item in the

store, that's a -- there's very different issues as to each and

every one of those items.

So I would submit on that point, that limiting this claim

to those items that were actually purchased is the only way we

can do this that doesn't involve looking at every item.

THE COURT:  Isn't this really more of just a Rule 23

issue, though?  I mean, why don't we just deal with this on the

class certification?  Either they're representatives or not,

either it's a coherent class or it's not.  I just don't know

what we're really getting in dealing with it at this point.

MR. McDOWELL:  Discovery.  I mean, I won't -- it

certainly is a Rule 23 issue.  It will come up in Rule 23.  But

I've gotta turn over the substantiation files for every product

sold by Ross over a four-year period.  That's what this issue

is about.  That's why I'm raising it.  I wouldn't raise it if

it was just -- it didn't have a real practical, real-world

```
 1    impact.  And that's where that impact is.

 2              THE COURT:  Well, I think there might other ways of

 3    dealing with that, of having the -- just providing some files

 4    or having certain issues be litigated first.  I hear what

 5    you're saying, but I don't know that this is necessarily the

 6    best way of dealing with it.  I think it'd be -- you know, but

 7    I hear what you're saying.

 8         All right.  Anything else?

 9              MR. McDOWELL:  Nothing else, Your Honor.

10              THE COURT:  All right.  Thank you.

11         Plaintiff have anything else?

12              MR. MOROSOFF:  If I may.

13              THE COURT:  Of course.

14              MR. MOROSOFF:  Just to address -- thank you, Your

15    Honor.  Just to address a couple things.

16         For example, with respect to the Levi's belt, there's

17    hundreds of different Levi's belts out there.  So a belt that

18    says Levi's, unless I have a SKU number or product number --

19    and it's not the same SKU number that Ross puts on it that

20    Macys would put on it.  So I can't, again, when you have this

21    broad -- as Your Honor I'm sure knows, I mean, there's going to

22    be a $10 Levi's belt and a $50 Levi's belt.  So I'm still in

23    that same dilemma of not knowing which they're comparing it to

24    and which my product might have sold for.

25         And the other issue, it's not just a Levi's belt, it's
```

```
 1   this hat that -- anyway, we can address that.  If you require
 2   it, we'll address it in an amended complaint.
 3        But with respect to 9(b), I mean, the overriding concern
 4   of 9(b) is to put defendant on notice of what we're claiming,
 5   and I think defendant knows.  I know defendant is saying,
 6   "Well, I really don't know what you're accusing me of," but I
 7   think they do.  I think it's clear that defendant knows that
 8   we're saying, "You made us think we were comparing apples to
 9   apples.  We weren't.  We found out later that we were comparing
10   apples to something else, and that's deceptive."  I think they
11   get that.  "And I don't know if that price was real.  I feel
12   deceived, and therefore, I lost value.  I thought I was getting
13   a great deal, and now I don't think I did."
14        So I think that with respect to that aspect of 9(b),
15   they're on notice.  They can defend them.  They know what the
16   claim's about.
17        With respect to the law in California, the FTC pricing
18   guides, which most courts addressing this price tag issue refer
19   to, they're different -- the price tag cases like this one are
20   different than sort of the labeling cases.  They're similar,
21   you can sort of find similarities, but to the trans fat cases,
22   to the all-natural cases.  It's a different beast.
23        What the FTC pricing guides say, which, as I said, is sort
24   of -- we start with, California law says if it's misleading,
25   likely to confuse, it's unlawful.  Well, what does that mean?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1    The FTC pricing guide says if you're going to compare apples to
2    oranges, use a comparative reference price, an ARP, advertised
3    reference price, to a similar product.  You have make it clear
4    to the consumer that you're comparing it to a similar product,
5    not an identical product.  But that's all it says.  It doesn't
6    go on to say "Here's how you make it clear."  So that's sort of
7    a factual issue:  Did they make it clear?
8         They're arguing, and will, I'm sure, continue to argue,
9    "Hey, go look at our website.  Hey, look at the sign somewhere
10   in the store."
11        We're saying it's gotta be on the ad itself, so you didn't
12   make it clear.
13        But again, that's a factual dispute that really should
14   have been resolved on summary judgment or trial, not here at
15   the pleading stage.
16        Counsel mentioned something to the effect that if we could
17   plead that there were no identical comparisons, that all their
18   products were similar comparisons, then maybe we -- how can we
19   plead that?  I don't know.  Plaintiffs don't know.  Plaintiffs
20   have no way -- that's where we get back into this sort of
21   relaxed 9(b) standard.  If we knew -- I'll tell you what.  The
22   price tags themselves, with the simple phrase "Compare At," and
23   the definition saying, well, we might mean this or we might
24   mean that, it seems to be designed so that we can't know.  Tell
25   us.  Tell us that every single item that says "Compare At" is
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    to an identical item.  And if you mean you're comparing it to

2    something different, you should have used a different price

3    tag, like "Comparable Value" or "Value" or "Compare To

4    Similar."  And that's what that *Overstock* decision -- I know

5    it's up on appeal, and I don't want to get sanctioned for

6    talking about it, but that's what cases have looked at it have

7    talked about.  And even -- well, I won't go into other cases,

8    but the point is, that with that price tag with that simple

9    phrase and then a dual definition -- I mean, some other

10   retailers have multiple definitions, but even in this case they

11   say, well, it might mean an identical product, it might mean

12   similar product, or a product with a similar style, kind of the

13   same thing.  How do we know?  How can I plead what counsel just

14   said, that, "Well, if he could plead that there's no identical

15   item comparisons, we'd be great"?  I can't.  I can't meet that

16   burden.

17        With respect to the "all products," whether or not all

18   products, I agree with Your Honor, it's something that should

19   be addressed on cert.  But to the extent that we would address

20   it here, the complaint is not complaining that we were deceived

21   by the quality of the belt or any characteristic of the belt.

22   It was the price tag, and it was the reference on the price tag

23   to some vague phrase that could mean multiple things.  That was

24   a deception.  So that price tag is consistent across all

25   products.  If, when we get to cert, we limit it to only those

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    products where the comparison was to a similar product, fine,

 2    but we won't know that.

 3         And with respect to discovery issues, listen, I hate to

 4    say this, like, tongue in cheek, but we're reasonable.  Your

 5    Honor doesn't know us, but we're not going to be out there --

 6    and I know plenty of plaintiff lawyers do.  We may have asked

 7    for every product description under the sun.  But a random

 8    sampling would do, pre-certification, to get us to that point

 9    where we cert or we could make an adequate argument for

10    certification.  We're not, before that, going to be pushing it

11    to the limit to try to get every document they have on every

12    product.  A truly random sampling would do, so we can address

13    those discovery issues as the case goes along.

14         And that's all I got, unless Your Honor has questions.

15              THE COURT:  I do not.

16         Counsel, thank you.  I'm going to take the matter under

17    submission.

18              THE CLERK:  All rise.

19              THE COURT:  Oh, counsel, I'm sorry.  I'm going to put

20    off the scheduling conference until this order goes out.  I

21    looked, I read your report.  I'm not -- first of all, it wasn't

22    entirely clear to me whether some of the plaintiffs' proposed

23    dates the defense was agreeing with or whether there were going

24    to be counter dates.  I know you were doing this for

25    Judge Morrow, not for me, and I just want to try to I think
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   maybe just have us try to get on the same page.  To the extent

2   that you're trying to figure out a briefing schedule for the

3   class certification, I appreciate that.  So right now I think

4   we can just leave it at that.

5        All right.  Thank you, counsel.

6             MR. McDOWELL:  Thank you, Your Honor.

7             MR. MOROSOFF:  Thank you, Your Honor.

8

9             (*Proceedings concluded at 3:39 p.m.*)

10

11                    *--oOo--*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1 | _CERTIFICATE_

2

3 |     *I hereby certify that pursuant to Section 753,*

4 | *Title 28, United States Code, the foregoing is a true and*

5 | *correct transcript of the stenographically reported proceedings*

6 | *held in the above-entitled matter and that the transcript page*

7 | *format is in conformance with the regulations of the*

8 | *Judicial Conference of the United States.*

9

10 | *Date:  MARCH 2, 2016*

11

12

13

14 |          */S/ SANDRA MACNEIL*

15 |       *Sandra MacNeil, CSR No. 9013*

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA