Douglas Caiafa, Esq. (SBN 107747)
DOUGLAS CAIAFA, A Professional Law Corporation
11845 West Olympic Boulevard, Suite 1245
Los Angeles, California 90064
(310) 444-5240 - phone; (310) 312-8260 - fax
Email: dcaiafa@caiafalaw.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
77-760 Country Club Drive, Suite G
Palm Desert, California 92211
(760) 469-5986 - phone; (760) 345-1581 - fax
Email: cjmorosoff@morosofflaw.com

Attorneys for Plaintiffs JOSE JACOBO, et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSE JACOBO, an individual; and THERESA METOYER, an individual; individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ROSS STORES, INC., a Delaware Corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:15-cv-04701-MWF-AGRx <br><br> SECOND AMENDED CLASS ACTION COMPLAINT <br><br> 1. UNFAIR BUSINESS PRACTICES; <br> 2. FRAUDULENT BUSINESS PRACTICES; <br> 3. UNLAWFUL BUSINESS PRACTICES; <br> 4. FALSE ADVERTISING; and, <br> 5. VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT |

This Second Amended Class Action Complaint ("Complaint") is brought by individual consumers in California against retailer ROSS STORES, INC. ("Defendant") for using false, deceptive, or misleading comparative reference prices on the price tags of the products sold in Ross Dress for Less ("Ross") stores in California.  Plaintiffs JOSE JACOBO ("Jacobo") and THERESA METOYER ("Metoyer") (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated (collectively referred to as "Class Members"), bring this action against Defendant, and for causes of action against Defendant, based upon personal knowledge, information and belief, and investigation of counsel, allege as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) (the Class Action Fairness Act of 2005 ("CAFA")) because the amount in controversy exceeds the value of $5,000,000, exclusive of interest and costs, because the Class consists of 100 or more putative Class Members, and because at least one putative Class Member is diverse from Defendant, a Delaware corporation with its principal place of business in Dublin, California.

2.  This is a civil action brought under and pursuant to California Business & Professions Code §17200, *et seq*. (the Unfair Competition Law or "UCL"), California Business & Professions Code §17500, *et seq*. (the False Advertising Law or "FAL"), and California Civil Code §1750, *et seq*. (the California Consumer Legal Remedies Act or "CLRA").

3.  Venue is proper in the Western Division of the Central District of California because Defendant transacts a substantial amount of business in this District, Plaintiff Jacobo resides in Los Angeles County, California, and the transactions which form the basis of Jacobo's claims against Defendant

SECOND AMENDED CLASS ACTION COMPLAINT

1  occurred in the cities of La Puente and City of Industry, in Los Angeles
2  County, California.

3  4.  The Central District of California has personal jurisdiction over the
4  Defendant named in this action because Defendant is a corporate business
5  entity authorized to do business in the State of California and registered with
6  the California Secretary of State to do business, with sufficient minimum
7  contacts in California.  Defendant has otherwise intentionally availed itself
8  of the California market through the ownership and operation of
9  approximately 240 retail stores within the State of California, such that the
10  exercise of jurisdiction over Defendant by the California courts is consistent
11  with traditional notions of fair play and substantial justice.

12  5.  Defendant transacts business within the county of Los Angeles, and
13  elsewhere throughout the State of California.  The violations of law alleged
14  herein have been carried out within the County of Los Angeles and
15  throughout the State of California.

16  **<u>INTRODUCTION</u>**

17  6.  A product's regular price, the price at which a product generally sells for in
18  the marketplace, matters to consumers.  The price that a product generally
19  sells for in the marketplace provides important information to consumers
20  about the product's worth and the prestige that ownership of that product
21  conveys.  Many retailers these days use comparative reference prices to
22  assure their customers that their sale prices are lower than the prices their
23  products regularly sell for at other retailers in the marketplace.

24  7.  This is a case about one of the nation's largest retailers, Ross, using
25  deceptive comparative prices at each of its California stores to trick its
26  customers into mistakenly believing that the selling prices of products at
27  Ross stores are significantly lower than the regular prices of those same
28  products at other retailers in California.  Plaintiffs are typical reasonable

SECOND AMENDED CLASS ACTION COMPLAINT

American consumers who, like all reasonable consumers, are motivated by the promise of a good deal.  Defendant is a large national retailer that makes enormous profits by promising consumers a good deal.  Defendant owns and operates a chain of so called "off-price" department stores in California known as Ross stores.  Plaintiffs occasionally shop at Ross because of Defendant's promise that they can get name brand products for 20 to 60% below department store prices.  Defendant supports that promise with price tags on each item in each store which feature Defendant's selling prices alongside much higher supposedly comparative prices.  The comparative prices assure consumers like Plaintiffs that they are receiving an exceptionally good deal and saving a specific dollar amount equal to the difference between the two prices.  Defendant's price tags deceptively instruct customers to "compare" the selling prices of Defendant's products to these higher comparative reference prices.  The comparative prices, however, are deceptive.  They are not true, bona fide comparative prices.  They are not what typical, reasonable consumers, like Plaintiffs, think they are.  Defendant does not adequately, clearly, or conspicuously disclose to consumers that its "Compare At" reference prices are references to prices of supposedly "similar," non-identical items.  There are no definitions or disclosures of what Defendant's Compare At prices are at or near the comparative price representations made on the price tags of the items sold at Ross stores in California.  Plaintiffs, having been misled and deceived by Defendant's deceptive pricing practices like all other Ross customers, bring this action against Defendant for false, deceptive and misleading advertising on behalf of themselves and all other consumers who have purchased items

SECOND AMENDED CLASS ACTION COMPLAINT

at Ross stores in California throughout the period from June 20, 2011, to the present (the "Class Period").[1]

**PARTIES**

8.      Plaintiff Jacobo is, and at all times relevant hereto has been, an individual and a resident of Los Angeles County, California.  On over 10 occasions throughout the Class Period, Jacobo purchased products from the La Puente and City of Industry, California, Ross stores which were falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices.  The marked "Compare At" prices for the products which Jacobo purchased from Defendant were not actual prices at which substantial and significant sales of those same products were made at other principal retail outlets in California.  The marked "Compare At" prices for many of the products which Jacobo purchased from Defendants were supposed prices of supposed "similar," non-identical items.  Jacobo, a reasonable consumer, did not interpret the phrase, "Compare At" on Defendant's price tags to be a possible reference to the price of a "similar," non-identical item.  Jacobo purchased products from Defendant throughout the Class Period in reliance on Defendant's false, deceptive and misleading advertising, marketing and pricing schemes, which he would not otherwise have purchased absent Defendant's deceptive advertising and pricing scheme, and Jacobo has lost money and/or property, and has been damaged as a result.  Jacobo is a reasonable consumer.

9.      Plaintiff Metoyer is, and at all times relevant hereto has been, an individual and a resident of Riverside County, California.  On over 10 occasions throughout the Class Period, Metoyer purchased products from the Hemet, Beaumont, Indio, and Mira Loma, California, Ross stores which were

---

[1] Unless otherwise specified, all references to time periods in this Second Amended Complaint refer to the "Class Period."

SECOND AMENDED CLASS ACTION COMPLAINT

falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices. The marked "Compare At" prices for the products which Metoyer purchased from Defendant were not actual prices at which substantial and significant sales of those same products were made at other principal retail outlets in California. The marked "Compare At" prices for many of the products which Metoyer purchased from Defendants were supposed prices of supposed "similar," non-identical items. Metoyer, a reasonable consumer, did not interpret the phrase, "Compare At" on Defendant's price tags to be a possible reference to the price of a "similar," non-identical item. Metoyer purchased products from Defendant throughout the Class Period in reliance on Defendant's false, deceptive and misleading advertising, marketing and pricing schemes, which she would not otherwise have purchased absent Defendant's deceptive advertising and pricing scheme, and Metoyer has lost money and/or property, and has been damaged as a result. Metoyer is a reasonable consumer.

10.   Defendant is a Delaware corporation, organized under the laws of the state of Delaware, which conducts substantial business on a regular and continuous basis in the state of California. Defendant's principal place of business is in Dublin, California.

11.   The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue such Defendants under fictitious names. Plaintiffs are informed and believe, and on that basis allege, that these Defendants, DOES 1 through 10, are in some manner or capacity, and to some degree, legally responsible and liable for the damages of which Plaintiffs complain. Plaintiffs will seek leave of Court to amend this Complaint to set forth the true names and capacities of all fictitiously-named Defendants within a reasonable time after they become known.

SECOND AMENDED CLASS ACTION COMPLAINT

**FACTUAL ALLEGATIONS**

12. During the Class Period, Plaintiffs bought apparel and other items from various Ross stores in Southern California.

13. Plaintiffs were each lured into Defendant's stores with the promise of significant savings on name brand merchandise such as, without limitation, apparel, handbags, shoes, and bed, bath and home items.

14. Plaintiffs would each shop at Ross stores in California in the future if they could be assured that the comparative reference prices advertised by Defendant were true and accurate, and not misleading or deceptive, reference prices.

**I.     Defendant Labels Its Products With "Compare At" Reference Prices:**

15. At all relevant times throughout the Class Period, each item offered for sale at Ross was displayed with a comparative price tag which provided 2 prices: the Ross sale price, and another significantly higher price described simply as the "Compare At" price.

16. The price tags used by Defendant at Ross stores throughout California are identical in all material respects. They each have a sale price (i.e., a price at which Defendant is selling the item for), and a higher comparative reference price listed above the sale price accompanied by the phrase "Compare At."

17. The price tags do not tell consumers what the phrase "Compare At" means, or give any information about the comparative price other than the dollar amount and the phrase, "Compare At." Nor are consumers told where Defendant came up with the "Compare At" price. They are simply presented with the 2 prices (the sale price, and the higher "Compare At" reference price), left to guess what the "Compare At" price is a reference to, and are led to believe that they are actually saving the difference between the 2 prices.

/ / /

- 6 -

## II.    **Comparative Reference Prices Are Material to Consumers**:

18.    Defendant compares the prices of its products with higher reference prices which consumers are led to believe are the prices supposedly charged by other merchants for the same identical products.  Defendant labels those higher comparative prices as the "Compare At" prices for those products.

19.    Defendant presents its reference prices (commonly referred to as "advertised reference prices" or "ARPs") to consumers with the simple, short tag-line phrase, "Compare At."  These types of marketing phrases are commonly referred to as "semantic cues."

20.    Over 30 years of marketing research unanimously concludes that semantic cues presented with comparative reference prices, such as Defendant's use of the phrase "Compare At" on its price tags, are material to consumers such as Plaintiffs.  That is, they influence consumers' purchasing decisions.  Defendant's use of the phrase, "Compare At," on its price tags did in fact influence both Plaintiffs' decisions to purchase products from Ross.

21.    For example, a well-respected and oft-cited study by Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?,* 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992), concludes that "[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product."  In other words, comparative reference prices lead consumers, like Plaintiffs, to believe they are saving money, and increase their willingness to buy products.

22.    Numerous other consumer and marketing research studies arrive at similar conclusions.  For example, Compeau & Grewal, in *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002), conclude that "decades of research support the conclusion that advertised reference prices do indeed enhance consumers'

- 7 -

perceptions of the value of the deal."  They also conclude that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

23.   Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011), conclude that "[r]eference price ads strongly influence consumer perceptions of value. . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."

24.   Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003), similarly conclude that "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."

25.   The belief that they are paying a specific amount less than the market retail price of a product, in and of itself, creates a quantifiable value to consumers, including Plaintiffs.  When a deceptive reference price leads a reasonable consumer to mistakenly believe he or she is paying less than the market retail price of a product, then the actual value of the product is less than the consumer believed and less than the amount the consumer paid.  Because of the false or misleading reference price, the product actually has less value than the consumer believes it has, and therefore the consumer paid more for the product than the value he or she actually received.

26.   The results of a study by Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices*

- 8 -
SECOND AMENDED CLASS ACTION COMPLAINT

*On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990), conclude that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."  This study further concludes that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."

27. Consumers, like Plaintiffs, place a higher value on products that have reference prices higher than the selling price.  When those reference prices are not what the consumer believed them to be, then the consumer has paid an additional amount for value he or she did not actually receive.

28. The indisputable conclusion of decades of scholarly research concerning comparative reference prices, such as the "Compare At" reference prices used by Defendant, is that they matter – they are material to consumers. Defendant's "Compare At" reference prices were material to Plaintiffs.

**III.   Defendant Has a Duty to Verify Its "Compare At" Prices**:

29. The FTC requires that "[a]dvertisers must have evidence to back up their claims ("substantiation"). . . . Before disseminating an ad, advertisers must have appropriate support for all express and implied objective claims that the ad conveys to reasonable consumers. When an ad lends itself to more than one reasonable interpretation, there must be substantiation for each interpretation. The type of evidence needed to substantiate a claim may depend on the product, the claims, and what experts in the relevant field believe is necessary."

30. Plaintiffs are informed and believe, and on that basis allege, that Defendant does not have sufficient evidence to substantiate the validity of its "Compare At" reference prices.  Plaintiffs believe that further investigation and discovery will reveal that Defendant does not have sufficient evidence to substantiate the validity of its "Compare At" reference prices.

- 9 -

31. The FTC Pricing Guides, 16 C.F.R. §233.2, provide rules for merchants such as Defendant that claim "to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area."

32. The FTC Pricing Guides require that when merchants such as Defendant use advertising that compares their prices to higher comparative prices for the same merchandise, "the advertised higher price must be based on fact, and not be fictitious or misleading."  The FTC Pricing Guides further provide:

> "Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which *substantial sales* of the article are being made in the area - that is, *a sufficient number of sales* so that a consumer would consider a reduction from the price to represent a genuine bargain or saving." (Emphasis added).

33. Defendant thus has, and has had, a duty to provide "appropriate support" for, and "evidence to back up," its "Compare At" reference prices.

34. Defendant has, and has had, a duty to verify that its "Compare At" reference prices do not "appreciably exceed the price at which substantial sales" of its products have been made in California.

35. Plaintiffs believe that further investigation and discovery will reveal that Defendant does not have such evidence, and has not in fact verified that its "Compare At" reference prices do not "appreciably exceed the price at which substantial sales" of its products have been made in California.

36. Where the advertiser's comparison price is purportedly based on prices being charged for similar or "comparable" products, the FTC Pricing Guides require that the advertiser make "clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area."  In such a case:

> "The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not

SECOND AMENDED CLASS ACTION COMPLAINT

exceed the price at which such merchandise is being offered by representative retail outlets in the area."

37.    Defendant's price comparison advertising does not make clear to consumers that a comparison is being made with other "similar," non-identical merchandise.

38.    Neither Plaintiff saw any sign anywhere in Defendant's stores which described Defendant's "Compare At Pricing" before purchasing any of the items they purchased from Ross.

39.    Neither Plaintiff saw or read any description of Defendant's "Compare At Pricing," online or anywhere else, before purchasing any of the items they purchased from Ross.

40.    Nowhere on Defendant's price tags, or in Defendants' price advertising, is it made clear to consumers, including Plaintiffs, that the advertised "Compare At" price is merely what Defendant believes to be the "selling price" of a "similar item."  The words "similar item" do not appear on any price tag of any item sold at Ross.  Reasonable consumers, including Plaintiffs, would have to look beyond Defendant's price tags to discover that the "Compare At" price might be a reference to the supposed price of a "similar item."

**IV.    Defendant Does Not Adequately Verify Its "Compare At" Prices**:

41.    Plaintiffs believe that further investigation and discovery will reveal that when Defendant advertised prices as "Compare At" prices on the price tags of items sold in its California Ross stores, Defendant was not reasonably certain that the higher prices it advertised did not appreciably exceed the prices at which *substantial sales* of the items were being made in California.

42.    Plaintiffs believe that further investigation and discovery will reveal that the "Compare At" reference prices advertised by Defendant were significantly in excess of the highest prices at which *substantial sales* of those products were made in California.

SECOND AMENDED CLASS ACTION COMPLAINT

43.   Plaintiffs believe that further investigation and discovery will reveal that Defendant did not ascertain whether the "Compare At" prices on its price tags were in fact the prices regularly charged by a substantial number of principal outlets in California, or whether its "Compare At" prices were prices at which *substantial sales* of such products were made in California.

44.   Plaintiffs believe that further investigation and discovery will reveal that Defendant systematically and routinely used unverified comparative prices as comparative reference prices for its products which were not, in fact, prices at which those identical products sold, or are selling, in any substantial volume at the "principal retail outlets" in California.

45.   Defendant's misrepresentation of the "Compare At" prices as actual prices at which substantial sales of identical products had been made in California was deceptive, misleading, unlawful, unfair, and/or fraudulent.

**V.    Defendant's "Compare At" Reference Prices Are Misleading, Deceptive, and/or False:**

46.   The result of Defendant's use of prices of supposed "similar" products, was that consumers, including Plaintiffs, were misled into believing that they were receiving substantial savings on the purchase of products at Ross when compared to prices charged for those same products at other retailers. Plaintiffs and other Class Members were misled into paying more for Defendant's products than they would have paid for identical products sold by other merchants.

47.   Plaintiffs were confronted with ARPs on the items they purchased from Defendant, accompanied by the undefined, unqualified phrase, "Compare At." Plaintiffs reasonably believed, like all reasonable consumers, that the "Compare At" prices represented the prices that they would expect to pay for those same products at other retailers in their general area. In other words, Plaintiffs reasonably believed that the "Compare At" prices referred

SECOND AMENDED CLASS ACTION COMPLAINT

1     to the then prevailing retail prices for those same items - that if they left

2     Defendant's store and shopped around for those same products, they would

3     likely find them elsewhere at the higher "Compare At" prices advertised by

4     Defendant.

5   48.   Defendant, however, had a different definition of what it meant by

6     "Compare At" - a definition not clearly or conspicuously disclosed to

7     consumers, and not consistent with the common meaning of the phrase

8     "compare at."

9   49.   Had Plaintiffs been savvy enough, and stopped their shopping to get to a

10     computer, log onto Defendant's website, find the "Compare at Pricing"

11     hyperlink in fine print at the bottom of the page (alongside Defendant's

12     "Terms of Use," "Privacy Policy," and other related hyperlinks) and click on

13     that hyperlink, Plaintiffs would have found Defendant's definition of

14     "Compare at" as follows:

15

16     "Compare at Pricing

17     We want you to shop with more information, so many of our products

18     include a comparison price. The comparison price represents a recent

19     documented selling price of the same or similar product in full-price

20     department stores or specialty stores. Where identical products are not

21     available we may compare to similar products and styles. Prices

22     charged for the compared to products may change over time, but our

23     goal is to provide you with a useful comparison point of what you

24     may have paid in a competitive store, so you can be sure you are

25     getting a great bargain when you shop at Ross."

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT

**A.**   **Reasonable Consumers Do Not Interpret Defendant's "Compare At" Prices to be Prices Defendant Believes to be Prices of Similar Products**:

50.   Reasonable consumers, including Plaintiffs, believe that ARPs are real, verified comparative retail prices.  Reasonable consumers, including Plaintiffs, believe that ARPs are not numbers that retailers estimate or make up.  Reasonable consumers, including Plaintiffs, believe that an ARP advertised with the phrase, "Compare At," is a verified retail price for the same, identical item.

51.   A 2004 study in The Journal of Consumer Affairs by Larry D. Compeau, Ph.D., *et al*., has concluded that the average reasonable consumer interprets the term "compare at," when presented in comparison to a lower selling price for an item, to refer to "prices found in a 'regular price' department store."  (The Journal of Consumer Affairs, Vol. 38, No. 1, 2004, at 184).

52.   Reasonable consumers, including Plaintiffs, believed the "Compare At" reference prices on Defendant's price tags were the prices at which other merchants supposedly sold the same, identical products.

53.   A reasonable consumer would interpret Defendant's "Compare At" prices as the prices at which a substantial number of vendors are selling the identical products.

54.   Defendant does not, and did not, make clear to consumers that a comparison is, and was, being made with other "similar," non-identical products.

55.   Nowhere on Defendant's price tags, or in Defendants' price advertising, is it made clear to consumers, including Plaintiffs, that the advertised "Compare At" price is what Defendant believes to be the price of a "similar" product.

56.   Nowhere on Defendant's price tags is it made clear to consumers, or even mentioned, that the "Compare At" price may be a reference to the price of a "similar product" or to products with similar "styles."

- 14 -

57.   Consumers should not have to sleuth their way into Defendant's website just to find Defendant's, ambiguous, contradictory, misleading and non-intuitive interpretation of what it means by the phrase "Compare At."

58.   Even if a consumer were to find Defendant's interpretation of the phrase "Compare At" on its website before purchasing a product from Ross, it is still not clear from Defendant's definition exactly what the "Compare At" price actually is.

59.   Even though one of the alternative interpretations provided by Defendant of its definition of the phrase "Compare At" might include the price of a "similar product," there are other equally reasonable and plausible interpretations of the same phrase and definition.  One such reasonable and plausible interpretation of the phrase "Compare At" read in light of Defendant's definition is that the "Compare At" price is a reference to the "selling price of the same product."  This is precisely how Plaintiffs, reasonable consumers, interpreted the "Compare At" prices of each of the items they purchased from Ross – as the "price of the same product."

60.   Viewed in light of Defendant's definition, Defendant's "Compare At" price could be the selling price of the same item at other full-price department or specialty stores.  Or, it could be the selling price of a "similar" product.  It could simply be what Defendant believes a product of similar "style" might sell for.  Or, it could be none of the above.  It may be that the particular item, or even a similar item, was never offered for sale at the "Compare At" price by any other retailer.  And consumers, even if they were to find Defendant's definition, would still be left to guess what a "similar" product might be, or what products may have similar "styles."

61.   Defendant's depiction of prices, as described herein, deceptively represented to consumers, including Plaintiffs, that the "Compare At" price was the price

SECOND AMENDED CLASS ACTION COMPLAINT

at which the same, identical product typically sold in the marketplace, from which Defendant offered a discount.

62. Plaintiffs believe that further investigation and discovery will reveal that the "Compare At" prices advertised by Defendant were not the then prevailing retail prices for the products that they purchased from Ross.

63. Nowhere on or near Defendant's price tags does Defendant disclose to consumers, including Plaintiffs, what the "Compare At" price is, where Defendant came up with the "Compare At" price, or what Defendant means by the term "Compare At."

64. The Better Business Bureau ("BBB") Code of Advertising suggests that if a retailer means to compare its selling prices to higher reference prices of comparable, non-identical merchandise, the retailer should use clear language in its advertising such as "comparative value," "compares with merchandise selling at," or "equal to merchandise selling for."

65. Confronted with the simple phrase, "Compare At," reasonable consumers like Plaintiffs believe that the higher reference prices represent prices at which the same, identical items currently sell for, or have recently sold for, in the marketplace – the then-or-recent-prevailing retail or market prices.

66. Plaintiffs and all other Class Members reasonably relied upon Defendant's deceptive, misleading, and/or false representations of comparative prices and false representations of purported savings, discounts and bargains when purchasing merchandise from Defendant's California stores.

67. Plaintiffs did not, and reasonable consumers would not, interpret the semantic phrase "Compare At" the way Defendant interprets it.

68. Defendant's use of the phrase "Compare At" in connection with its ARPs was, and is, false, misleading, and/or deceptive.

/ / /

/ / /

- 16 -

SECOND AMENDED CLASS ACTION COMPLAINT

**B.** **Defendant's "Compare At" Price Advertising Omits Necessary Information, Including Defendant's Purported Disclosure**:

69. At all times relevant herein, Defendant has been under a duty to Plaintiffs and all other Class Members to adequately disclose the truth about its "Compare At" prices.

70. The FTC, in its Policy Statement on Deception (Oct. 14, 1983), requires that advertisers must disclose material information to consumers if the disclosure of the information would "prevent the claim, practice, or sale from being misleading."

71. The FTC further states that "[a] misleading omission occurs when qualifying information necessary to prevent a practice, claim, representation, or reasonable expectation or belief from being misleading is not disclosed."

72. Defendant has used the phrase "Compare At" on the price tags of each product offered for sale at Ross stores throughout California regardless of whether the product was a "close-out" item (one which was previously or currently sold at a full-price department store) or a "makeup" item (one that was produced exclusively for Defendant and sold only at Ross stores).

73. Defendant's 2014 Annual Report reveals that Defendant purchases "the vast majority of [its] merchandise directly from manufacturers," as opposed to the leftover or closeout items from department stores.  One buyer intern for Ross has revealed that as much as 70% of the inventory at Ross stores may consist of "make-up" items.  This means that the "vast majority" of the items sold at Ross, and advertised with "Compare At" reference prices, were never offered for sale at any other store or by any other retailer at the "Compare At" price.

74. When Defendant compares its selling price to a supposed "recent documented selling price" of an identical item previously sold at a full-price department store (a "close-out" item), Defendant does so by using the

- 17 -
SECOND AMENDED CLASS ACTION COMPLAINT

comparative reference phrase "Compare At."  In this case, Defendant is supposedly comparing apples-to-apples.  That is, the phrase "Compare At" supposedly instructs the consumer to compare Defendant's selling price to the price that the same exact product recently sold for at other retailers.

75. When Defendant compares its selling price to a supposed "recent documented selling price" of a "similar product" (a "makeup" item), Defendant also does so by using the same comparative reference phrase "Compare At."  In this case, Defendant is supposedly comparing apples-to-oranges.  That is, the phrase "Compare At" in this case supposedly instructs the consumer to compare Defendant's selling price not to the same exact product, but to the price that a "similar product," or a product with a similar "style," recently sold for at other retailers.

76. Defendant, however, does not disclose to consumers whether they are comparing the Ross price to the supposed recent price of the exact same product (apples-to-apples), or whether they are comparing the Ross price to the supposed price of a "similar product" (apples-to-oranges).

77. When Plaintiffs were exposed to Defendant's "Compare At" reference prices they, like all typical reasonable consumers, believed they were comparing apples-to-apples.  In reality, however, it is not clear whether they were comparing Defendant's selling price to supposed prices of identical items, or "similar," non-identical items.

78. Even if Plaintiffs, or any other Class Member, had seen and read Defendant's disclosure before purchasing a product from a Ross store in California, they would not have known whether they were comparing the Ross price to the price of an identical product, a "similar" product, or a product with a similar "style."

SECOND AMENDED CLASS ACTION COMPLAINT

79. Thus, Defendant's "Compare At" reference prices are deceptive, misleading, and/or have a tendency or likelihood to mislead or confuse a reasonable consumer, and in fact did deceive, mislead and confuse Plaintiffs.

80. Defendant's "Compare At" reference prices therefore required, and continue to require, a qualifying disclosure because, amongst other things, Defendant defines and interprets the term "Compare At" in a way that reasonable consumers do not, and would not.

81. Defendant has in fact provided a qualifying disclosure, but that disclosure is ambiguous, unclear, and is buried on its website, or out of plain view in its stores, and not clearly and conspicuously next to the "Compare At" reference prices, as required by FTC rules.

82. Studies, such as the 2004 study in The Journal of Consumer Affairs by Larry D. Compeau, Ph.D., *et al.*, have concluded that "about two-thirds" of consumers "may be deceived by the 'Compare At' phrase if specific information regarding the comparison is not provided." (The Journal of Consumer Affairs, Vol. 38, No. 1, 2004, at 186).

83. Defendant attempts to provide that additional "specific information" by way of a disclosure accessible only through a hyperlink at the bottom of its web page, and in small print on signs in its stores not easily seen by, or made clear or conspicuous to, customers. Defendants' disclosure is inadequate and does not comply with FTC rules and/or guidelines.

84. Where, as here, the retailer and the consumer do not share the same meaning of the comparative reference phrase ("Compare At"), and thus the term is open to more than one interpretation, the use of that term is misleading and deceptive. The FTC states, in its Policy Statement on Deception, that "[w]hen a seller's representation conveys more than one meaning to reasonable consumers, one of which is false, the seller is liable for the misleading interpretation."

85.     Defendant's own definition conveys more than one meaning.  Either the "Compare At" price refers to the supposed price of the "same" product, a "similar" product, or a product with a similar "style."  For any given product, one of those definitions must necessarily be false.  Even if Defendant's multiple definitions were reasonable, for each and every item offered for sale at Ross stores in California, at least one of those definitions must be, and has been, false.

86.     It is a deceptive marketing act and/or practice for Defendant to define its reference prices as what it believes to be prices of the "same or similar" products, but fail to clearly and conspicuously disclose that definition to consumers.  If the reference prices provided by Defendant on the price tags of its products are meant to be prices of similar items, those price tags should say so.

87.     Plaintiffs did not, and reasonable consumers would not, interpret the semantic phrase "Compare At" the way Defendant interprets it.

88.     Where, as here, the retailer ascribes a secret, undisclosed meaning to the phrase that differs from that which reasonable consumers, including Plaintiffs, would ascribe to it, the use of that term is deceptive, misleading, and/or likely to mislead reasonable consumers.

89.     It is a deceptive marketing act and/or practice for Defendant to fail to clearly and conspicuously disclose its definition or interpretation of its phrase "Compare At" to its customers.

90.     Defendant's use of the semantic term "Compare At" in connection with its ARPs for its products was, and is, false, misleading, and/or deceptive.

91.     Defendant's definition of the term "Compare At," which it failed to adequately disclose, provides material facts that a reasonable person would have considered material; i.e., facts that would contribute to a reasonable person's decision to purchase merchandise offered for sale by Defendant.

- 20 -

SECOND AMENDED CLASS ACTION COMPLAINT

Defendant's reference prices, and/or representations of discounts from its comparative prices, and representations of purported savings, discounts and/or bargains, are and were objectively material to reasonable consumers.

92. Plaintiffs and all other Class Members reasonably and justifiably acted and relied to their detriment on Defendant's failure to disclose, and concealment of, the truth about its comparative prices, in purchasing merchandise at Defendant's stores throughout California.

## C. Defendant's Failure to Adequately Disclose What Its "Compare At" Prices Are Violates FTC Guidelines:

93. The FTC provides detailed requirements concerning the use of purported disclosures in their ".com Disclosures" rules.

94. Defendant provides a disclosure of its definition or interpretation of its "Compare At" prices on its website, and that disclosure therefore is subject to the FTC's ".com Disclosures" rules.  Defendant's disclosure is also subject to the FTC's Policy Statement on Deception.

95. The FTC has a "clear and conspicuous requirement" for advertising disclosures, which requires any such disclosures to be presented to consumers "clearly and prominently."  The FTC's "clear and conspicuous requirement" requires that "disclosures must be clear and conspicuous."

96. When making a disclosure related to an advertising claim, the FTC requires that "[d]isclosures should be placed as close as possible to the claim they qualify," or the "triggering claim."

97. The FTC requires that "[w]hen the disclosure of qualifying information is necessary to prevent an ad from being deceptive, the information should be presented clearly and conspicuously so that consumers can actually notice and understand it. A . . . disclaimer that is easily missed on a website [is] not likely to be effective. Nor can advertisers use fine print to contradict other statements in an ad or to clear up misimpressions that the ad would leave

SECOND AMENDED CLASS ACTION COMPLAINT

otherwise. . . . To ensure that disclosures are effective, advertisers should use clear and unambiguous language, [and] place any qualifying information close to the claim being qualified."

98. Even if the advertisement is small and space-constrained, the FTC requires that "[i]f a space-constrained ad contains a claim that requires qualification, the advertiser disseminating it is not exempt from disclosure requirements."

99. Defendant's "Compare At" reference prices require qualification.

100. Defendant's qualifying disclosures are not presented clearly or conspicuously, nor are they presented so that consumers can notice them.

101. Defendant's disclosures of qualifying information (i.e., that Defendants' "Compare At" reference prices are what it believes to be prices of the "same or similar" items) are not placed close to the "Compare At" claims.  They are placed on a website only accessible by linking to them through a hyperlink, and on signage in Defendants' stores that is not easily seen by, nor made clear and/or conspicuous to, consumers.

102. Defendant does not, and did not, place any disclosure of qualifying information regarding its "Compare At" reference prices close to the "Compare At" claims themselves – i.e., close to its price tags.

103. Plaintiffs did not see, and were not aware of, Defendant's disclosures.

104. When using a hyperlink to lead to a disclosure, the FTC requires, among other things, that the advertiser make the link "obvious."

105. Defendant's hyperlinks to its disclosures are not obvious.

106. The FTC's disclosure rules further provide that "[d]isclosures that are an integral part of a claim or inseparable from it should not be communicated through a hyperlink. Instead, they should be placed on the same page and immediately next to the claim, and be sufficiently prominent so that the claim and the disclosure are read at the same time, without referring the consumer somewhere else to obtain this important information."

107. Defendant's qualifying disclosures are an "integral part" of its "Compare At" reference price claims. Those disclosures should not be or have been communicated to consumers through a hyperlink. Those disclosures should be, and should have been, placed on the price tags of Defendant's products immediately next to the "Compare At" price claims.

108. The FTC's disclosure rules further provide that "[a]dvertisers are responsible for ensuring that their messages are truthful and not deceptive. Accordingly, disclosures must be communicated effectively so that consumers are likely to notice and understand them in connection with the representations that the disclosures modify. Simply making the disclosure available somewhere in the ad, where some consumers might find it, does not meet the clear and conspicuous standard."

109. Defendant's disclosures do not meet the FTC's "clear and conspicuous standard."

110. Defendant's failure to adequately disclose to Class Members, including Plaintiffs, its definition or interpretation of the phrase "Compare At" violates the FTC's "clear and conspicuous standard."

111. The FTC's disclosure rules further provide that "[i]t is the advertiser's responsibility to draw attention to the required disclosures."

112. Defendant does not draw attention to its disclosures.

113. The FTC's disclosure rules further provide that "[d]isclosures must be effectively communicated to consumers before they make a purchase or incur a financial obligation."

114. Defendant does not effectively communicate its disclosures concerning its "Compare At" prices to consumers before they make their purchase(s) at Ross stores in California.

115. The FTC's Policy Statement on Deception provides that when determining whether an advertiser's disclosure is adequate, a court should consider "the

- 23 -

SECOND AMENDED CLASS ACTION COMPLAINT

totality of the ad or the practice and ask questions such as: how clear is the representation? how conspicuous is any qualifying information? how important is the omitted information? do other sources for the omitted information exist? how familiar is the public with the product or service?"

116. Defendant's disclosure is not clear. The qualifying information Defendant attempts to provide in its disclosure is not at all conspicuous. The information provided by Defendant's disclosure is material to consumers, and thus very important to the purchasing decisions of reasonable consumers, including Plaintiffs. Other than Defendant's disclosure, there are no other sources from which consumers can acquire the information provided by the disclosure – i.e., that the reference price may be a reference to a "similar," non-identical product.

117. The FTC's disclosure rules further provide that "[i]f the disclosure needs to be in the ad itself but it does not fit, the ad should be modified so it does not require such a disclosure or, if that is not possible, that space-constrained ad should not be used. . . . If a disclosure is necessary to prevent an advertisement from being deceptive, unfair, or otherwise violative of a Commission rule, and if it is not possible to make the disclosure clear and conspicuous, then either the claim should be modified so the disclosure is not necessary or the ad should not be disseminated."

118. Defendant was required to put a qualifying disclosure on its price tags. Or, if putting a qualifying disclosure on its price tags was not possible, Defendant's "Compare At" reference prices should not have been, and should not be, used.

### D. Defendant's Use of Reference Prices Violates California Law:

119. In advertising the "Compare At" price for a product, Defendant did not, and does not, actually present the prevailing market price for that product (i.e. the price at which other merchants were selling the identical product).

Plaintiffs believe that further investigation and discovery will reveal that Defendant's "Compare At" prices are also not prices at which substantial sales of identical product were made at principal retail outlets in California.

120. Through its deceptive, misleading, and/or false marketing, advertising and pricing scheme, Defendant has violated, and continues to violate, California law which prohibits advertising goods for sale at a discount when compared to unsubstantiated prices at which other merchants purportedly sell the goods, and prohibits misleading statements about the existence and amount of comparative prices.  Specifically, Defendant has violated, and continues to violate, the UCL, the FAL, the CLRA, and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)), and specifically prohibits false advertisements (15 U.S.C. §52(a)).

121. Under the FTCA, advertising must be truthful and non-deceptive, advertisers such as Defendant must have evidence to back up their claims, and advertisements cannot be unfair.

122. Defendant's false and/or misleading comparative pricing representations made it more likely that consumers would purchase particular products from Defendant.  Defendant's misleading claims of significant discounts were likely to persuade consumers who were not inclined to purchase products at all, and did in fact persuade Plaintiffs, to buy them from Defendant solely because they were misled into believing that they were getting an unusually good deal.

123. Defendant's misrepresentations about its pricing were likely to mislead consumers, and in fact did mislead Plaintiffs, into believing that Defendant's prices would always be significantly lower than the prices offered by other merchants for identical products.

SECOND AMENDED CLASS ACTION COMPLAINT

124.   Defendant misrepresented the existence, nature and amount of price discounts by purporting to offer specific dollar discounts from expressly referenced comparative prices, which were misrepresented as "Compare At" prices.  These purported discounts were false, deceptive, and/or misleading, however, because the referenced comparative prices were not bona fide reference prices and did not represent true comparative prices for identical products sold by other merchants in California.

125.   Defendant has engaged in a company-wide, pervasive and continuous campaign of deceptively claiming that each of its products sold at a far higher price by other merchants in order to induce Plaintiffs and all Class Members to purchase merchandise at purportedly marked-down sale prices. California law prohibits such practices.

126.   Defendant's deceptive and misleading representations, as described herein, accompanied virtually every product sold in California Ross stores each and every day throughout the Class Period, and Defendant is still making such deceptive and misleading comparative price claims for many of the products in its California stores.

127.   Throughout the Class Period Defendant routinely and systematically made untrue, deceptive, and misleading comparative advertising claims about the prices of its products, as described herein.

128.   Throughout the Class Period, Defendant's "Compare At" prices constituted material misstatements, and/or omitted material information about its comparative prices, that were likely to mislead reasonable consumers.

129.   Defendant has failed to disclose to, and/or concealed from, Plaintiffs and all other Class Members the truth about its alleged comparative prices for the purpose of inducing Plaintiffs and other Class Members to purchase merchandise at each of its Ross stores throughout California.

SECOND AMENDED CLASS ACTION COMPLAINT

130. Plaintiffs believe that further investigation and discovery will reveal that even if and when a "Compare At" price for a product may have represented an actual recent documented selling price of the same product, Defendant chose the highest price at which the product was selling in the marketplace, and presented that price to consumers as the "Compare At" price.

131. Defendant knew or should have known that its representations concerning its "Compare At" prices were untrue and/or misleading.

132. Defendant knows and has known, should reasonably know, or should have known, that its comparative price advertising is, and has been, deceptive, misleading, false, fraudulent, unfair and/or unlawful.

133. Defendant knew or should have known that using inflated and/or unverified comparative reference prices without verifying that they were prices at which substantial sales of those products had been made in California, or that using the selling prices of supposedly "similar" products or products with similar "styles," thereby creating either fictitious or inflated "Compare At" prices and either fictitious or inflated discounts or savings, was unlawful.

134. The use of the term "Compare At" by Defendant on the price tags of the products sold in its California Ross stores constituted the dissemination of untrue, deceptive and/or misleading statements to consumers about the prices of the products so listed as compared with the prices offered by other merchants for the same products. Defendant knew, or by the exercise of reasonable care should have known, that those statements were untrue, deceptive, and/or misleading. Each such statement constitutes, and has constituted, a separate violation of California Business & Professions Code §17500. Each such statement also violates, and has violated, California Civil Code §§1750(a)(5), (7) and/or (13).

SECOND AMENDED CLASS ACTION COMPLAINT

135.  Plaintiffs, individually and on behalf of all others similarly situated, seek restitution and injunctive relief under the UCL, FAL and CLRA to stop Defendant's pervasive and rampant false and misleading advertising and marketing campaign.

## PLAINTIFFS' PURCHASES

136.  Plaintiffs each purchased numerous products throughout the Class Period from Defendant's stores in Southern California, in reliance on Defendant's false, deceptive and/or misleading advertising and false, deceptive, and/or misleading price comparisons, which they would not otherwise have purchased but for Defendant's false, deceptive and/or misleading advertising, and false, deceptive and/or misleading price comparisons as described herein.

**Plaintiff Jacobo Purchases**:

137.  For example, and without limitation, on May 18, 2015, Jacobo purchased items from Defendant's La Puente, California, Ross store for a total cost of $39.21.  Among other items, Jacobo purchased a Levi's men's belt for $10.99.  The Levi's belt purchased by Jacobo on May 18, 2015, was advertised with a price tag which had two prices advertised on it: a "Ross Price" of $10.99 and a significantly higher "Compare At" reference price advertised as $25.00.

138.  As a further example, and without limitation, Jacobo also purchased a Free Authority Outdoors camouflage hat from Defendant for $7.99.  The hat was also advertised with a price tag which had two prices advertised on it: a "Ross Price" of $7.99 and a significantly higher "Compare At" reference price of $15.00.

139.  A pre-lawsuit investigation of other brick and mortar stores in Southern California, as well as online, conducted prior to filing this lawsuit in an effort to find other retailers selling a Free Authority Outdoors camouflage

SECOND AMENDED CLASS ACTION COMPLAINT

hat, was unable to find any other retailer in the Southern California area, or anywhere else, that was selling or that had sold the identical Free Authority Outdoors camouflage hat Jacobo purchased at Ross.

140.   Jacobo did, however, find a similar camouflage hat selling at Sports Authority with a "Duck Dynasty" label, selling for $14.99 – the same "Compare At" reference price advertised by Defendant for the Free Authority Outdoors brand.

141.   Jacobo's pre-lawsuit investigation has led to the conclusion that the Free Authority Outdoors camouflage hat he purchased from Ross is and was not offered for sale at any other stores in Jacobo's area for the "Compare At" reference price advertised by Defendant, but that a similar "Duck Dynasty" brand hat was offered for sale by another retailer in Jacobo's area for the "Compare At" reference price advertised by Defendant.

142.   Based on his pre-lawsuit investigation, Jacobo believes that the "Compare At" reference price of $15.00 advertised by Defendant in relation to the Free Authority Outdoor camouflage hat he purchased was a reference to the selling price of a "similar," non-identical product.

143.   Jacobo also purchased at least 2 pieces of metal wall art in the shapes of a lizard and a butterfly from Ross during the Class Period and prior to filing this lawsuit in June 2015.  Jacobo purchased the metal lizard from Ross for $8.99, and it had a "Compare At" reference price on the price tag advertised as $18.00.  Jacobo purchased the metal butterfly from Ross for $12.99, and it had a "Compare At" reference price on the price tag advertised as $25.00.

144.   A pre-lawsuit investigation of prices charged by other retailers for identical pieces of metal wall art did not reveal any other brick and mortar, or online, retailers selling the same, identical lizard or butterfly pieces purchased by Jacobo from Ross.

SECOND AMENDED CLASS ACTION COMPLAINT

145.  Jacobo's pre-lawsuit investigation of the metal wall art he purchased from Ross has led to the conclusion that the metal lizard and metal butterfly he purchased from Ross were not offered for sale at any other stores in Jacobo's area.

146.  Based on his pre-lawsuit investigation, Jacobo believes that the "Compare At" reference prices of $18.00 and $25.00 advertised by Defendant in relation to the metal lizard and metal butterfly he purchased were references to the selling prices of "similar," non-identical products.

147.  The "Compare At" prices of the Free Authority Outdoors hat, and the metal lizard and butterfly, were misleading because a reasonable consumer would think that the "Compare At" prices were prices at which the identical items had sold at some time and at some retailer, and would not think that they were references to the supposed prices of "similar" products.  Jacobo was misled by Defendant's "Compare At" prices.

148.  Defendant's price tags were likely to confuse a reasonable consumer because, among other things, the words "similar product" did not appear anywhere on the price tags.

149.  Defendant's price tags were misleading and confusing because, among other things, a reasonable consumer like Jacobo would have to look somewhere other than the price tags themselves to discover that the "Compare At" prices may have been references to the supposed prices of "similar" items.

150.  Each product Jacobo purchased from Defendant was advertised with a price tag which had two prices advertised on it: a sale price, and a significantly higher "Compare At" reference price.

151.  Plaintiffs believe that further investigation and discovery will reveal that the "Compare At" reference prices advertised by Defendant for the Free Authority Outdoors camouflage hat, the metal lizard, and the metal butterfly were references to alleged selling prices of "similar," non-identical products.

SECOND AMENDED CLASS ACTION COMPLAINT

152. Plaintiffs believe that further investigation and discovery will also reveal that the "Compare At" reference prices on the products purchased by Jacobo were not true, bona fide reference prices as discussed herein – i.e., that they did not represent the prices at which a substantial volume of sales of the same products had sold for at other principal retail outlets in California at the time Jacobo made his purchases from Ross.

153. When Jacobo shopped at Defendant's California Ross stores, he was exposed to, saw, believed, and relied on Defendant's "Compare At" price advertising. Jacobo purchased the products that he did from Ross because he believed he was receiving added value, or saving a quantifiable amount of money, equal to the difference between the "Compare At" prices, which he reasonably believed to be verified market retail prices for the actual identical products he purchased, and the Ross sale prices.

154. When Jacobo shopped at Defendant's California Ross stores, he was unaware of Defendant's definition or interpretation of the "Compare At" price. Defendant failed to clearly, conspicuously, or adequately disclose its definition or interpretation to Jacobo or any other Class Member.

155. The comparison prices on the items purchased by Jacobo at Defendant's California Ross stores, and the corresponding price reductions, added value, and/or savings, were false, misleading and/or deceptive.

156. Plaintiffs believe that further investigation and discovery will reveal that the prevailing retail prices for the items that Jacobo purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant. Jacobo reasonably believed that the "Compare At" prices associated with the items that he purchased from Defendant were the then prevailing retail prices for the identical items at other full-price retailers. Jacobo reasonably believed that the "Compare At" prices were the prices he would pay for those same identical items at other retailers in his general

SECOND AMENDED CLASS ACTION COMPLAINT

area.  Jacobo would not have purchased any such product from Defendant in the absence of Defendant's false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

157.   In addition to Jacobo's purchases described above, Jacobo made numerous other purchases of products from Defendant's California Ross stores throughout the Class Period located in City of Industry, West Covina, La Habra, Brea, and Montebello.  With respect to each such purchase, Jacobo purchased those products from Defendant after viewing and relying on Defendant's advertising which included false and/or misleading comparison prices placed on the price tags of the items which he purchased.  Plaintiffs believe that further investigation and discovery will reveal that the comparison prices, and the corresponding price reductions and/or savings, were false and deceptive.  Plaintiffs also believe that further investigation and discovery will reveal that the prevailing retail prices for the items that Jacobo purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant.  Jacobo would not have purchased any such product from Defendant in the absence of Defendant's false, and/or deceptive, and/or misleading advertising, and/or misrepresentations.

**Plaintiff Metoyer's Purchases**:

158.   Plaintiff Metoyer also made numerous purchases from Ross stores in Southern California throughout the Class Period.  For example, and without limitation, on February 11, 2015, Metoyer purchased items from Defendant's Beaumont, California, Ross store for a total cost of $113.51.  Among other items, Metoyer purchased a pair of women's Patricia Wedge Pump shoes for $17.99.  The shoes purchased by Metoyer on February 11, 2015, were advertised with a price tag which had two prices: a "Ross Price" of $17.99 and a significantly higher "Compare At" reference price which, to the best of Metoyer's recollection, was advertised as $65.00.

159.   A pre-lawsuit investigation of other brick and mortar stores in Southern California, as well as online, was conducted prior to filing this lawsuit in an effort to find other retailers selling the same or similar Patricia Wedge Pump shoes purchased by Metoyer from Ross.  The pre-lawsuit investigation found only one brick and mortar retailer, Sears, selling similar Patricia Wedge Pump shoes.  The selling price at Sears for similar Patricia Wedge Pump shoes ranged from $19.79 to $21.99, approximately 65% less than the "Compare At" price advertised by Defendant.

160.   Metoyer's pre-lawsuit investigation of prices for Patricia Wedge Pump shoes also revealed Patricia Wedge Pump shoes similar to those she purchased from Ross selling on Amazon.com for $14.60 to $28.99, again more than 50% less than the "Compare At" price advertised by Defendant.

161.   Metoyer's pre-lawsuit investigation has led to the conclusion that the Patricia Wedge Pump shoes she purchased from Ross are and were not offered for sale at any other stores in Metoyer's area for the "Compare At" reference price advertised by Defendant, but that similar Patricia Wedge Pump shoes were offered for sale by other brick-and-mortar retailers in Metoyer's area, and online, for approximately the same amount that she paid at Ross, and more than 50% less than the "Compare At" reference price advertised by Defendant.

162.   Based on her pre-lawsuit investigation, Metoyer believes that the "Compare At" reference price advertised by Defendant in relation to the Patricia Wedge Pump shoes she purchased was a reference to the selling price of a "similar," non-identical product.

163.   Metoyer also purchased numerous other products from Ross stores in California throughout the Class Period, many of which she now believes had "Compare At" reference prices that were references to prices of "similar," non-identical items.

SECOND AMENDED CLASS ACTION COMPLAINT

164.   Metoyer believes that further investigation and discovery will reveal that many of the items she purchased from Ross, some of which are set forth in the pictures of Metoyer's receipts herein below, were advertised with "Compare At" reference prices that were references to alleged selling prices of "similar," non-identical products.

165.   Pictures of some of the receipts for some of the items that Metoyer purchased from Ross stores in California during the Class Period are set forth here:

SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



SECOND AMENDED CLASS ACTION COMPLAINT



SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



SECOND AMENDED CLASS ACTION COMPLAINT



SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



SECOND AMENDED CLASS ACTION COMPLAINT



SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



SECOND AMENDED CLASS ACTION COMPLAINT



SECOND AMENDED CLASS ACTION COMPLAINT



SECOND AMENDED CLASS ACTION COMPLAINT



SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



- 47 -

SECOND AMENDED CLASS ACTION COMPLAINT

166.    Each product Metoyer purchased from Defendant was advertised with a price tag which had two prices advertised on it: a sale price, and a significantly higher "Compare At" reference price.

167.    Defendant knows which of the items Metoyer purchased were advertised with Compare At prices that were references to the prices of supposed "similar" items.  Plaintiffs believe that further investigation and discovery will reveal those items that Metoyer purchased which had "Compare At" reference prices that were references to prices of supposed "similar" items.

168.    The "Compare At" price of the Patricia Wedge Pump shoes was misleading because a reasonable consumer would think that the "Compare At" price was a price at which the identical item had sold at some time and at some retailer, and would not think that it was a reference to the supposed price of a "similar" product.  Metoyer was misled by Defendant's "Compare At" prices.

169.    Defendant's price tags were likely to confuse a reasonable consumer because, among other things, the words "similar product" did not appear anywhere on the price tags.

170.    Defendant's price tags were misleading and confusing because, among other things, a reasonable consumer like Metoyer would have to look somewhere other than the price tags themselves to discover that the "Compare At" prices may have been references to the supposed prices of "similar" items.

171.    Plaintiffs believe that further investigation and discovery will reveal that the "Compare At" reference prices on the products purchased by Metoyer were not true, bona fide reference prices as discussed herein – i.e., they did not represent the prices at which a substantial volume of sales of the products had sold for at other principal retail outlets in California at the time Metoyer made her purchases.

SECOND AMENDED CLASS ACTION COMPLAINT

172. When Metoyer shopped at Defendant's California Ross stores, she was exposed to, saw, believed, and relied on Defendant's "Compare At" price advertising. Metoyer purchased the products that she did from Ross because she believed she was receiving added value, or saving a quantifiable amount of money, equal to the difference between the "Compare At" prices, which she reasonably believed to be verified market retail prices for the actual identical products she purchased, and the Ross sale prices.

173. When Metoyer shopped at Defendant's California Ross stores, she was unaware of Defendant's definition or interpretation of the "Compare At" price. Defendant failed to clearly, conspicuously, or adequately disclose its definition or interpretation to Metoyer or any other Class Member.

174. The comparison prices on the items purchased by Metoyer at Defendant's California Ross stores, and the corresponding price reductions, added value, and/or savings, were false, misleading and/or deceptive.

175. Plaintiffs believe that further investigation and discovery will reveal that the prevailing retail prices for the items that she purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant. Metoyer reasonably believed that the "Compare At" prices associated with the items that she purchased from Defendant were the then prevailing retail prices for the identical items at other full-price retailers. Metoyer reasonably believed that the "Compare At" prices were the prices she would pay for those same items at other retailers in her general area. Metoyer would not have purchased any such product from Defendant in the absence of Defendant's false, misleading and/or deceptive advertising, and/or misrepresentations as described more fully herein.

176. With respect to each purchase Metoyer made at Ross stores in California during the Class Period, Metoyer purchased those products from Defendant after viewing and relying on Defendant's advertising which included false

- 49 -

SECOND AMENDED CLASS ACTION COMPLAINT

and/or misleading comparison prices placed on the price tags of the items which she purchased.  Plaintiffs believe that further investigation and discovery will reveal that the comparison prices, and the corresponding price reductions and/or savings, were false and deceptive.  Plaintiffs also believe that further investigation and discovery will reveal that the prevailing retail prices for the items that Metoyer purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant.  Metoyer would not have purchased any such product from Defendant in the absence of Defendant's false, and/or deceptive, and/or misleading advertising, and/or misrepresentations.

## **CLASS ACTION ALLEGATIONS**

177.  Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated (the "Class" or "Class Members") against Defendant, namely:

All persons who, while in the State of California, and between June 20, 2011, and the present (the "Class Period"), purchased from Ross one or more items at any Ross store in the State of California with a price tag that contained a "Compare At" price which was higher than the price listed as the Ross sale price on the price tag, and who have not received a refund or credit for their purchase(s).  Excluded from the Class are Defendants, as well as Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any Defendant.

178.  Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

179.  Defendant's deceptive, misleading, and/or false comparative price advertising scheme, disseminated to California consumers via representations on the price tags of each of Defendant's items in its

SECOND AMENDED CLASS ACTION COMPLAINT

California Ross stores, has been rampant throughout California as part of a massive, years-long, pervasive campaign and has been consistent across all of Defendant's merchandise at each of its stores throughout California. Defendant's pricing scheme has throughout the Class Period been prominently displayed directly on the price tag of each item sold, with express references to alleged comparative prices that have never existed and/or do not, and/or did not then, currently constitute the prevailing market retail prices for identical merchandise or prices at which a substantial volume of sales of each such product had been made in California.

180. Plaintiffs and all other Class Members were each exposed to Defendant's deceptive, misleading, and/or false comparative price advertising.

181. Plaintiffs are informed and believe, and on that basis allege, that hundreds of thousands, of California consumers have been victims of Defendant's deceptive, misleading and unlawful pricing scheme.

182. Plaintiffs are and have been members of the proposed Class described herein.

183. The number of persons in the proposed Class is so numerous that joinder of all such persons would be impracticable.  While the exact number and identities of all such persons are unknown to Plaintiffs at this time and can only be obtained through appropriate discovery, Plaintiffs believe that the proposed Class herein includes over 100,000 persons.

184. Common questions of law and/or fact exist in this case with respect to the Class which predominate over any questions affecting only individual members of the Class, which do not vary between members thereof, and which drive the resolution of the claims of Plaintiffs and all other Class Members.

185. The common questions of law and/or fact include, but are not limited to:

a.  Whether products at Ross stores in California are advertised with "Compare At" reference prices;

b.  Whether a reasonable consumer would interpret the phrase "Compare At" as Defendant interprets it;

c.  How a reasonable consumer interprets the phrase "Compare At" on a price tag;

d.  Whether a reasonable consumer is likely to be deceived by Defendant's use of its "Compare At" reference prices;

e.  Whether the phrase "Compare At" is susceptible to more than one reasonable interpretation;

f.  Whether the phrase "Compare At" is misleading and/or deceptive;

g.  Whether, during the Class Period, Defendant used false and/or misleading "Compare At" prices on the price tags of items sold in its California stores, and whether Defendant misleadingly advertised comparative price discounts for its merchandise;

h.  Whether, during the Class Period, the "Compare At" prices advertised by Defendant were in fact the prevailing market prices for the respective identical items sold by other retailers in the marketplace at the time of the dissemination and/or publication of the advertised "Compare At" prices;

i.  Whether, during the Class Period, the "Compare At" prices advertised by Defendant were in fact prices at which substantial sales of those same products were made at principal retail outlets in California;

j.  Whether Defendant failed to adequately disclose its interpretation of its "Compare At" reference prices to consumers;

k.  Whether Defendant's disclosures of its interpretation of its "Compare At" reference prices comply with established legal requirements for advertising disclosures;

SECOND AMENDED CLASS ACTION COMPLAINT

l.   Whether Defendant's price tags omit necessary information;

m.  Whether Defendant adequately verified that its "Compare At" reference prices meet FTC and/or other legal requirements;

n.   Whether Defendant's price-comparison advertising was false, deceptive or misleading within the meaning of the UCL, FAL, CLRA and/or FTCA;

o.   Whether Defendant's comparative pricing on its "Compare At" price tags would be material to a reasonable consumer's purchasing decisions;

p.   Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices under California law;

q.   Whether Defendant misrepresented and/or failed to disclose material facts about its product pricing and purported discounts;

r.   Whether Defendant has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

s.   Whether Class Members are entitled to restitution; and, if so, what the proper measure of restitution is; and,

t.   Whether Defendant continues to use false, deceptive, misleading and/or unlawful price comparisons such that an injunction is necessary.

186.  Plaintiffs' claims and those of all other Class Members arise out of a common course of conduct by Defendant.

187.  All Class Members, including the proposed Class representatives, were exposed to Defendant's misrepresentations or omissions of material fact claiming that its "Compare At" prices were accurate bona fide comparison prices.  Defendant's misrepresentations or omissions of material fact were uniformly made to all respective Class Members.  In addition, it can be

reasonably presumed that all Class Members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendant's false comparative price advertising scheme when purchasing merchandise at each and any of Defendant's stores in California.

188. The common questions of law and/or fact in this case are susceptible to common proof.

189. Resolution of the common questions of law and/or fact in this case will resolve issues that are central to Plaintiffs' claims and the claims of all other Class Members.

190. The claims of Plaintiffs and all Class Members involve the same untrue, deceptive, and/or misleading representations by Defendant conveyed to each Class Member by way of representations on the price tags of each product sold to each Class Member.

191. Each Class Members' claims, including those of Plaintiffs, allege that Defendant's price tags convey a deceptive, misleading, and/or untrue representation that the price at which Defendant offered a product was lower compared to a fictitious, deceptive, or misleading "Compare At" price.

192. Common proof in this case will produce a common answer as to whether Defendant's use of "Compare At" reference prices complies with legal requirements for the use of such reference prices, and whether Defendant's price-comparison advertising resulted in false, deceptive, or misleading price comparisons.

193. Common proof will resolve the common questions essential to resolution of the Class claims in this case in one stroke for all Class Members.

194. The claims of the named Plaintiffs in this case are typical of, and not antagonistic to, those of the other Class Members which they seek to represent. Plaintiffs and the Class they seek to represent have all been

exposed to and deceived (or were likely to be deceived) by Defendant's false comparative price advertising scheme, as alleged herein.

195. The crux of Plaintiffs' claims - that Defendant's price tags on each item in each of its California stores convey false, deceptive, and/or misleading comparative prices as described more fully herein - is common to all Class Members.

196. Plaintiffs' claims, and those of all Class Members, are based on conduct which is not unique to either of the named Plaintiffs.

197. Plaintiffs and all Class Members have been injured by the same common course of conduct by Defendant, and have suffered the same or similar injury, as alleged herein.

198. Disposition of Plaintiffs' claims in a class action will benefit all parties and the Court.

199. A class action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented herein.

200. If individual Class Members were each required to bring his or her own individual claims, any potential recovery by any such Class Member would be dwarfed by the cost of litigating on an individual basis.

201. In this case, Plaintiffs seek to recover relatively small sums for themselves and all other Class Members.  Accordingly, the disparity between the cost of litigating individual claims and the individual recoveries sought make individual claims highly unlikely, if not impossible.  Litigation costs would render individual prosecution of Class Members' claims prohibitive.  In cases such as this, where the individual recoveries sought by each Class Member are relatively small and eclipsed by the cost of litigating an individual claim, a class action is the only method by which Class Members may hope to resolve their claims.

202.   The prosecution of separate actions by individual members of the proposed Class herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of the proposed Class which would or may establish incompatible standards of conduct for Defendant, and which would also create a risk of adjudications with respect to individual members of the proposed Class herein which would, as a practical matter, be dispositive of the interests of other members of the proposed Class not parties to the particular individual adjudications, and/or would or may substantially impede or impair the ability of those other members to protect their interests.

203.   Plaintiffs are adequate representatives of the Class they seek to represent because they are each members of the Class, and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs will fairly and adequately represent and protect the interest of the Class because their interests are not antagonistic to the Class.  Plaintiffs have no conflict of interest with any other Class Member.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation.  Plaintiffs and their counsel will prosecute this action vigorously on behalf of the Class.

204.   Plaintiffs are informed and believe, and on that basis allege, that Defendant has one or more databases through which a significant majority of Class Members may be identified and ascertained, and that Defendant maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

205.   The definition of the proposed Class herein objectively depicts who the members of the Class are, making it administratively feasible to determine whether a particular person is a Member of the Class described herein.

SECOND AMENDED CLASS ACTION COMPLAINT

Because the alleged misrepresentations in this case (i.e., the false, deceptive, and/or misleading comparative prices) appear on the price tags of each product purchased, there is no concern that the Class may include individuals who were not exposed to Defendant's misrepresentations.

## FIRST CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

(California Business & Professions Code §17200 *et seq*.)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against Defendant)

206.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

207.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code §17200.

208.   Advertising or promotional practices are unlawful under the UCL if a reasonable consumer is likely to be deceived by them.

209.   Defendant has violated the "unfair" prong of the UCL by representing false, deceptive, and/or misleading comparative prices and corresponding price discounts and/or savings for merchandise where Defendant, in fact, inflated, estimated, or fabricated the purported "Compare At" prices for such products, or based the purported savings on a comparison to "similar," non-identical products and failed to adequately disclose to consumers what such "Compare At" prices were, such that the promised discount and/or saving was false, misleading and/or deceptive.

210.   These acts and practices were unfair because they caused Plaintiffs, and were likely to cause reasonable consumers, to falsely believe that Defendant is, and has throughout the Class Period been, offering value, discounts or bargains from the prevailing market price, value or worth of the products

SECOND AMENDED CLASS ACTION COMPLAINT

sold that did not, in fact, exist.  As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices than what they paid (and were, therefore, worth more or had a higher value than they actually had).  This perception has induced reasonable purchasers, including Plaintiffs, to buy such products, which they otherwise would not have purchased.

211.  Plaintiffs and all other Class Members were likely to be deceived by Defendants' use of the term "Compare At" on the price tags of merchandise at Ross stores in California.

212.  In deciding to purchase merchandise at Ross, Plaintiffs each relied on Defendant's misleading and deceptive representations regarding "Compare At" prices.  The comparative "Compare At" prices placed by Defendant on the price tags of merchandise in its California stores played a substantial role in each Plaintiff's decisions to purchase the products they purchased from Defendant, and neither Plaintiff would have purchased those items in the absence of Defendant's misrepresentations.  Accordingly, Plaintiffs have suffered monetary loss as a direct result of Defendant's unlawful practices described herein.

213.  Plaintiffs, like all other Class Members, saw Defendant's "Compare At" reference prices on the products they purchased before purchasing those products.  The "Compare At" prices were material to Plaintiffs, as they were to all other Class Members.  Plaintiffs relied on the "Compare At" prices in making their purchasing decisions.  Plaintiffs, like all other Class members, placed added value on the products they purchased from Ross because they believed the "Compare At" reference prices were true, accurate, verified comparative reference prices that represented the market retail prices of the identical products they purchased.  Because Defendant's "Compare At" prices were not true, accurate, or verified comparative reference prices (as

SECOND AMENDED CLASS ACTION COMPLAINT

described herein), the actual value of the products Plaintiffs and all other Class Members purchased at Ross was less then they believed and less than what they paid for those products.  Plaintiffs and all other Class Members therefore paid more for the products they purchased from Defendant than the value they received.

214.   The gravity of the harm to Class Members resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Defendant for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Defendant engaged in unfair business practices within the meaning of California Business & Professions Code §17200, *et seq.*

215.   Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all Class Members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.  Otherwise, Plaintiffs, the Class, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CAUSE OF ACTION

### FRAUDULENT BUSINESS PRACTICES

(California Business & Professions Code §17200 *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against Defendant)

216.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

217.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

SECOND AMENDED CLASS ACTION COMPLAINT

218.   Defendant's false comparative prices, including, but not limited to, its "Compare At" prices placed on the price tags of the products sold in its California Ross stores, were "fraudulent" within the meaning of the UCL because they deceived Plaintiffs, and were likely to deceive reasonable consumers and Class Members, into believing that Defendant was offering value, discounts or bargains from the prevailing market price, value or worth of the products sold that did not, in fact, exist.  As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the retail marketplace at substantially higher prices than what they paid (and were, therefore, worth more and had a higher value than they actually had).  This perception induced reasonable purchasers, including Plaintiffs, to buy such products from Defendant's stores in California, which they otherwise would not have purchased.

219.   Defendant's acts and practices as described herein have deceived Plaintiffs and were highly likely to deceive reasonable members of the consuming public.  In deciding to purchase merchandise at Ross, each Plaintiff relied on Defendant's misleading and deceptive representations regarding its "Compare At" prices.  The comparative "Compare At" prices placed by Defendant on the price tags of merchandise at Ross stores in California played a substantial role in each Plaintiff's decisions to purchase those products, and Plaintiffs would not have purchased those items in the absence of Defendant's misrepresentations.  Accordingly, Plaintiffs have suffered monetary loss as a direct result of Defendant's unlawful practices, and did not receive the value they thought they were getting, as described herein.

220.   As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and all other Class Members.  Specifically, Defendant has been unjustly enriched by obtaining revenues

SECOND AMENDED CLASS ACTION COMPLAINT

1    and profits that it would not otherwise have obtained absent its false,

2    misleading and/or deceptive conduct.

3    221.   Through its fraudulent acts and practices, Defendant has improperly

4    obtained money from Plaintiffs and all other Class Members.  As such,

5    Plaintiffs request that this Court cause Defendant to restore this money to

6    Plaintiffs and all Class Members, and to enjoin Defendant from continuing

7    to violate the UCL as discussed herein and/or from violating the UCL in the

8    future.  Otherwise, Plaintiffs, the Class, and members of the general public

9    may be irreparably harmed and/or denied an effective and complete remedy

10    if such an order is not granted.

11                          **<u>THIRD CAUSE OF ACTION</u>**

12                       **UNLAWFUL BUSINESS PRACTICES**

13                 (California Business & Professions Code §17200 *et seq.*)

14    <u>(By Plaintiffs on behalf of themselves and all others similarly situated, and the</u>

15                          <u>general public, against Defendant)</u>

16    222.   Plaintiffs re-allege and incorporate by reference, as though fully set forth

17    herein, all previous paragraphs of this Complaint.

18    223.   A business act or practice is "unlawful" under the UCL if it violates any

19    other law or regulation.

20    224.   The FTCA prohibits "unfair or deceptive acts or practices in or affecting

21    commerce" (15 U.S.C. §45(a)(1)) and specifically prohibits false

22    advertisements.  15 U.S.C. §52(a)).

23    225.   Cal. Civ. Code §1770(a)(5), prohibits a business from "Representing that

24    goods or services have . . . characteristics . . . [or] . . . benefits . . . which

25    they do not have."

26    226.   Cal. Civ. Code §1770(a)(7), prohibits a business from "Representing that

27    goods or services are of a particular standard, quality, or grade . . . if they are

28    of another."

SECOND AMENDED CLASS ACTION COMPLAINT

227.  Cal. Civ. Code §1770(a)(13), prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  By representing that a particular item previously sold in the marketplace for an advertised "Compare At" reference price, when in fact the "Compare At" reference price did not refer to the price that the actual identical item sold for but rather what a "similar" product sold for, Defendant has used misleading and inflated reference prices.  The comparison or juxtaposition of the price of a "similar," non-identical item as a "Compare At" reference price compared to Defendant's selling price amounts to a misleading statement of fact concerning the existence of or amount of a price reduction.  Advertising higher "Compare At" prices in comparison to its lower selling prices is the equivalent of advertising "price reductions."  Using "Compare At" reference prices that are not actual prices at which identical items sold for, but are references to prices of "similar," non-identical items, is the equivalent of making misleading statements of fact concerning the existence of and/or amounts of price reductions.

228.  Defendant's use of and reference to materially misleading, deceptive, and/or false "Compare At" prices on the price tags of merchandise sold to consumers in California Ross stores violated and continues to violate the FTCA, 15 U.S.C. §45(a)(1) and 15 U.S.C. §52(a), as well as FTC Pricing Guides.  It also violated and continues to violate Cal. Bus. & Prof. Code §§17200 and 17500, and Cal. Civ. Code §§1770(a)(5), (7) and/or (13), by, among other things, advertising false comparative prices as described herein.

229.  As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and other Class Members.  Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that

SECOND AMENDED CLASS ACTION COMPLAINT

1   it would not otherwise have obtained absent its false, misleading and

2   deceptive conduct.

3   230.   Through its unfair acts and practices, Defendant has improperly obtained

4   money from Plaintiffs and all other Class Members.  As such, Plaintiffs

5   request that this Court cause Defendant to restore this money to Plaintiffs

6   and all Class Members, and to enjoin Defendant from continuing to violate

7   the UCL, and/or from violating the UCL in the future.  Otherwise, Plaintiffs,

8   the Class, and members of the general public may be irreparably harmed

9   and/or denied an effective and complete remedy if such an order is not

10   granted.

**FOURTH CAUSE OF ACTION**

**FALSE ADVERTISING**

(California Business & Professions Code §17500 *et seq*.)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the
general public, against Defendant)

16   231.   Plaintiffs re-allege and incorporate by reference, as though fully set forth

17   herein, all previous paragraphs of this Complaint.

18   232.   The FAL prohibits unfair, deceptive, untrue, or misleading advertising,

19   including, but not limited to, false statements as to worth and/or value.

20   233.   The FAL makes it unlawful for a business to disseminate any statement

21   which is untrue or misleading, and which is known, or which by the exercise

22   of reasonable care should be known, to be untrue or misleading.

23   234.   Defendant's practice of disseminating allegedly comparative "Compare At"

24   prices associated with its merchandise, which were materially greater than

25   the true prevailing prices of identical products, and/or not true or verified

26   comparative prices for identical products, as alleged more fully herein, was

27   an unfair, deceptive and/or misleading advertising practice because it gave

28   the false impression that the products sold by Defendant regularly sold in the

- 63 -

retail marketplace at substantially higher prices than they actually did (and were, therefore, worth more than they actually were, and had greater value than they actually did).

235.  Defendant's practice of failing to adequately disclose to consumers what the phrase "Compare At" means on the price tags of the merchandise in California Ross stores, was misleading to Plaintiffs and all other Class Members.  Defendant knew, or by the exercise of reasonable care should have known, that reasonable consumers, such as Plaintiffs, would not interpret the phrase "Compare At" the way Defendant interprets it.

236.  On each day throughout the Class Period, Defendant, with the intent to induce members of the public to purchase products offered at its California stores, made or caused to be made each of the untrue and/or misleading statements, claims, and/or representations described herein.

237.  On each day throughout the Class Period, Defendant, with the intent to induce members of the public to purchase products offered at its California stores, made or caused to be made untrue and/or misleading claims to consumers throughout California including, but not limited to, the following claims with respect to products offered for sale at California Ross stores:

   a.  That when other merchants offered an identical product for sale, Defendant had previously ascertained and/or determined the price at which substantial sales of that product had been made by principal retail outlets in California.

   b.  That the "Compare At" price for a product was the price at which other principal retail outlets in California regularly sold that identical product.

   c.  That Defendant's sale price for a product was lower than the price at which other principal retail outlets in California regularly sold that identical product.

SECOND AMENDED CLASS ACTION COMPLAINT

d.  That Defendant's sale price for a product was a discount from the price at which other principal retail outlets in California regularly sold that identical product.

238.  Defendant knew, or by the exercise of reasonable care should have known, that these claims were untrue, deceptive, and/or misleading.

239.  In addition to the allegations made above, each of Defendant's statements, claims, and/or representations described herein were untrue, deceptive, and/or misleading because, among other things:

a.  Defendant set "Compare At" prices without ascertaining and/or determining the prices at which other principal retail outlets in California regularly sold the identical products;

b.  Defendant's "Compare At" prices were fictitious, having been based on something other than the prices at which other principal retail outlets in California regularly sold the identical products;

c.  Defendant's "Compare At" prices were calculated by using the highest sales price at which another merchant was offering, or had offered, the identical product for sale, instead of the price at which other principal retail outlets in California regularly sold the identical products;

d.  A reasonable consumer would not interpret the phrase "Compare At" the way Defendant interprets it; and/or

e.  Defendant's "Compare At" prices were higher than the lowest price at which a consumer would commonly be able to purchase the identical product at a retail establishment in the consumer's area, and:

i.  Defendant knew that the "Compare At" price was higher than the lowest price at which a consumer would commonly be able to purchase the identical product at other retail establishments in the consumer's area; or

- 65 -

SECOND AMENDED CLASS ACTION COMPLAINT

ii. Defendant did not know whether other merchants regularly sold the product at the "Compare At" price.

240. When Defendant made or caused to be made the untrue and/or misleading claims, statements, and/or misrepresentations described herein to consumers in California, including Plaintiffs, Defendant failed to adequately disclose the facts pleaded herein.

241. Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs request that this Court cause Defendant to restore this money to Plaintiffs and all other Class Members, and to enjoin Defendant from continuing to violate the FAL, and/or from violating the FAL in the future.  Otherwise, Plaintiffs, the Class, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT

(California Civil Code §1750 *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against Defendant)

242. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

243. On each day throughout the Class Period, Defendant, with the intent to induce members of the public to purchase products offered at its California stores, made or caused to be made false and/or misleading claims to consumers throughout California including, but not limited to, the following claims with respect to products offered for sale at its California stores:

SECOND AMENDED CLASS ACTION COMPLAINT

a. The existence and/or amounts of price reductions represented by the difference between Defendant's "Compare At" reference prices and its sale prices;

b. The existence and/or amount of the savings to a consumer purchasing a particular product from Defendant instead of another merchant represented by the difference between Defendant's "Compare At" reference prices and its sale prices;

c. That items with "Compare At" reference prices which were references to alleged selling prices of "similar" items had characteristics that they did not have (i.e., that they were equal in value to non-identical items); and,

d. That items with "Compare At" reference prices which were references to alleged selling prices of "similar" items were of a particular standard, quality or grade which they were not (i.e., that they were equal in value or quality to non-identical items)

244. Plaintiffs and each Class Member are "consumers" within the meaning of California Civil Code §1761(d).

245. Defendant's sale of merchandise at its Ross stores in California to Plaintiffs and other Class Members are "transactions" within the meaning of California Civil Code §1761(e).

246. The merchandise purchased by Plaintiffs and other Class Members at Defendant's stores in California throughout the Class Period are "goods" within the meaning of California Civil Code §1761(a).

247. Defendant has engaged in unfair methods of competition, and/or unfair and/or deceptive acts or practices against Plaintiffs and other Class Members, in violation of the CLRA, by making false and/or misleading statements of fact concerning the reasons for, the existence of, and/or the amount(s) of price reductions for products sold to Plaintiffs and other Class

Members at California Ross stores throughout the Class Period.  Defendant provided false, deceptive, and/or misleading "Compare At" prices on the price tags of the merchandise sold in its California stores, and compared those false and/or misleading comparative prices to the prices at which Defendant sold its merchandise, to give the illusion to consumers that they were receiving a discount, or achieving a saving or bargain when compared to the purchase of those same items at other retailers in the consumers' area. The promised discounts, savings, and/or bargains, however, were deceptive, misleading, and/or false, as alleged more fully herein.

248.   The price reductions alleged by Defendant to be the difference between the "Compare At" prices and Defendant's sale prices did not exist, and were false, deceptive, and/or misleading, as alleged more fully herein.

249.   Defendant's acts and/or practices described herein are in violation of California Civil Code §§1770(a)(5), (7) and/or (13).

250.   As a result of Defendant's acts and/or practices described herein, Plaintiffs and other Class Members have been damaged in that Defendant's unlawful, false and/or misleading acts and/or practices described herein played a substantial and material role in Plaintiffs' and other Class Members' decisions to purchase products at Defendant's Ross stores in California. Absent these acts and/or practices, Plaintiffs and other Class Members would not have purchased the products that they did from Defendant.

251.   Pursuant to California Civil Code §1780(a)(2), Plaintiffs, on behalf of themselves and all other Class Members, request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and/or practices alleged herein.  Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, California consumers will continue to be damaged by Defendant's

SECOND AMENDED CLASS ACTION COMPLAINT

acts and/or practices in the same way as those acts and/or practices have damaged Plaintiffs and other Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all Class Members, pray for judgment against Defendant as follows:

**CLASS CERTIFICATION**

1.      That the Court certify the Class herein to proceed as a class action pursuant to Fed. R. Civ. Proc. 23(b)(1), 23(b)(2) and/or 23(b)(3), adjudge Plaintiffs to be adequate representatives of the Class, and appoint Plaintiffs' counsel as counsel for the Class.

**VIOLATION OF BUSINESS & PROFESSIONS CODE §§17200 *et seq*., and 17500 *et seq*.:**

2.      A judgment awarding Plaintiffs and all Class Members restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits, or some portion of profits, and/or unjust enrichment that Defendant obtained from Plaintiffs and the Class as a result of the unlawful, unfair and/or fraudulent business practices described herein.

3.      An order enjoining Defendant from continuing to violate the UCL and/or FAL as described herein, and/or an order enjoining Defendant from violating the UCL and/or FAL in the future.

4.      A judgment awarding Plaintiffs their costs of suit, including reasonable attorneys' fees pursuant to California Code of Civil Procedure §1021.5 and as otherwise permitted by statute or law, and pre- and post-judgment interest; and,

5.      For such other and further relief as the Court may deem proper.

/ / /

/ / /

**VIOLATION OF CIVIL CODE §1770**:

6.   An order enjoining Defendant from continuing to violate the CLRA as described herein, and/or an order enjoining Defendant from violating the CLRA in the future;

7.   A judgment awarding Plaintiffs their costs of suit, including reasonable attorneys' fees pursuant to California Civil Code §1780(d) and as otherwise permitted by statute, and pre- and post-judgment interest; and,

8.   For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all claims so triable.


Dated: March 28, 2016            By: LAW OFFICE OF CHRISTOPHER J. MOROSOFF

                                       */s/ Christopher J. Morosoff*
                                       CHRISTOPHER J. MOROSOFF, Attorneys for Plaintiffs

SECOND AMENDED CLASS ACTION COMPLAINT