1   DAVID F. MCDOWELL (CA SBN 125806)
    DMcDowell@mofo.com
2   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
3   Los Angeles, California  90017-3543
    Telephone: 213.892.5200
4   Facsimile: 213.892.5454

5   KEVIN M. COLES (CA SBN 271518)
    KColes@mofo.com
6   MORRISON & FOERSTER LLP
    425 Market Street
7   San Francisco, California  94105-2482
    Telephone: 415.268.7000
8   Facsimile: 415.268.7522

9   Attorneys for Defendant
    ROSS STORES, INC.
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  JOSE JACOBO, et al., | Case No.    2:15−cv−04701−MWF (AGRx) |
| 15              Plaintiff, | **NOTICE OF MOTION AND** |
| 16       v. | **MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND** |
| 17  ROSS STORES, INC., a Delaware Corporation, and DOES 1 through 100, | **AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND** |
| 18  inclusive, | **AMENDED COMPLAINT** |
| 19              Defendant. | Date:    June 13, 2016 |
| 20 | Time:    10:00 a.m. |
| 21 | Dept.:   1600 |
| 22 | Judge:  Hon. Michael W. Fitzgerald |

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on June 13, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1600 of this Court, located at 312 North Spring Street, Los Angeles, California, Defendant Ross Stores, Inc. will and hereby does move this Court for an order dismissing the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b) for failure to state a claim upon which relief can be granted, and failure to meet pleading standards.

The motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the pleadings, files, and record in this action, and such additional evidence and arguments as may be presented at the hearing of this motion.

Dated:     April 14, 2016                    DAVID F. MCDOWELL
                                             MORRISON & FOERSTER LLP


                                             By: */s/ David F. McDowell*
                                                 David F. McDowell

                                             Attorneys for Defendant
                                             ROSS STORES, INC.

i

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND MOTION TO DISMISS ...........................................i

TABLE OF AUTHORIITES ................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

I.     INTRODUCTION ..................................................................1

II.    PLAINTIFFS' ALLEGATIONS ...............................................2

       A.    The First Amended Comlaint ................................................2

       B.    The Second Amended Complaint ........................................4

           1.    The FTC Pricing Guides and Other Guidelines ...................8

III.    LEGAL STANDARD ..........................................................8

IV.    ARGUMENT .....................................................................11

       A.    Plaintiffs Fail to State a Claim Under Rule 12(b)(6)......................11

           1.    The SAC Again Fails to Allege Deception with the Requisite Particularity Under Federal Rule of Civil Procedure 9(b) ....................................................12

           2.    Plaintiffs' Omission Theory Fails Because Plaintiffs Fail to Identify any Cognizable Legal Duty to Disclose ...............16

           3.    Dr. Compeau's 2004 Study Is Irrelevant...............................18

       B.    The SAC Fails to Satisfy Additional Pleading Requirements Under UCL, FAL, and CLRA..................................................19

           1.    The SAC Cannot Support an "Unfairness" Claim .................19

           2.    The SAC Cannot Support as "Unlawful" Claim ....................19

           3.    The SAC Fails to Support a False Advertising Claim.............20

           4.    The SAC Fails to State a Claim Under California Civil Code § 1770(a) ...........................................................20

V.    CONCLUSION ...................................................................21

# TABLE OF AUTHORIITES

**Page(s)**

**CASES**

*Ackerman v. Nw. Mut. Life Ins. Co.*,
172 F.3d 467 (7th Cir. 1999) ...................................................... 10, 15

*Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n*,
171 Cal. App. 4th 1356 (2009) .......................................................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 8, 9, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................... 9, 19

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) .......................................................... 16

*Branca v. Nordstrom, Inc.*,
No. 14cv2062-MMA (JMA),
2015 WL 1841231 (S.D. Cal. Mar. 20, 2015) ...................................... 12

*Buller v. Sutter Health*,
160 Cal. App. 4th 981 (2008) ............................................................ 16

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
765 F. Supp. 1467 (C.D. Cal. 1991) .................................................... 10

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ............................................................ 16

*Davidson v. Kimberly-Clark Corp.*,
76 F. Supp. 3d 964 ....................................................................... 9, 16

*Fraker v. Bayer Corp.*,
No. CVF 08-1564 AWI, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ............. 10

*Herrington v. Johnson & Johnson Consumer Cos.*,
No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .................... 9

*Horosny v. Burlington Coat Factory of Cal., LLC*,
No. CV15-05005 SJO, slip op. (C.D. Cal. Oct. 26, 2015) ............................ 17

iii

*In re Worlds of Wonder Sec. Litig.*,
   694 F. Supp. 1427 (N.D. Cal. 1988) .................................................................. 10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................... 9, 10

*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) ........................................................... 20

*Lazar v. Hertz Corp.*,
   69 Cal. App. 4th 1494 (1999) .......................................................................... 19

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ............................................................................ 16

*Lingsch v. Savage*,
   213 Cal. App. 2d 729 (1963) ........................................................................... 17

*Mahfood v. QVC, Inc.*,
   No. SACV 06-0659 AG (ANx),
   2007 WL 9363986  (C.D. Cal. Feb. 7, 2007) ................................................... 13

*McCrary v. Elations Co.*,
   No. EDCV 13-0242 JGB OPX,
   2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) .................................................... 9

*Mehta v. Wells Fargo Bank, N.A.*,
   737 F. Supp. 2d 1185 (S.D. Cal. 2010) ............................................................ 20

*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ............................................................. 20

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,
   107 Cal. App. 4th 1336 (2003) ................................................................... 10, 20

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ............................................................................. 9

*People v. Duz-Mor Diagnostic Lab., Inc.*,
   68 Cal. App. 4th 654 (1998) ............................................................................ 19

*Route v. Mead Johnson Nutrition Co.*,
   No. CV 12-7350-GW JEMX, 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ..... 11

*Rubenstein v. Neiman Marcus Grp. LLC*,
    No. CV 14-07155 SJO, slip op. (C.D. Cal. May 12, 2015) ................................ 21

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) .............................................................................. 17

*Scripps Clinic v. Super. Ct.*,
    108 Cal. App. 4th 917 (2003) ............................................................................ 19

*Sperling v. DSW Inc.*,
    No. EDCV 15-1366-JGB, slip op. (C.D. Cal. Nov. 19, 2015) ............................ 12

*Stanley v. Bayer Healthcare LLC*,
    No. 11CV862 BLM, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ............. 10, 11

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................ 9, 15

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .............................................................................. 15

**STATUTES & REGULATIONS**

Cal. Bus. & Prof. Code
    § 17200 *et seq.* .......................................................................................... 11, 19
    § 17204 ................................................................................................................ 19
    § 17500 ................................................................................................................ 20
    § 17501 .................................................................................................................. 4
    § 17508 ................................................................................................................ 10

Cal. Civ. Code
    § 1770(a) .............................................................................................................. 20
    § 1770(a)(5) ........................................................................................................... 5
    § 1770(a)(7) ........................................................................................................... 5
    § 1770(a)(13) .......................................................................................... 4, 20, 21

16 C.F.R.
    § 233 .................................................................................................................... 21
    § 233.2(c) ............................................................................................................. 18
    § 233.3(d) ............................................................................................................... 8
    § 233.3(g) ............................................................................................................... 8

**RULES**

Fed. R. Civ. P.

    Rule 8(a) ................................................................................................ 1
    Rule 8(a)(2) ........................................................................................... 9
    Rule 9(b) ....................................................................................... *passim*
    Rule 12(b)(6) ............................................................................... 1, 8, 11

**OTHER AUTHORITIES**

*FTC .com Disclosures – How to Make Effective Disclosures in Digital*
    *Advertising* (Mar. 2013), https://www.ftc.gov/sites
    /default/files/attachments/press-releases/ftc-staff-revises-online-
    advertising-disclosure-guidelines/130312dotcomdisclosures.pdf .................... 18

*The Journal of Consumer Affairs*, Vol. 38, No. 1, 2004 ......................................... 19

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.   INTRODUCTION**

3       Plaintiffs have now tried three times to plead actionable claims based on their

4   constantly evolving theory that Ross Stores, Inc. ("Ross") somehow used

5   "deceptive" "Compare At" prices to "lure[]" them and others into its stores and

6   "trick" them into believing they were receiving good deals.  (SAC ¶¶ 7, 13.)  Three

7   times now, Plaintiffs have failed to do so.  Plaintiffs' claims must once again be

8   dismissed under Fed. R. Civ. P. 12(b)(6), 8(a) and 9(b) for failure to state a claim

9   upon which relief may be granted with the requisite particularity.

10      The Court dismissed Plaintiffs' First Amended Complaint (ECF No. 24) (the

11  FAC) for failure to plead deception with particularity, holding it insufficient under

12  Federal Rule of Civil Procedure 9(b) to simply assert facts on "information and

13  belief."  (*See* Order Granting Defendant's Motion to Dismiss at 6 (ECF No. 45) (the

14  "Order").)  Here, Plaintiffs' Second Amended Complaint (ECF No. 49) (the SAC)

15  is largely identical to the FAC and suffers from the same fatal defects.  The SAC re-

16  alleges, often word for word, Plaintiffs' unsubstantiated and conclusory beliefs that

17  Ross's "Compare At" prices were somehow "fictitious," "untrue," "inflated" or

18  "unverified."  Like the FAC, the SAC simply fails to allege any deception with the

19  requisite particularity.

20      Plaintiffs' efforts to cure the FAC's deficiencies also fall short.  The crux of

21  Plaintiffs' SAC is the theory that Ross's "Compare At" prices are deceptive

22  because they often (though not always) refer to prices for "similar" rather than

23  "identical" merchandise.  Plaintiffs maintain that a reasonable consumer would not

24  expect "Compare At" prices to refer to anything but identical products.

25      The SAC includes new, vague references to purported "pre-lawsuit

26  investigations" into whether other retailers sold any of four items allegedly

27  purchased by Plaintiffs.  By implying that no other retailers sold identical products,

28  Plaintiffs would have the Court infer that Ross's advertised "Compare At" prices

must have referred to "similar, non-identical" products and were therefore deceptive. Yet Plaintiffs' vague allegations fall far short of rehabilitating Plaintiffs' claims. The SAC fails to allege any crucial information about those so-called investigations, such as who conducted them, whether they were conducted before or near the time of Plaintiffs' alleged purchases, how they were conducted, which and how many stores or websites were (or were not) investigated, and what geographic area was covered. Without these particularized allegations, it is impossible reasonably to infer that the products Plaintiffs allegedly purchased were sold exclusively at Ross. Therefore, the SAC, like the FAC, remains utterly devoid of any particularized facts showing that Plaintiffs were exposed to any of the kinds of "deceptive" "Compare At" pricing that Plaintiffs lament.

Finally, the SAC now repeats—no fewer than 20 times—that Plaintiffs "believe that further investigation and discovery will reveal" the facts necessary to support their claims. In other words, Plaintiffs virtually admit their failure to conduct a reasonable pre-complaint investigation into their claims and continue to make crucial allegations on nothing more than information and belief. For all these reasons, Plaintiffs' SAC should be dismissed with prejudice.

## II.   PLAINTIFFS' ALLEGATIONS

### A.   The First Amended Comlaint

Plaintiffs' FAC contended that Ross deceives customers by including "unverified" or "made-up" "Compare At" reference prices on items sold in stores located throughout California. Plaintiffs alleged that these comparison prices are "fabricated" in order to "trick" Ross's customers into believing that they are getting a good deal. This claim, based largely on unspecified and undisclosed "information and belief," was reiterated throughout the FAC, but Plaintiffs alleged no supporting facts. Instead, the FAC was riddled with conclusory and boilerplate allegations such as the following:

- "Throughout the Class Period Defendant routinely and systematically

2

made untrue, deceptive, and misleading comparative advertising claims about the prices of its products, as described herein."  (FAC ¶ 131.)

- "Each Class Members' claims, including those of Plaintiffs, allege that Defendant's price tags convey a deceptive, misleading, and/or untrue representation that the price at which Defendant offered a product was lower compared to a fictitious, deceptive, or misleading "Compare At" price."  (FAC ¶ 173.)

The FAC alleged that both Plaintiffs purchased products that were "falsely, deceptively, and/or misleadingly labeled with false, deceptive, and/or misleading, comparative prices" from various Ross Stores in California.  (FAC ¶ 8.)  Although the Plaintiffs allegedly made purchases "on over 10 occasions" since June 20, 2011 (FAC ¶¶ 8, 159), the FAC only identified four specific purchases.  Plaintiff Jacobo allegedly purchased a Levi's belt for $10.99 with a "Compare At" reference price of $25.00, and a hat for $7.99 with a "Compare At" reference price of $15.00.  (FAC ¶¶ 141, 142.)  Plaintiff Metoyer allegedly purchased "women's Patricia Wedge Pump shoes for $17.99," which "to the best of Metoyer's recollection" was advertised with a "Compare At" reference price of $65.00, and a "pair of black cap toe slippers" with a "'Ross Price' of $29.99" and a "'Compare At' reference price which to the best of Metoyer's recollection was over $60.00."  (FAC ¶¶ 150, 151.)

On February 23, 2016, the Court dismissed the FAC with leave to amend. (ECF No. 45.)  The Court held that "Plaintiffs fail[ed] to plead with particularity that Defendant's price advertisements were false or misleading as required under Federal Rule of Civil Procedure 9(b)."  The Court stated that

> It is insufficient under Rule 9(b) to simply assert on "information and belief" that "the prevailing retail prices for the items [Plaintiffs purchased] were materially lower than the 'Compare At' prices advertised by Defendant." (FAC ¶ 148).  Plaintiffs must conduct a reasonable

3

1         investigation into their claims and plead at least some

2         facts to bolster their "belief" that the "Compare At" prices

3         were inaccurate."

4  (Order at 6.)

5       The Court also held that Plaintiffs' claims under California Business and

6  Professions Code section 17501 and California Civil Code section 1770(a)(13)

7  were "deficient because no allegations characterize Defendant's prices as 'former

8  prices' or 'price reductions.'"

9      **B.**    **The Second Amended Complaint**

10      Plaintiffs' SAC is largely a rehash of the FAC.  Plaintiffs again allege that

11  Ross deceives customers by including "unverified" (SAC ¶¶ 44, 133) or "fictitious"

12  (SAC ¶¶ 133, 191, 239) "Compare At" reference prices.  Again, Plaintiffs allege

13  that Ross's comparison prices are "fabricated" (SAC ¶ 209) in order to "trick"

14  (SAC ¶ 7) its customers into believing that they are getting a good deal.  Again,

15  Plaintiffs include conclusory and boilerplate allegations in the SAC that are

16  identical to those found in the FAC.  (*See*, *e.g.*, SAC ¶¶ 7, 8, 125, 127, 191; *cf.* FAC

17  ¶¶ 7, 8, 129, 131, 173.)  The SAC also alleges once again that Ross's "Compare At"

18  prices "could be the selling price of the same item at other full-price department or

19  specialty stores" (SAC ¶ 60; *cf.* FAC ¶ 61), thus potentially meeting Plaintiffs'

20  alleged expectations.

21      However, there are some differences between the SAC and FAC.  First,

22  language appearing in several paragraphs of the FAC that Plaintiffs "are informed

23  and believe, and on that basis allege . . . " (*see*, *e.g.*, FAC ¶¶ 36, 42, 45, 63, 134,

24  148, 149, 157, 158) is replaced in the SAC with language that "Plaintiffs believe

25  that further investigation and discovery will reveal that . . . ."  (*Cf.* SAC ¶¶ 35, 41,

26  44, 62, 130, 156, 157, 175, 176.)

27      Second, the SAC alleges that, in addition to the four product purchases

28  alleged in the FAC, Plaintiff Jacobo also purchased "at least 2 pieces of metal wall

art in the shapes of a lizard and a butterfly from Ross . . . ." (SAC ¶ 143.) The SAC also includes 13 photographs of receipts from Ross stores and alleges that "[p]ictures of some of the receipts for some of the items that [Plaintiff] Metoyer purchased from Ross stores in California during the Class Period are set forth here . . . ." (SAC ¶ 165.) No additional details are alleged regarding any of the photographs, the receipts found therein, or any of the underlying transactions.

Third, the SAC appears to accord more weight to Plaintiffs' evolving theory that Ross's "Compare At" prices are deceptive and misleading because they sometimes reference "similar, non-identical" products rather than identical products. (*See* SAC ¶ 8.) To that end, the SAC includes revised recitations of the elements for four of Plaintiffs' five original causes of action. (*See* SAC ¶ 209 (alleging Ross "based the purported savings on a comparison to 'similar,' non-identical products"), ¶ 224 (summarizing Cal. Civ. Code § 1770(a)(5) and (7) and setting forth Plaintiffs' theory); ¶ 234 (referring to "identical" products); ¶ 243 (c) and (d) (setting forth Plaintiffs' theory).)

Fourth, and perhaps most significantly for purposes of this motion, the SAC includes, for the first time, vague allegations of several "pre-lawsuit investigation[s] of other brick and mortar stores in Southern California, as well as online, [that were] conducted prior to filing this lawsuit in an effort to find other retailers selling" four of the items allegedly purchased by Plaintiffs. (*See* SAC ¶¶ 139-142 (Free Authority Outdoors camouflage hat), 144-146 (two pieces of metal wall art), 159-162 (Patricia Wedge Pump shoes).) Plaintiffs allege that these investigations were "unable to find" or "did not reveal" other retailers selling the identical merchandise allegedly purchased by Plaintiffs. (SAC ¶¶ 139, 144.)[1] Plaintiffs also

---

[1] The SAC also alleges that Paintiff Jacobo found a similar camouflage hat selling at Sports Authority at Ross' alleged "Compare At" price (SAC ¶ 140), and that the so-called investigation of prices for Patricia Wedge Pump shoes "found only one brick and mortar retailer, Sears, selling similar Patricia Wedge Pump shoes" (SAC ¶ 159), while Amazon.com was also selling "shoes similar to those

allege that these investigations "led to the conclusion" that the camouflage hat, pieces of metal wall art, and Patricia Wedge Pump shoes were "not offered for sale at any other stores in [Plaintiffs'] area[s]" (SAC ¶¶ 141, 145, 161). Plaintiffs allege they now believe that the advertised "Compare At" pricing for their alleged purchases must have referred to "'similar,' non-identical product[s]" (SAC ¶¶ 142, 146, 162) and that "further investigation and discovery will reveal that the 'Compare At' reference prices advertised by Defendant . . . were references to alleged selling prices of 'similar,' non-identical products." (SAC ¶¶ 151, 164.)

Importantly, the SAC does not allege any facts regarding who conducted any of these so-called investigations, how they were conducted, when they were conducted (or whether they were even conducted around the same time Ross actually sold the products at issue), which "brick and mortar stores" or "online" websites were or were not investigated, why or how any such stores or websites were chosen, or what the geographic boundaries might have been.

Also, somewhat contradictorily, Plaintiffs allege they believe that the prices at which other merchants were selling products identical to those they purchased were materially lower than the "Compare At" prices advertised by Defendant." (SAC ¶¶ 119, 156, 176.)

Finally, in lieu of alleging particular facts based on a reasonable investigation of Plaintiffs' claims, the SAC repeats no fewer than 20 times that "Plaintiffs believe that further investigation and discovery will reveal" facts material to their claims. (*See* SAC ¶¶ 30, 35, 41, 42, 43, 44, 62, 119, 130, 151, 152, 156, 157, 164, 167, 171, 175, 176.) For but a few examples, Plaintiffs allegedly believe that all the following, though unsupported by any specific allegations in the SAC, may one day

---

[Plaintiff Metoyer] purchased from Ross." (SAC ¶ 160.) The SAC alleges that the selling prices for those "similar" shoes were significantly less than what Metoyer, "to the best of [her] recollection" believes was the Ross "Compare At" price for the shoes she purchased. (SAC ¶ 158.)

be revealed:

- "Defendant does not have sufficient evidence to substantiate the validity of its 'Compare At' reference prices." (SAC ¶ 30.)
- "Defendant does not have such evidence and has not in fact verified that its 'Compare At' reference prices do not 'appreciably exceed the price at which substantial sales' of its products have been made in California." (SAC ¶ 35.)
- "Defendant was not reasonably certain that higher prices it advertised did not appreciably exceed the prices at which *substantial sales* of the items were being made in California." (SAC ¶ 41.)
- "'Compare At' reference prices advertised by Defendant were significantly in excess of the highest prices at which *substantial sales* of those products were made in California." (SAC ¶ 42.)
- "Defendant systematically and routinely used unverified comparative prices as comparative reference prices for its products which were not, in fact, prices at which those identical products sold, or are selling, in any substantial volume at the 'principal retail outlets' in California." (SAC ¶ 44.)
- "Defendant's 'Compare At' prices are also not prices at which substantial sales of identical product were made at principal retail outlets in California." (SAC ¶ 119.)
- "[E]ven if and when a 'Compare At' price for a product may have represented an actual recent documented selling price of the same product, Defendant chose the highest price at which the product was selling in the marketplace, and presented that price to consumers as the "Compare At" price." (SAC ¶ 130.)
- "'Compare At' reference prices on the products purchased by [Plaintiffs] were not true, bona fide reference prices as discussed herein . . . ." (SAC

¶¶ 152, 171.)

### 1.    The FTC Pricing Guides and Other Guidelines

Although they again cite the FTC Guides Against Deceptive Pricing ("Pricing Guides") in support of their claim that Ross should verify the "prevailing price" in each area in which it does business (SAC ¶¶ 29-40; *cf.* FAC ¶¶ 30-41), Plaintiffs again selectively omit that the Pricing Guides specifically note that retailers who do business on a "national [] scale cannot be required to police or investigate in detail the prevailing prices of his articles throughout so large a trade area." 16 C.F.R. § 233.3(g).  For these manufacturers, "[i]f [the retailer] advertises or disseminates a list or preticketed price in good faith (i.e., as an honest estimate of the actual retail price) which does not appreciably exceed the highest price at which substantial sales are made in his [national] trade area, he will not be chargeable with having engaged in a deceptive practice."  (*Id.*)  The FTC has defined "substantial" to mean "not isolated or insignificant."  16 C.F.R. § 233.3(d).  It does ***not*** require any specific sales volume.  Nowhere have Plaintiffs pled actual facts showing that Ross's "Compare At" prices appreciably exceed the highest price at which substantial sales are made of comparable products.

Plaintiffs also again rely on the FTC's ".com Disclosures," yet Plaintiffs still fail to allege ever visiting Ross's website, and the ".com Disclosures" simply do not apply to the kind of in-store price tags that Plaintiffs challenge here.  Plaintiffs' reliance on FTC's 1983 Policy on Deception and Better Business Bureau's Code of Advertising similarly fails to rehabilitate their claims.  (*See*, *e.g.*, SAC ¶¶ 64, 70-71; cf. FAC ¶¶ 66, 74-75.)

## III.   LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Furthermore, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Rule 8(a)(2) requires a claim for relief to contain a short and plain statement of the claim that shows that the plaintiff is entitled to relief. Where a plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face," the court should dismiss. *Twombly*, 550 U.S. 544 at 570; *Iqbal*, 556 U.S. at 678.

A plaintiff alleging fraudulent conduct must further satisfy Rule 9(b), which requires the plaintiff to plead the circumstances constituting fraud with particularly. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); s*ee also Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 WL 3448531, at *14 (N.D. Cal. Sept. 1, 2010) (dismissing UCL and CLRA claims because plaintiffs did not plead with particularity). Rule 9(b) requires that a plaintiff's pleading include "the time, place and specific content of the false representations…." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). "It is not enough for her to simply claim that it is false—she must allege facts showing why it is false." *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 974 (N.D. Cal. 2014); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."); *McCrary v. Elations Co.*, No. EDCV 13-0242 JGB OPX, 2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) (Bernal, J.) ("In order to sufficiently plead a claim for false and misleading advertising under the CLRA, FAL, and UCL, Plaintiff must plausibly allege that the claims in Defendant's marketing or advertising are false.") (citing *Nat'l Council Against Health Fraud,*

9

*Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1342 (2003)).  In addition, "[i]t is well settled that fraud '[a]llegations based on information and belief' do not satisfy the particularity requirement of Rule 9(b) unless the complaint sets forth the facts on which the belief is founded.'"  *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991) (citing *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1432-33 (N.D. Cal. 1988)).

Requiring a plaintiff to provide at least this much is intended to require him or her "to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."  *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *see also Kearns*, 567 F.3d at 1125 (the additional pleading requirement serves to "deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'" and "to 'prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis'").

Under California law, if a consumer suspects an advertisement about a product is false or misleading, he or she cannot merely bring suit, set forth the advertisement, and allege that the company's statements or claims about the product in its advertising lack substantiation.  *See Stanley v. Bayer Healthcare LLC*, No. 11CV862 BLM, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012).  Instead, the consumer must allege actual facts explaining how and why the claims about the product were false or misleading.  *Fraker v. Bayer Corp.*, No. CVF 08-1564 AWI, 2009 WL 5865687, at *8-9 (E.D. Cal. Oct. 6, 2009) (dismissing false advertising claim where plaintiff alleged only that defendant had "no reasonable basis, consisting of competent and reliable scientific evidence to substantiate" its health-benefit claim related to "WeightSmart" multivitamin).  Indeed, California Business & Professions Code section 17508 makes clear:  there is no private right of action for lack of substantiation.  This rule "prevent[s] undue harassment of advertisers."

Stanley, 2012 WL 1132920, at *3; *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW JEMX, 2013 WL 658251, at *4 (C.D. Cal. Feb. 21, 2013).

## IV.   ARGUMENT

### A.   Plaintiffs Fail to State a Claim Under Rule 12(b)(6).

Plaintiffs' SAC, like the FAC, purports to state five causes of action.  The first three are styled as claims under California's Unfair Competition Law (UCL), Business & Professions Code section 17200 *et seq.*  Plaintiffs allege that Ross employed: 1) "Unfair," business practices by "representing false, deceptive, and/or misleading comparative prices and corresponding price discounts and/or savings for merchandise" (SAC ¶ 209; *cf.* FAC ¶ 191); 2) "Fraudulent" business practices by placing false comparative prices "on the price tags of the products sold in its California Ross stores [that] deceived Plaintiffs . . . into believing that Defendant was offering value, discounts or bargains from the prevailing market price, value or worth of the products sold that did not, in fact, exist" (SAC ¶ 218; *cf.* FAC ¶ 200); and 3) "Unlawful" business practices by its "use of and reference to materially misleading, deceiving and/or false 'Compare At' prices on the price tags of merchandise sold to consumers in California Ross stores" in violation of the Federal Trade Commission Act, the FTC Pricing Guides, and California consumer protection statutes.  (SAC ¶ 228; *cf.* FAC ¶ 208.)

The fourth cause of action, styled as a claim under California's False Advertising Law, alleges that Ross "fail[ed] to adequately disclose to consumers what the phrase 'Compare At' means on the price tags of the merchandise in California Ross stores."  (SAC ¶ 235; *cf.* FAC ¶ 215.)  Plaintiffs also allege that Ross, apparently through its simple use of the term "Compare At," "made or caused to be made [a series of] untrue and/or misleading claims" regarding everything from "when other merchants offered an identical product for sale" to "Defendant's sale price for a product [being] a discount from the price at which other principal retail outlets in California regularly sold that identical product." (*See* SAC ¶ 237;

11

*cf.* FAC ¶ 217.)  Plaintiffs allege that the Ross set "Compare At" prices "without ascertaining and/or determining the prices at which other principal retail outlets in California regularly sold the identical products" and that the prices were somehow "fictitious" or "calculated by using the highest sales price at which another merchant was offering" or "higher than the lowest price at which a consumer would commonly be able to purchase the identical product at a retail establishment in the consumer's area."  (SAC ¶ 239; *cf.* FAC ¶ 219.)

The fifth cause of action, styled as a claim under the Consumer Legal Remedies Act (CLRA), alleges that Ross "made false or misleading claims to consumers throughout California" about "price reductions" and the "amount of savings" from purchasing particular products from Ross, not others.  (SAC ¶¶ 237; 243 *cf.* FAC ¶ 223.)

Although each of Plaintiffs' claims stem from allegations that Ross's prices tags were "falsely, deceptively and/or misleadingly" labeled (SAC ¶¶ 8, 9), Plaintiffs fail to allege with particularity any facts showing any falsehood or likelihood of deception or any duty to disclose information not already disclosed by Ross.  These deficiencies are fatal to each of Plaintiffs' claims.

## 1.    The SAC Again Fails to Allege Deception with the Requisite Particularity Under Federal Rule of Civil Procedure 9(b)

Courts have no difficulty dismissing FAL, UCL, and CLRA claims where, as here, Plaintiffs fail to state sufficient facts giving rise to a claim for relief.  *See Sperling v. DSW Inc.*, No. EDCV 15-1366-JGB (SPx), slip op. at 11-12 (C.D. Cal. Nov. 19, 2015), ECF No. 40 (Reply Request for Judicial Notice In Supp. of Mot. to Dismiss First Am. Compl., Ex. A) (dismissing claims for failure to explain how defendants' comparative reference prices were inflated or did not accurately reflect prevailing market prices"); *Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA (JMA), 2015 WL 1841231, at *6 (S.D. Cal. Mar. 20, 2015) (holding plaintiff's conclusory allegations that defendants' "Compare at" rates were fictional amounts

1  selected to "advertise phantom markdowns" to be insufficient under Rule 9(b));

2  *Mahfood v. QVC, Inc.*, No. SACV 06-0659 AG (ANx), 2007 WL 9363986 at *4

3  (C.D. Cal. Feb. 7, 2007) (concluding plaintiff's conclusory allegations that

4  defendant's comparative reference prices did not reflect prevailing market prices,

5  did not satisfy heightened pleading burden under Rule 9(b)).

6      Accordingly, this Court dismissed Plaintiffs' FAC for failure to sufficiently

7  plead deception under Rule 9(b).  (Order at 6.)  The Court held that "[i]t is

8  insufficient under Rule 9(b) to simply assert [deceptive practices] on 'information

9  and belief' . . . .  Plaintiffs must conduct a reasonable investigation into their claims

10  and plead at least some facts to bolster their 'belief' that the 'Compare At' prices

11  were inaccurate."  (*Id.*)

12      Plaintiffs' SAC should be dismissed for the same reasons.  As shown above,

13  Plaintiffs devote the bulk of their SAC to reiterating the same conclusory

14  allegations as alleged in the FAC, providing no new facts to support their claims.

15  The SAC also repeatedly alleges Plaintiffs' belief that some "further investigation"

16  will someday, somehow bolster their claims.  Plaintiffs' recycled allegations, which

17  remain almost exclusively based on Plaintiffs' subjective beliefs, should again be

18  disregarded for failing to state a claim for relief.

19      Plaintiffs' efforts to follow the Court's proffered guidance on how they might

20  cure the FAC's deficiencies also falls short.  As the Court explained:

21          Plaintiffs could allege, for instance, that the items they

22          purchased bore a "Compare At" price of $X but were sold

23          at other retailers for a lower price of $Y.  Or perhaps

24          Plaintiffs could plead facts showing that the purchased

25          items were offered for sale exclusively in Defendant's

26          stores.  In that case, the "Compare At" prices could be

27          deemed misleading because they at best referred to

28

1    "similar" and not to identical products.

2

3    (Order at 6.)  And again:

4         To comply with *Williams* and Rule 9(b), Plaintiffs could

5         therefore make one of two factual allegations. First,

6         Plaintiffs could plead that the items they purchased were

7         sold at other stores in the area for prices lower than

8         Defendant's "Compare At" prices.  This allegation should

9         not be made "on information and belief" but should be

10        based on specific facts, such as the exact prices of

11        identical goods offered for sale by other merchants.

12        Alternatively, Plaintiffs could plead that identical items

13        could not be found at other stores in the area, indicating

14        that Defendant's "Compare At" prices misleadingly

15        referred to "similar" items. Such allegations would be

16        sufficient to show that Plaintiffs were actually deceived

17        when they interpreted "Compare At" prices as

18        representing prices charged for identical goods.

19   (*Id.* at 8-9.)

20        Taking their cue, Plaintiffs included several paragraphs in the SAC regarding

21   what they describe as "pre-lawsuit investigation[s] of brick and mortar stores in

22   Southern California, as well as online, conducted prior to filing this lawsuit in an

23   effort to find other retailers selling" four of the products Plaintiffs allegedly

24   purchased.  (*See* SAC ¶¶ 139-147, 159-162.)

25        Plaintiffs do not allege that any of these investigations revealed that the

26   products they purchased were sold elsewhere at lower prices than Ross's advertised

27   "Compare At" prices.  Their only other option, then, was to allege "facts showing

28   that the purchased items were offered for sale exclusively in Defendant's stores."

14

The SAC fails to do so.  Nowhere do Plaintiffs identify which "brick and mortar" stores in Southern California were or were not investigated, how they were investigated, which websites were or were not visited, who conducted the searches for identical products, when they conducted the searches, or even whether Ross was still selling the products during the season in which the investigations were conducted.  Plaintiffs consequently fail to plead particularized facts sufficient to give rise to an inference of any merchandise being sold exclusively at Ross stores.

Additionally, Plaintiffs' own allegations cast doubts on any possible implication that the products they purchased were exclusively sold at Ross.  Despite any "pre-lawsuit investigations" that may have taken place, Plaintiffs still allege their belief that the "prevailing retail prices for the items [Plaintiffs] purchased from Defendant were materially lower than the "Compare At" prices advertised by Defendant."  (SAC ¶¶ 156, 176.)  In other words, even after the alleged pre-lawsuit investigations, Plaintiffs still believe there are "prevailing retail prices" for the items they purchased.  Plaintiffs define "prevailing market price" as "the price at which *other merchants* were selling the *identical product*."  (SAC ¶ 119 (emphasis added).)  Their own professed beliefs therefore suggest that the products they allegedly purchased were not exclusive to Ross.  This admission undermines Plaintiffs' entire theory that, because the purported investigations did not reveal any other retailers selling identical products, Ross's "Compare At" prices must have referenced "similar, non-identical" products.

Ultimately, the SAC fails to show any "precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Ackerman*, 172 F.3d at 469; *see also Vess*, 317 F.3d at 1106 (requiring plaintiff to detail the "who, what, when, where, and how" of the charged misconduct).  Because Plaintiffs fail to plead facts supporting their claim that they were exposed to any deceptive comparison pricing, their UCL, FAL, and CLRA claims necessarily fail.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.

2008).

## 2. Plaintiffs' Omission Theory Fails Because Plaintiffs Fail to Identify any Cognizable Legal Duty to Disclose

Plaintiffs attempt to save their UCL, FAL, and CLRA claims by alleging that Ross has "failed to disclose to, and/or concealed from, Plaintiffs and all other Class Members the truth about its alleged comparative prices" (SAC ¶ 129) and "failed to disclose material facts about its product pricing and purported discounts." (SAC ¶ 185(q).) Plaintiffs fail, however, to allege any actionable omission.

In order to be actionable under the CLRA, an omission must either be (1) "contrary to a representation actually made by the defendant" or (2) a "fact the defendant was obligated to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835-36 (2006); *Davidson*, 76 F. Supp. 3d at 972 ("California courts have generally rejected a broad obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty*"). Similarly, "it appears settled that [a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008) (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007)). A duty to disclose exists only in the following circumstances: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; and (4) the defendant makes partial representations but also suppresses some material fact. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

Plaintiffs fail to allege a basis for any purported duty of disclosure. First, Plaintiffs do not contend that Ross is their fiduciary. Second, the SAC does not allege any specific "affirmative acts on the part of the [D]efendants in hiding, concealing or covering up the matters complained of" and thus also fails to state a claim for active concealment. *See Lingsch v. Savage*, 213 Cal. App. 2d 729, 734

1   (1963) (concluding complaint alleges "mere nondisclosure, rather than active

2   concealment" for failure to allege affirmative acts); *see also Alfaro v. Cmty. Hous.*

3   *Improvement Sys. & Planning Ass'n*, 171 Cal. App. 4th 1356, 1382 (2009).

4        Third, Plaintiffs do not allege facts showing that Ross had exclusive

5   knowledge of any material facts.  Plaintiffs' alleged injury relates to whether Ross's

6   "Compare At" prices refer to the prices used by other retailers in the area.  But

7   information about the prices charged by other retailers is equally available to them,

8   other consumers, and Ross.  Whether Ross somehow had exclusive knowledge as to

9   its own definition of "Compare At" (despite its website and in-store disclosures) is

10  irrelevant under Plaintiffs' theory of causation, because as long as Ross's "Compare

11  At" prices "could be the selling price of the same item at other full-price

12  department or specialty stores" (SAC ¶ 60), then their expectations were met and

13  they suffered no injury.

14       Fourth, to the extent Plaintiffs' duty of disclosure claim can be interpreted as

15  relying on a theory that Ross's "Compare At" pricing was a partial disclosure—

16  which would obligate Ross to reveal its definition on every price tag for every item

17  in its stores—the claim still fails because Plaintiffs have not adequately alleged any

18  facts to show that Ross's own definition was inconsistent with Plaintiffs' beliefs

19  with respect to the items they actually purchased.

20       Moreover, even where there is a duty to disclose, if the information is in fact

21  already available to the consumer, the defendant's business practice is not

22  deceptive, misleading, or fraudulent as a matter of law.  *S. Bay Chevrolet v. Gen.*

23  *Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 879-90 (1999).  Here, as Plaintiffs

24  point out, Ross does, in fact, disclose its definition of "Compare At" pricing, both

25  on its website and in its stores.[2]  (SAC ¶¶ 49, 83.)

26

27       [2] This important fact distinguishes the present case from the recent decision

28  in *Horosny v. Burlington Coat Factory of California, LLC*, No. CV15-05005 SJO
    (MRWx), slip op. at 8 (C.D. Cal. Oct. 26, 2015), ECF No. 38-2 (Request for

Plaintiffs attempt to salvage their claim by citing extensively to sources like the FTC's Pricing Guides and ".com Disclosures" rules.  (*See*, *e.g.*, SAC ¶¶ 93-118.)  Unfortunately for Plaintiffs, however, the Guides state that it is *not* deceptive for retailers to label items using "Comparable Value Comparisons" such as Ross's.  *See* 16 C.F.R. §§ 233.2(c).  With respect to the ".com Disclosures," which Plaintiffs claim imposes a "clear and conspicuous requirement" for *any* advertising disclosures made online (*see*, *e.g.*, SAC ¶ 95), Plaintiffs misrepresent both the applicability and substance of this document.  As the publication itself explains, the "clear and conspicuous requirement" referenced by Plaintiffs only applies "if a disclosure is required."  *See FTC .com Disclosures – How to Make Effective Disclosures in Digital Advertising*, 5 (Mar. 2013), https://www.ftc.gov/sites /default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.  Here, no disclosure was required.  Moreover, Plaintiffs do not allege that they were confused about something they saw online.  The ".com Disclosures" standards simply do not apply.

### 3.      Dr. Compeau's 2004 Study Is Irrelevant

Plaintiffs cite an 12-year-old study from psychologist Larry Compeau to show that the phrase "Compare At" is deceiving on its face.  Although Dr. Compeau opined in 2004 that a customer "may" be deceived by the phrase "Compare At," his study does not support a conclusion that the phrase is deceptive in the present case.  Furthermore, it is simply untrue that Dr. Compeau "concludes" that the "average reasonable consumer interprets the term 'compare at,' when presented in comparison to a lower selling price for an item, to refer to 'prices found in a 'regular price' department store.'" (SAC ¶ 51.)  This quotation refers to a

Judicial Notice In Supp. of Pls.; Opp. to Mot. to Dismiss First Am. Compl., Ex. B) (denying motion to dismiss UCL, FAL and CLRA claims where plaintiff adequately pled a failure to disclose "what Defendant means by the term 'Compare'").

different study. *The Journal of Consumer Affairs*, Vol. 38, No. 1, 2004, at 185. In fact, Dr. Compeau's conclusion actually contradicts Plaintiff's claims here: "In the present study, 'Compare At' appears to have the fairly consensual meaning of the price one would pay for a comparable product at another store, or for an alternative brand at the same store when not on sale. . . . When probed as to how a store might obtain these 'Compare At' prices, however, only one participant believed that a store would actually check the prices at other stores." (*Id.* at 184.)

### B. The SAC Fails to Satisfy Additional Pleading Requirements Under UCL, FAL, and CLRA

Plaintiffs' UCL, FAL, and CLRA claims each fail due to the deficiencies set forth above, but there are additional reasons why these claims should be dismissed.

#### 1. The SAC Cannot Support an "Unfairness" Claim

The UCL defines "unfair competition" to include unlawful, fraudulent, and unfair business acts and practices and furnishes a private right of action to a plaintiff who has suffered injury in fact and lost money or property as a result. Cal. Bus. & Prof. Code §§ 17200, 17204. A business act or practice is "unfair" when it "offends an established public policy or ... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 939 (2003). As the SAC fails to allege any unfair conduct, or facts to show that Ross's prices are deceptive, other than an unsubstantiated belief that the "Compare At" prices were too high, they fail to state any UCL unfairness claim. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

#### 2. The SAC Cannot Support as "Unlawful" Claim

To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999); *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 673 (1998) ("[T]he Act requires a violation of law, and...a defense to the underlying offense is a

19

1    defense under the Act"); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185,

2    1206 (S.D. Cal. 2010) (UCL claim "stands and falls with the viability of Plaintiff's

3    other claims").

4         Here, Plaintiffs claim that Ross violated the "unlawful" prong of the UCL by

5    violating the CLRA, the other prongs of the UCL, the FAL, and the FTCA.

6    Plaintiffs' claims under each of these "laws" is grounded in Plaintiffs' theory that

7    Ross's "Compare At" pricing is false or misleading.  Because Plaintiffs offer no

8    adequate support for this premise, Plaintiffs' claims necessarily fail.

9              **3.     The SAC Fails to Support a False Advertising Claim**

10        A plaintiff bringing a claim under the FAL must sufficiently plead "the

11   defendants knew, or by the exercise of reasonable care should have known, that the

12   statements were untrue or misleading."  Cal. Bus. & Prof. Code § 17500; *Miller v.*

13   *Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 873 (N.D. Cal. 2012); *see also*

14   *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011);

15   *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App.

16   4th 1336, 1342 (2003).  Because Plaintiffs fail to allege facts supporting their claim

17   that "Compare At" pricing is deceptive, there is no basis to infer that Ross had

18   knowledge of any false statement allegedly made to Plaintiffs.  Furthermore,

19   Plaintiffs allege no facts to show that Ross knew or should have known that its

20   definition of "Compare At" pricing might be inconsistent with Plaintiffs' or any

21   other consumer's understanding of the term.

22             **4.     The SAC Fails to State a Claim Under California Civil Code**

23   **§ 1770(a)**

24        Plaintiffs claim that Ross violated California Civil Code section 1770(a)(13),

25   which prohibits certain statements regarding "price reductions."  (SAC ¶¶ 227, 228,

26   249.)  Plaintiffs fail to state a claim because they do not identify any misleading

27   statement of fact by Ross regarding "price reductions."

28        The Court previously acknowledged that Plaintiffs' FAC failed to allege that

1      Plaintiffs understood the "Compare At" prices to be "price reductions," stating that

2      "Plaintiffs should either remove the reference to section 1770(a)(13) or specify

3      which alleged misrepresentations concerned "price reductions."  (Order at 10.)

4      Although the SAC again uses the phrase "price reductions" to describe Ross's

5      "Compare At" pricing, Plaintiffs do not adequately allege that the "Compare At"

6      price represents a reduction from any other price.

7          Furthermore, section 1770(a)(13) of the CLRA does not even address the

8      kind of comparable-value comparison pricing alleged in the SAC.  *See*

9      *Rubenstein v. Neiman Marcus Grp. LLC*, No. CV 14-07155 SJO (JPRx), slip op. at

10     8 (C.D. Cal. May 12, 2015), ECF No. 26-3 (Request for Judicial Notice In Supp. of

11     Mot. to Dismiss First Am. Compl., Ex. C) (". . . advertising a price as a "Compared

12     to" price is not advertising a price as a former price.").  Plaintiffs' CLRA claim fails

13     even if they could allege facts demonstrating a failure to comply 16 C.F.R. § 233,

14     which they have not.

15         Plaintiffs similarly fail to allege any facts demonstrating the applicability or

16     violation of section 1770(a)(5) or (7).  (SAC ¶¶ 225, 226, 228, 249.)

17    **V.**      **CONCLUSION**

18         For the foregoing reasons, Ross respectfully requests that the Court grant

19     Ross's motion to dismiss the SAC in its entirety with prejudice.

20    Dated:  April 14, 2016            MORRISON & FOERSTER LLP

21

22                      By:      */s/ David F. McDowell*

23                        DAVID F. MCDOWELL

24                       Attorneys for Defendant
                             ROSS STORES, INC.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 14th day of April, 2016 the

foregoing document was filed electronically on the CM/ECF system, which caused

all CM/ECF participants to be served by electronic means.

MORRISON & FOERSTER LLP

By:      /s/ *David F. McDowell*

DAVID F. MCDOWELL

Attorneys for Defendant
ROSS STORES, INC.