Douglas Caiafa, Esq. (SBN 107747)
DOUGLAS CAIAFA, A Professional Law Corporation
11845 West Olympic Boulevard, Suite 1245
Los Angeles, California 90064
(310) 444-5240 - phone; (310) 312-8260 - fax
Email: dcaiafa@caiafalaw.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
42-215 Washington Street, Suite A-37
Palm Desert, California 92211
(760) 469-5986 - phone; (760) 345-1581 - fax
Email: cjmorosoff@morosofflaw.com

Attorneys for Plaintiffs JOSE JACOBO, et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSE JACOBO, et al,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>ROSS STORES, INC., et al,<br><br>                    Defendants. | Case No. 2:15-cv-04701-MWF-AGRx<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Courtroom:  5A – First Street<br>Date:          October 29, 2018<br>Time:          10:00 a.m.<br>Judge:        Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND................................2

III.   THE SETTLEMENT...........................................................................................4

A.     Settlement Negotiations .............................................................................4

B.     Terms of the Settlement ..............................................................................5

       1.    Monetary Relief .................................................................................5

       2.    Injunctive Relief.................................................................................7

       3.    The Release..........................................................................................7

       4.    Notice and Claims Administration...........................................7

IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED.....................11

A.     Numerosity .....................................................................................................12

B.     Commonality ..................................................................................................12

C.     Typicality.........................................................................................................13

D.     Adequacy..........................................................................................................14

E.     Rule 23(b)(3) Settlement Class ..............................................................14

F.     Certification of a Nationwide Settlement Class...............................16

V.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED............17

A.     The Settlement is the Product of Informed, Arms-Length Negotiations ..............18

B.     The Amount Offered in Settlement is Fair and Reasonable...................19

C.     The Settlement Does Not Improperly Grant Preferential Treatment to the Class Representatives..................................22

D.     The Proposed Settlement Has No Obvious Deficiencies ....................23

VI.    THE PROPOSED NOTICE SHOULD BE APPROVED ...................23

A.     The Proposed Form of Notice is Accurate and Adequately Informs Class Members of their Rights.........................24

B.     The Proposed Method of Notice Provides for the Best Notice Practicable...........24

VII.   CONCLUSION .................................................................................................25

i

# TABLE OF AUTHORITIES

**Page Nos.**

**FEDERAL CASES**

*Abdullah v. U.S. Sec. Assocs., Inc.*
        731 F.3d 952 (9th Cir.2013) ......................................................................12

*Acosta v. Trans Union, LLC*
        243 F.R.D. 377 (C.D. Cal. 2007) ............................................................18

*Amchem Products, Inc. v. Windsor*
        521 U.S. 591 (1997) ......................................................................14,15,16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
        568 U.S. 455, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013).............. 12,13,15

*Alvidres v. Countrywide Financial Corp.*
        2008 WL 1766927 (C.D. Cal. 2008) ......................................................12,13,14

*Bellinghausen v. Tractor Supply Co.*
        306 F.R.D. 245 (N.D. Cal. 2015)...............................................................22

*Carter v. Anderson Merchandisers, LP*
        2010 WL 1946784 (C.D. Cal. May 11, 2010)...........................................19

*Chavez v. Blue Sky Natural Beverage Co.*
        268 F.R.D. 365 (N.D. Cal. 2010) .............................................................15

*Chowning v. Kohl's Dept. Stores, Inc.*
        No. 15-cv-008673-RGK (C.D. Cal. March 15, 2016).................................. 20

*Class Plaintiffs v. City of Seattle*
        955 F.2d 1268 (9th Cir. 1992).................................................................17

*Dimidowich v. Bell & Howell*
        803 F.2d 1473 (9th Cir. 1986)..................................................................20

*Ellis v. Costco Wholesale Corp.*
        657 F.3d 970 (9th Cir. 2011)....................................................................14

*Fulford v. Logitech, Inc.*

-ii-

2010 WL 807448 (N.D. Cal. Mar. 5, 2010)..................................................23

Hanlon v. Chrysler Corp.
150 F.3d 1011 (9th Cir. 1998)...........................................................15,16

Hendricks v. Starkist Co.,
2016 WL 5462423 (N.D. Cal. Sept. 9, 2016).........................................6

In re Easysaver Rewards Litig.
2016 WL 4191048 (S.D. Cal. Aug. 9, 2016)...........................................6

In re Online DVD-Rental Antitrust Litig.
779 F.3d 934 (9th Cir. 2015).......................................................passim

In re Tableware Antitrust Litig.
484 F. Supp. 2d 1078 (N.D. Cal. 2007)...................................................18

Johnson v. Ashley Furniture Industries, Inc.
2016 WL 866957 (S.D. Cal. Mar. 7, 2016) .............................................6

Keirsey v. eBay, Inc.
2014 WL 644697 (N.D. Cal. Feb. 14, 2014) ...........................................25

Lane v. Facebook, Inc.
696 F.3d 811 (9th Cir. 2012)..................................................................24

Leyva v. Medline Indus. Inc.
716 F.3d 510 (9th Cir. 2013)........................................................15,16,17

Linney v. Cellular Alaska Partnership
151 F.3d 1234 (9th Cir. 1998)................................................................22

Mazza v. Am. Honda Motor Co.
666 F.3d 581 (9th Cir. 2012).................................................................15

Officers for Justice v. Civil Service Commission,
688 F.2d 615 (9th Cir. 1982)...........................................................17,19

Pereira v. Ralph's Grocery Co.
2010 WL 6510338 (C.D. Cal. Mar. 24, 2010) .......................................18

Pulaski & Middlman, LLC v. Google, Inc.

-iii-

802 F.3d 979 (9th Cir. 2015)..............................................................20

*Radcliffe v. Experian Info. Solutions, Inc.*
715 F.3d 1157 (9th Cir. 2013).........................................................22,23

*Rodriquez v. W. Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009)..........................................................18,19

*Schaffer v. Litton Loan Servicing, LP*
2012 WL 10274679 (C.D. Cal. Nov. 13, 2012)....................................22

*Silber v. Mabon*
18 F.3d 1449 (9th Cir. 1994)...............................................................24

*Sperling v. DSW, Inc.,*
No. 16-55231 (9th Cir. Oct. 19, 2017) ...............................................20

*Stockwell v. City & County of San Francisco*
749 F.3d 1107 (9th Cir. 2014)............................................................12

*Spann v. JC Penney Corp.*
307 F.R.D. 508 (C.D. Cal. 2015)................................................15,16,21

*Stathakos v. Columbia Sportswear Co.*
No. 15-cv-04543-YGR (N.D. Cal. May 11, 2017) ..............................20

*Tait v. BSH Home*
2012 WL 6699247 (C.D. Cal. Dec. 20, 2012)......................................15

*Tyson Foods, Inc. v. Bouaphakeo*
136 S. Ct. 1036 (2016) ........................................................................16

*Vasquez v. Coast Valley Roofing, Inc.*
670 F. Supp. 2d 1114 (E.D. Cal. 2009) .................................................7

*Vizcaino v. U.S. Dist. Court for Western Dist. Of Washington*
173 F.3d 713 (9th Cir. 1999) ...............................................................11

*West v. Circle K Stores, Inc.*
2006 WL 1652598 (E.D. Cal. June 13, 2006) ......................................18

*Wolin v. Jaguar Land Rover North Am. LLC*

-iv-
MEMO. OF POINTS & AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

617 F.3d 1168 (9th Cir. 2010)...........................................................................13

**STATE CASES**

*In re Tobacco Cases II*

2015 WL 5673070 (Cal. App. Sept. 28, 2015).........................................20

**STATUTES AND RULES**

Cal. Bus. & Prof. Code §17200 .......................................................................2

Cal. Bus. & Prof. Code §17500 .......................................................................2

Cal. Civil Code §1750 ......................................................................................2

Fed. R. Civ. Proc. 23................................................................................passim

MEMO. OF POINTS & AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. __INTRODUCTION__:

Plaintiffs Jose Jacobo and Theresa Metoyer (collectively, "Plaintiffs") and their counsel have achieved a settlement (the "Settlement") of this action with Defendant Ross Stores, Inc. ("ROSS" or "Defendant"). The Settlement is the product of months of arms-length negotiations between the parties, including mediation with Bruce Friedman through JAMS in October of 2016, and through the Court of Appeal mediation program with circuit mediator, Kyungah Suk, in November of 2017.

Defendant has agreed to pay four million eight-hundred fifty-four thousand dollars (**$4,854,000.00**) in cash and cash equivalents for the benefit of Settlement Class Members in Merchandise Certificates redeemable for cash at the Settlement Class Members' option, administrative costs, attorneys' fees and expenses, and incentive awards. (See Settlement Agreement, dated April 10, 2018 ("Agreement"), attached as Exhibit A to the Declaration of Douglas Caiafa ("Caiafa Dec.")). Claimants will receive Merchandise Certificates for the purchase of any product sold at any Ross store in the United States ("Certificates"). The Certificates shall be redeemable for cash, at the Settlement Class Members' option, in an amount equal to 75% of the value of Certificate. In addition, and as a direct result of this litigation, Defendant has changed the symantic phrase it uses in its price advertising from "Compare At" to "Comparable Value," and has agreed to augment its Primary Signage with additional signage in its stores, and enhance its comparison pricing practices, including training and auditing programs designed to ensure that it complies with California's price comparison advertising laws. As further detailed in the Agreement, Defendant has also agreed to pay the costs of providing class notice and administering claims, reasonable attorney's fees and costs, and incentive awards to the representative Plaintiffs. These amounts are to be deducted from the $4,854,000, with the remainder to be divided by Class Members who make claims on a pro-rata basis.

Through this Motion, Plaintiffs seek an order: (1) certifying a Settlement Class for settlement purposes only; (2) granting preliminary approval of the Settlement pursuant to

1   Fed. R. Civ. Proc. 23(e); (3) approving the form and manner of Class Notice; and, (4)

2   setting a date for a final approval hearing.  The Settlement satisfies the standards for

3   preliminary approval and should be approved – it is within the range of possible approval

4   to justify sending and publishing notice of the Settlement to Class Members and

5   scheduling final approval proceedings.  *See In re Online DVD-Rental Antitrust Litig.*, 779

6   F.3d 934 (9th Cir. 2015) ("*In re Online DVD*").

7   **II.    FACTUAL AND PROCEDURAL BACKGROUND**:

8           Prior to filing this action on June 20, 2015 (Dkt. #1), Plaintiffs' counsel consulted

9   with Plaintiffs, investigated Defendant's pricing practices and researched the law

10  applicable to Plaintiffs' claims.  (Caiafa Dec. at ¶7).  In the operative Second Amended

11  Class Action Complaint ("SAC"), filed on March 28, 2016 (Dkt. #49), Plaintiffs allege

12  that throughout the Class Period, Defendant has engaged in a deceptive advertising

13  scheme by which it advertised "sale" prices that were substantially lower than advertised

14  "Compare At" prices for the products sold in its California Ross stores.  Plaintiffs further

15  allege that the higher Compare At prices were deceptive because the Compare At prices

16  were not based on actual prices that identical items sold for either at ROSS stores or other

17  retailers, and that Defendant failed to adequately disclose to consumers what its Compare

18  At reference prices were intended to represent.  The SAC seeks restitution and injunctive

19  relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et*

20  *seq.* ("UCL"), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"),

21  and Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.* ("CLRA").

22          On June 17, 2016, this Court granted in part and denied in part Defendant's Motion

23  to Dismiss Plaintiffs' SAC.  (Dkt. #56).  On July 5, 2016, Defendant filed its Answer to

24  the SAC (Dkt. 57), denying Plaintiffs' allegations and any wrongdoing in this case.

25          Throughout the litigation, Plaintiffs' counsel engaged in extensive legal research

26  and analysis and conducted thorough discovery, including multiple rounds of written

27  discovery conducted by Defendants and Plaintiffs requiring numerous and extensive meet

28  and confers and multiple motions to compel, including the production of thousands of

-2-

documents by both sides in the litigation. (Caiafa Dec. at ¶9). Defendant took the deposition of Plaintiffs, and Plaintiffs took five (5) depositions of Defendant's representatives. Plaintiffs' counsel reviewed and analyzed thousands of documents that Defendant produced in the Litigation, including its voluminous and detailed sales data, and thousands of pages of invoices and purchase orders. (Id.).

On December 21, 2016, Defendant filed a Motion for Order Denying Class Certification (Dkt. 78), which was opposed by Plaintiffs on February 27, 2017 (Dkt. 89), and denied by the Court on May 1, 2017 (Dkt. 95).

On May 26, 2017, Defendant filed a Motion for Summary Judgment (Dkt. 99) ("MSJ"), and Plaintiffs filed a Motion for Class Certification (Dkt. 103) ("Cert Motion"). On August 2, 2017, the Court granted Defendant's MSJ and denied Plaintiffs' Cert Motion as moot (Dkt. 125).

On August 15, 2017, Plaintiffs filed a Notice of Appeal with the Ninth Circuit Court of Appeals (the "Circuit Court") (Dkt. 126). On November 10, 2017, the Parties participated in the Circuit Court's Mediation Program and reached a tentative settlement. On December 4, 2017, the Parties filed a Stipulation to Dismiss Appeal Without Prejudice in the Circuit Court. That same day, the Circuit Court dismissed Plaintiffs' appeal without prejudice pursuant to the Parties' Stipulation.

The named Plaintiffs and Class Counsel here have pursued the Litigation believing that it is meritorious, and have conducted an investigation of the facts and law surrounding this case, including but not limited to: (i) researching the applicable law and the potential defenses; (ii) conducting extensive written discovery and numerous depositions; (iii) reviewing Ross's public filings and internal documents (including sales data, purchase orders, invoices and guidelines) concerning its comparison price advertising; (iv) hiring and consulting with experts; (v) developing arguments for class certification, and preparing and filing a motion for class certification; (vi) briefing numerous motions, including class certification and summary judgment; and (vii) attending in-person mediations. Based on their own

-3-

independent investigation and evaluation, Class Counsel believes the instant Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class Members as well as future consumers, in light of all known facts and circumstances, including this Court's decision to grant Ross's MSJ and deny Plaintiffs' Cert Motion as moot, the risk of significant delay, and the appellate risk.

Based on and pursuant to the terms of the Agreement between the Parties, it will be necessary to file a Third Amended Complaint to encompass a nationwide settlement class, rather than a California-only settlement class, to be defined as:

> All persons who, while in the State of California, and between June 20, 2011, and the present (the "Class Period"), purchased from Ross one or more items at any Ross store in the United States of America with a price tag that contained a "Compare At" price which was higher than the price listed as the Ross sale price on the price tag, and who have not received a refund or credit for their purchase(s). Excluded from the Class are Defendants, as well as Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any Defendant.

(TAC [Proposed], ¶175) (Caiafa Dec. at ¶¶ 13 & 14).

## III.   THE SETTLEMENT:

The Settlement here is a non-reversionary settlement. The entire amount of the Settlement will be distributed for the benefit of Settlement Class Members.

## A.   Settlement Negotiations:

Throughout mid-2016, the Parties engaged in extensive negotiations concerning the possible structure of a class-wide settlement. (Caiafa Dec. ¶15). These negotiations led to mediation, on October 18, 2016 before mediator Bruce A. Friedman of JAMS. (Id.).

After a full day of mediation, the parties were unable to reach agreement and, as a result, continued to actively litigate the case. More than nine months later, in August 2017, this Court granted Defendant's MSJ against Plaintiffs. Plaintiffs appealed, and both Plaintiffs and Defendant agreed to pursue settlement through the Circuit Court's mediation program. (Caiafa Dec. ¶16). In November 2017, the parties reached agreement at mediation and subsequently negotiated, drafted and executed the comprehensive Agreement which is currently before the Court. (Caiafa Dec., ¶16; Exh. A).

**B.**   <u>**Terms of the Settlement**</u>:

The Agreement is intended to resolve the Litigation in its entirety and is conditioned on the Court certifying a nationwide Settlement Class, for settlement purposes only, and granting final approval of the Settlement.  (Ex. A at ¶1.12).  The Parties have modeled the Agreement, to the extent possible, after the settlement agreement approved by the Ninth Circuit in *In re Online DVD*.  (Caiafa Dec. at ¶17).

**1.**   **Monetary Relief**:

The Agreement provides that Defendant will make available a fixed sum of $4,854,000.00 (the "Monetary Component") for the benefit of the Class.  (Ex. A at ¶1.15). Subject to Court approval, the Monetary Component will be used to pay for Notice and Administration Costs (not to exceed $600,000) (Id. at ¶3.1.2), reasonable Attorneys' Fees and Costs (not to exceed 25% of the Class Settlement Amount), and Class Representative Enhancement Payments (not to exceed $5,000 to each named Plaintiff).  (Id. at ¶¶3.1.3-3.1.4).  The amount remaining after these payments shall be paid on a pro rata basis to Settlement Class Members who submit a valid Claim Form ("Claimants").  (Id. at ¶1.13).

Claimants will receive their share of the Monetary Component as a Merchandise Certificate redeemable for purchases at any Ross Store in the United States of America. Each Certificate shall be fully transferable and may be used in connection with any promotional discounts that are otherwise available.  (Id. at ¶1.13).  Certificates will have no expiration date and need not be used in full at any time.  They will maintain a running balance that will be depleted based only on use until the balance is zero.  (Id.).  No minimum purchase amount is required to use them.  In addition, Settlement Class Members will have the option of redeeming an unused Certificate for cash in an amount equal to 75% of the value of the Certificate at the time of its issuance by returning the Certificate to the Claims Administrator within one (1) year after its issuance.  (Id.).

Claimants will have ninety days from the date of Notice to submit a Claim Form either electronically through a Settlement Website maintained by the Administrator, or via mail to the Administrator.  (Id. at ¶¶ 5.1, 5.2.2).  Following the Settlement Effective Date,

-5-

1 │ Defendant will deliver plastic Merchandise Certificates to the Claims Administrator for

2 │ distribution to all Claimants. (Id. at ¶8.3).

3 │        Like the gift cards offered in *In re Online DVD*, the Certificates here are an

4 │ alternative to cash, and are not "coupons" within the meaning of CAFA. They do not

5 │ expire, may be used to purchase any product at any Ross store, and are redeemable for

6 │ cash at the Claimant's option. (Ex. A at ¶1.13). The Certificates here have many of the

7 │ same attributes as those in *In re Online DVD*, where the gift cards were found not to be

8 │ coupons because, among other things, they could be used to purchase any product from

9 │ defendant, were redeemable for cash, were freely transferable, and did not expire. 779

10 │ F.3d 934, 950-52.

11 │        Several district courts in this circuit have also analyzed whether a store credit

12 │ should be considered a "coupon" under CAFA and provide further guidance and support

13 │ for the conclusion that the Certificates in this case are not "coupons." For example, the

14 │ court in *In re Easysaver Rewards Litig.*, 2016 WL 4191048 (S.D. Cal. Aug. 9, 2016),

15 │ found that $20 "merchandise credits" that were valid for any product offered by the

16 │ defendant retailers, did not require class members to spend any of their own money when

17 │ using the credits, and were fully transferrable, were "not discount coupons" subject to

18 │ CAFA, even though they expired after one year and had additional "black-out dates." *Id.*

19 │ at *2-3. Similarly, the court in *Hendricks v. Starkist Co.*, 2016 WL 5462423 (N.D. Cal.

20 │ Sept. 9, 2016), also relying on *In re Online DVD*, found that "vouchers" that could be used

21 │ to purchase Starkist products without the need for class member claimants to spend any of

22 │ their own money, were "freely transferable," and had "no expiration date," were also "not

23 │ coupons." 2016 WL 5462423, at *7. Further, the court in *Johnson v. Ashley Furniture*

24 │ *Industries, Inc.*, 2016 WL 866957 (S.D. Cal. Mar. 7, 2016), found that a $25

25 │ "Merchandise Voucher" to be used as "store credit" at Ashley Furniture stores was "not a

26 │ coupon." 2016 WL 866957, at *4. Likewise, the Merchandise Certificates here are not

27 │ "coupons" within the meaning of CAFA.

28 │ ///

MEMO. OF POINTS & AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

### 2. **Injunctive Relief**:

As a direct result of this Litigation, Defendant has also agreed to implement changes to its price-comparison advertising practices. First, during the course of this lawsuit, Defendant changed its price advertising, changing the language on all of its price tags nationwide from "Compare At" to "Comparable Value." Second, Defendant has agreed that, as of the date of settlement, and continuing forward, it will not violate Federal or California law, including California's specific price-comparison advertising statutes. (Ex. A at ¶3.4). Next, Defendant has also agreed to enhance and expand programs intended to promote legal compliance, including periodic (no less than once a calendar year) monitoring, training and auditing to ensure compliance with California and Federal price comparison laws throughout the United States. (Ex. A at ¶¶3.4-3.6).

Defendant has also agreed to prominently post additional signs in each of its stores throughout the United States describing its comparison pricing practices, and augment its primary signage as well which directs customers to additional details about Ross's comparison pricing practices. (Id. at ¶3.5.1-3.5.2).

### 3. **The Release**:

Settlement Class Members who do not opt out will be deemed to have released Defendant from claims related to the Litigation. (Caiafa Dec. ¶25; Ex. A at ¶9). To the extent possible, the release language in the Agreement follows the release language approved by the Ninth Circuit in *In re Online DVD*. (Id.). While it releases both known and unknown claims, the Release is limited to the universe of facts, occurrences, transactions and claims alleged in the SAC. (Ex. A, ¶ 9.1.3). As a result, the Release is sufficiently limited in scope and should be given preliminary approval. *See, Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126 (E.D. Cal. 2009).

### 4. **Notice and Claims Administration**:

After consulting with and receiving bids from multiple candidates, Class Counsel retained CPT Group, Inc. ("CPT") to serve as Claims Administrator. (Ex. A at ¶1.6). CPT is a highly experienced class action claims administration company. (Declaration of

-7-

Julie N. Green, Senior Vice President of Operations, Class Action Services of CPT Group, Inc., ("Green Dec.") at ¶¶ 1-7; Green Dec., Exh. A (CPT's company resume – which provides detailed information concerning CPT's class actions claims administration qualifications and experience).

CPT estimates that all costs of Notice and Administration will be not exceed $600,000, and the Parties have agreed to a cap of $600,000 for all such costs.  (Caiafa Dec., Ex. A. at ¶3.1.2).

As provided in Ms. Green's declaration, the Notice Plan in this action is designed to reach as many Settlement Class Members as possible through direct notice via email, where such information exists and is available, and/or through print and publication internet advertising where direct contact information is not available. (Green Dec., ¶ 10).  The proposed notice plan includes the following components:

a.  CPT will email the Summary Email Notice to approximately three (3) million Settlement Class Members;

b.  CPT will cause the Summary Publication Notice to be printed in *People Magazine* (Nationwide Edition), and launch an internet banner and social media advertisement campaign.

c.  CPT will create a settlement website to enable potential Settlement Class Members to get information about the litigation and file a claim online. Settlement Class Members will be able to view and download the Notice, Claim Form, Opt-Out Request Form, SAC and Settlement Agreement.

d.  CPT will create a dedicated email address to receive and respond to potential Settlement Class Member questions.

e.  CPT will establish and maintain a 24-hour, toll-free telephone line where callers may obtain information about the case, with call center associates available to answer questions during normal business hours.

(Green Dec. at ¶10; Exh. B (CPT's Legal Noticing Campaign for Ross Litigation).

MEMO. OF POINTS & AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

In connection with the Publication Notice, and to best reach unidentified class members, CPT will utilize GfK MediaMark Research & Intelligence, LLC (MRI) data. Based on its analysis, Gfk MRI has concluded that the potential nationwide target audience here is 8,927,000 people. (Green Dec. at ¶18).

Due to the nature of the action, much of the Class is unknown and cannot be reached through traditional direct notice. To reach unknown Class Members, CPT will place the approved notices in the following edition(s) of magazines, internet banner display ads and social media networks that have been identified as the best resource to reach the prospective target audience (Id. at ¶19):

**Print Publication**:  Based on the media quintiles that measure the degree to which an audience uses media relative to the general population, CPT has found that the target audience would be heavy magazine readers and therefore recommends that the Publication Notice be printed one time in *People Magazine* (Nationwide edition), 1/3-page.  *People Magazine* is a well-known nationwide publication, issued weekly, with a circulation of 3,475,000.  Publication in *People Magazine* is expected to reach approximately 15% of the target audience.  (Id. at ¶20).

**Internet Notification:** CPT will implement both digital banner advertising campaigns on the Google Display Network (GDN) and Facebook Audience Ad Network as well as ad placements on the following social media platforms: Facebook, Instagram, and Twitter.  All ads will be geo-targeted in the 37 States which have Ross stores (mainly states outside of New England and the Midwest). The campaign will run on both desktop computers (and tablets), as well as on mobile phones.  CPT estimates that its internet notice plan will reach at least 72% of the target audience. (Id. at ¶22).

///
///
///
///

-9-

1   **Settlement Website**: CPT will design a dedicated interactive website with a

2   case specific Domain/URL that will be informative and easy for consumers to

3   navigate in both English and Spanish.  The website will also be optimized for mobile

4   users and maximize search engine optimization through key words and metadata to

5   increase search engine rankings. The website will be maintained and updated for the

6   entire length of the case and up to 6 months after final approval and disbursement of

7   Certificates. The website will allow Class Members to obtain additional information

8   about the settlement and allow them to submit Claim Forms electronically. The

9   website address will be displayed on all approved notices and hyperlinked on all

10  electronic and internet publications and documents. (Id. at ¶23).

11  **Toll-Free Number**: CPT will develop, maintain and deploy a 24-hour, toll-

12  free phone number where Class Members can obtain up-to-date information

13  pertaining to the Settlement in English and Spanish, and select the option to listen to

14  pre-recorded FAQ's. (Id. at ¶24).

15  In addition, CPT with launch a nationwide press release to aid with the

16  credibility of the banner display ads.

17  CPT's goal is to reach approximately 95% of the target audience through a

18  combined effort using email notification, magazine advertisement, internet banner

19  advertisement, social media and a nationwide press release. As stated above, CPT

20  expects to reach approximately 33% of the target audience through direct notification.

21  Based off the statistics gathered using GfK MediaMark, 14.91% of the reach will be

22  through PEOPLE Magazine and the remaining 47.09% will be conducted through

23  internet banner and social media advertising, totaling 95%. (Id. at ¶19).

24  Notice will be sent via Email to those Settlement Class Members for whom the

25  parties have email addresses no later than 30 days following preliminary approval. (Caiafa

26  Dec., Ex. A at ¶4.3).  No later than 40 days following preliminary approval, CPT will also

27  commence the above-described publication notice plan. (Id.).  The publication notice will

28  direct Settlement Class Members to the Settlement Website where they can view the full

-10-

MEMO. OF POINTS & AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Notice and obtain further information about the Litigation and Settlement. (Id. at ¶5.3). CPT will also process and audit Claims and Opt-Out Requests by Settlement Class Members and make Certificates available to Claimants. (Ex. A at ¶¶4.4 & 5.3).

## IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED:

The Settlement here is conditioned upon the Court certifying a nationwide Settlement Class, for settlement purposes only, under Fed. R. Civ. Proc. 23(b)(3). (Ex. A at ¶2.4). The Settlement Class will be defined to include:

> All persons in the United States who purchased (and who did not receive a refund or credit for all their purchases) from Ross any item with a price tag that included a comparison price that was higher than the sales price during the Settlement Class Period. Excluded from the Settlement Class are Ross's past and present officers, directors, employees, agents or affiliates, and any judge who presides over the Litigation.

(Ex. A at ¶1.24). The "Settlement Class Period" is defined as the period of time between June 20, 2011, and the present. (Id. at ¶1.27).

The Court is endowed with the authority to certify a class for settlement purposes at any time before a final decision on the merits. Fed. R. Civ. Proc. 23(c)(1)(C); *Vizcaino v. U.S. Dist. Court for Western Dist. Of Washington*, 173 F.3d 713, 721 (9th Cir. 1999). The requested certification order should be granted because it is appropriate to provide monetary, as well as injunctive relief to Class Members who were exposed to the pricing practices complained of in Plaintiffs' Third Amended Complaint ("TAC").

Plaintiffs' TAC alleges that Plaintiffs purchased multiple products from ROSS stores in reliance on the Defendant's "Compare At" reference prices and the supposed savings which Defendant deceptively represented that Plaintiffs would receive, which they would not otherwise have purchased but for Defendant's false, deceptive and/or misleading advertising. (TAC at ¶¶ 136-176). It further alleges that Defendant's representations were likely to mislead reasonable consumers into believing that Defendant's prices were significantly lower than the prices consumers would pay for the identical products at other retailers, and that Class Members would enjoy significant savings by purchasing those products from Defendant. (TAC at ¶¶ 52-56).

-11-

The purpose of class certification is simply a procedural tool for the Court "to select the metho[d] best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 460, 133 S.Ct. 1184, 1191, 185 L.Ed.2d 308 (2013). This action should be certified to proceed as a class action because: (1) the claims of the named Plaintiffs and all other Class Members arise from Defendant's common national price advertising; (2) the issues to be tried in this case – whether Defendant's comparative reference price claims are material and likely to deceive a reasonable consumer – are common to all Class Members; and, (3) the injunctive and monetary relief provided by the Settlement here will benefit all Class Members.

While the Settlement Class must satisfy the requirements of Rule 23, those requirements are easily met here. FRCP 23 provides that "[o]ne or more members of a class may sue . . . as representative parties on behalf of all members" if the prerequisites of FRCP 23(a), and the requirements of at least one subsection of FRCP 23(b), are satisfied. The prerequisites of FRCP 23(a) include that: (1) the class be "so numerous that joinder of all members is impracticable;" (2) "there are questions of law or fact common to the class;" (3) the claims of the class representatives are "typical" of the claims of the other class members; and, (4) the class representatives and their counsel will fairly and adequately represent the interests of the class.

**A.    <u>Numerosity</u>:**

"In the Ninth Circuit, numerosity is presumed to be satisfied when the class exceeds 40 members." *Alvidres v. Countrywide Financial Corp.*, 2008 WL 1766927 (C.D. Cal. 2008), at *2. The Settlement Class here includes approximately 9,000,000 members and therefore satisfies Rule 23(a)(1)'s numerosity requirement.

**B.    <u>Commonality</u>:**

Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common "questions of law or fact." *Stockwell v. City & County of San Francisco*, 749 F.3d 1107 (9th Cir. 2014). Rule 23(a)(2) requires only "a single significant question of law or fact." *Abdullah v. U.S. Sec.*

-12-

1  *Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir.2013).  Further, a common contention need not

2  be one that "will be answered, on the merits, in favor of the class." *Amgen*, 133 S.Ct. at

3  1191.  Instead, it must only be of such a nature that it is capable of classwide resolution.

4  Rule 23(a)(2)'s commonality requirement is construed permissively.  *Alvidres*, 2008 WL

5  1766927 at *2 ("There is no requirement that all questions of fact and law be the same for

6  all members of the class.").

7       The crux of Plaintiffs' claims here is that Defendant's reference price advertising

8  was deceptive which was common and consistent throughout each Ross store in the

9  United States.  The common questions of whether Defendant used Compare At price tags

10 in each of its US stores, and whether Defendant's price comparison advertising resulted in

11 deceptive price comparisons that were likely to mislead a reasonable consumer, are

12 common to all Class Members.

13      In this case, all putative Class Members purchased merchandise from Defendant at

14 one or more of Defendant's stores in the United States at some time during the Class

15 Period.  All putative Class Members were exposed to Defendant's comparative price

16 advertising.  All putative Class Members purchased one or more products from Defendant

17 which were each advertised with a comparative reference price which Plaintiffs allege

18 were deceptive.  Plaintiffs' claims and those of all other Class Members arise out of a

19 common course of conduct by Defendant, i.e., Defendant's comparative reference price

20 advertising described in Plaintiffs' TAC.  Thus, Rule 23(a)(2)'s commonality requirement

21 is satisfied.

22 **C.    <u>Typicality</u>**:

23      FRCP 23(a)(3) requires that "the claims or defenses of the representative parties are

24 typical of the claims or defenses of the class."  The purpose of the typicality requirement

25 "is to assure that the interest of the named representative aligns with the interests of the

26 class." *Wolin v. Jaguar Land Rover North Am. LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010).

27 "The test of typicality is whether other members have the same or similar injury, whether

28 the action is based on conduct which is not unique to the named plaintiffs, and whether

-13-

other class members have been injured by the same course of conduct." *Id.* "Similar to commonality, the typicality requirement is a permissive standard." *Alvidres*, 2008 WL 1766927 at *2.

Here, Plaintiffs' claims are based on the same facts and same legal and remedial theories as the claims of the rest of the Class Members. All putative Class Members were exposed to the same allegedly deceptive advertising by the same Defendant. Thus, Plaintiffs' claims are typical of every other putative Class Member's claim and Rule 23(a)(3)'s typicality requirement is satisfied.

**D.    Adequacy:**

FRCP 23(a)(4) requires that class representatives and their counsel "fairly and adequately protect the interests of the class." A two-prong test is used to determine whether this standard is met: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011).

Here, Plaintiffs have no interests antagonistic to the interests of other Class Members, have diligently litigated this action on behalf of the Class, and have reached a settlement favorable to all Class Members equally. In addition, Plaintiffs' counsel are experienced class action attorneys, will continue to diligently prosecute this action on behalf of the Class, and will continue to commit the time and resources necessary to protect the interests of the Class. Here, there are no conflicts of interest between any Plaintiff and any other Settlement Class Member, and no competency issues with respect to Plaintiffs' counsel. Thus, Rule 23(a)(4)'s adequacy requirement is met here.

**E.    Rule 23(b)(3) Settlement Class:**

In *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620-21 (1997), the Supreme Court clarified the difference between certifying a litigation class under Fed. R. Civ. Proc. 23(a) and (b) and certifying a settlement class under Rule 23(e). In recognizing that "[s]ettlement is relevant to a class certification," the Supreme Court held that when

-14-

"[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems," because the proposal in a request to certify a class for settlement purposes "is that there be no trial." *Id.* at 620.[1]

The focus here is "whether [the] proposed class has sufficient unity so that absent members can fairly be bound by decisions of [the] class representatives." *Id.* at 621. Rule 23(b)(3) requires that common questions predominate over individual questions. However, it is not necessary to show that each question will be answered in favor of the Class, but only that there is a common methodology for proving liability on behalf of the Class. *Amgen,* 133 S. Ct. at 1191.

"District courts in California routinely certify consumer class actions" involving allegations of false advertising and consumer fraud. *Tait v. BSH Home,* 2012 WL 6699247 at *12 (C.D. Cal. Dec. 20, 2012). In a similar false pricing case, the court in *Spann v. J.C. Penney Corp.,* 307 F.R.D. 508, 516 (C.D. Cal. 2015) found that "[t]his case is one of those routine cases." As in *Spann,* the overriding common question in this case is "whether defendant's [price-comparison] advertisements were likely to deceive a reasonable consumer." *Id.* Likewise, "the basic common question [here] – whether defendant's price comparison scheme generated false advertisements that deceived consumers – predominates." *Id.* at 529.

With respect to monetary relief, Plaintiffs must merely "present a likely method for determining class damages, though it is not necessary to show that their method will work with certainty at this time." *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 379 (N.D. Cal. 2010). Further, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.,* 716 F.3d

---

[1] Compare, *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581 (9th Cir. 2012) (differences in state consumer protection laws may preclude certification of nationwide *litigation* class), to *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ("differences between state consumer protection laws" do not preclude certification of a Rule 23(b)(3) nationwide *settlement* class).

-15-

510, 514 (9th Cir. 2013). Plaintiffs must simply show that the proposed monetary relief "stemmed from the defendant's actions that created the legal liability." *Id.* at 513.

Finally, the superiority requirement of Rule 23(b)(3) is satisfied here because the ultimate recovery by Settlement Class Members would be dwarfed by the cost of litigating on an individual basis, and any Member who wishes to opt out may do so pursuant to the Agreement. In this case, "each class member's claim for restitution involves a relatively small sum of money, and litigation costs would render individual prosecution of such claims prohibitive." *Spann*, 307 F.R.D. at 531.

**F.    Certification of a Nationwide Settlement Class**:

The Parties seek certification of a nationwide 23(b)(3) class for settlement purposes only. Although Plaintiffs' initial pleading and operative SAC sought certification of a California-only class, the Agreement reached between the parties is conditioned on a nationwide settlement and certification of a nationwide settlement class. (Exh. A at ¶2.4).

*Hanlon* provides that certification of a nationwide settlement class is proper where common factual issues predominate, and that "idiosyncratic differences" in state consumer protection laws will not preclude such certification. 150 F.3d at 1022-1023. Similarly, in *Amchem* the US Supreme Court directed that a "district court need not inquire whether the case, if tried, would present intractable management problems." 521 U.S. at 620. These two cases stand for the rule that when presented with a request to certify a nationwide settlement class district courts need not unnecessarily delve into whether application of the consumer protection laws of various states would create manageability problems or a predominance of individual issues if a case were tried, because in the settlement context the case will not be tried and any such concerns are mooted by the settlement.

Certification of a nationwide class for settlement purposes is appropriate here because common factual questions predominate and any differences in state consumer protection laws are trivial and do not negate the fairness and adequacy of the proposed Settlement. *Hanlon*; *see also, Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (when "one or more of the central issues in the action are common to the class and

-16-

1   can be said to predominate, the action may be considered proper under Rule 23(b)(3).").

2   First, common factual issues related to Defendant's liability predominate here including,

3   *inter alia*, Defendant's uniform use of the semantic phrase, "Compare At," on its price

4   tags in each Ross store throughout the US, Defendant's uniform interpretation of the

5   phrase "Compare At," how a hypothetical reasonable consumer would interpret that

6   phrase on a price tag, and whether the phrase is misleading, deceptive, or false. The only

7   possibly relevant differences in state laws are the statute of limitations (the longest of

8   which would date back 6 years to 2012), and the possible monetary and injunctive

9   remedies available.  However, individual issues of damages (i.e., possible monetary relief)

10  will not defeat certification. *Leyva*, 716 F.3d at 514.  And, no state's statute of limitations

11  would date back further than the proposed Settlement Class here.  Further, the proposed

12  Settlement provides common monetary relief to all Class Members.  Common injunctive

13  relief has also been obtained. Therefore, any actual differences in state laws in this case are

14  not relevant to, and should not defeat, certification of the proposed nationwide class.

15       Immediate relief under the proposed nationwide settlement here is the most

16  efficient means of enforcing the consumer protection laws of each state.  Any hypothetical

17  differences in the monetary relief available under different state laws are trivial.  In sum,

18  the proposed Settlement Class here satisfies the requirements of Rule 23(a), (b)(3), and (e),

19  the classwide monetary relief offered is both adequate and appropriate, and the proposed

20  Settlement Class should be certified as requested.

21  **V.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED:**

22       The Court must determine whether the proposed settlement is fair, reasonable, and

23  adequate. Fed. R. Civ. Proc. 23(e)(2).  However, there is a strong judicial policy that

24  favors settlements.  *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

25  "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred

26  means of dispute resolution." *Officers for Justice v. Civil Service Commission*, 688 F.2d

27  615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983).  The settlement approval

28  process typically involves two steps.  First, the Court must determine whether the

-17-

proposed settlement merits preliminary approval so that notice can be issued to class members and a final fairness hearing can be scheduled. *See e.g., Pereira v. Ralph's Grocery Co.*, 2010 WL 6510338, at *2 (C.D. Cal. Mar. 24, 2010) (noting that a full fairness analysis is unnecessary at the preliminary approval stage). Second, at the final approval stage, the Court makes a complete determination regarding fairness, reasonableness, and adequacy of the settlement and hears any objections of class members. *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. 2006).

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of *possible* approval . . . .' *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (emphasis added); *see also, Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original). The Court does not need to "specifically weigh[] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter." *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court need only evaluate whether the Settlement is "the product of an arms-length, non-collusive" negotiation. *Id.*

**A.     The Settlement is the Product of Informed, Arms-Length Negotiations:**

This case has been contentiously litigated from the start. (Caiafa Dec. at ¶29). The Settlement was reached after extensive written discovery, depositions, motions to compel, law and motion practice (including resolution of a motion to dismiss, Cert Motion and MSJ), and protracted settlement negotiations. (Id.). Both parties were represented by experienced class counsel, and Plaintiffs participated throughout the settlement process. (Id. at ¶31). Moreover, the parties did not discuss or negotiate Class Counsel's attorneys'

-18-

fees and costs, or Plaintiffs' proposed Class Representative Payments, until *after* all other material terms of the Settlement were reached. (Id.)

A settlement negotiated by experienced attorneys and reached with the assistance of an experienced mediator through a negotiating process supports a determination that the process was not collusive. *See e.g. Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (Settlement is product of arms-length negotiation if it is reached through "formal mediation sessions presided over by an experienced mediator."). The mediator in this action, Kyungah "Kay" Suk, is a well-respected Circuit Mediator for the Ninth Circuit Court of Appeals. Moreover, and at the time of negotiating the Settlement here, the Parties were fully versed in the relevant facts and law and were in a position to make an informed evaluation of "the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it[.]" *Rodriquez*, 563 F.3d at 965. The Settlement here is the product of arms-length negotiations and there is *no evidence* to suggest that it is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]" *Id.*

**B.** **The Amount Offered in Settlement is Fair and Reasonable**:

As the Ninth Circuit has noted, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625.

Here, the Class Settlement Amount of $4,854,000, combined with the injunctive relief, is substantial and falls well within a range of possible approval. This is particularly true here where this Court already granted summary judgment in favor of Defendant on all of Plaintiffs' claims. Even if Plaintiffs proved to be successful on appeal of this Court's decision, serious and substantial risks would remain, including the real and substantial risk

1    that Plaintiffs could have successfully proven liability at trial yet still recovered *nothing*

2    because the entitlement to and amount of monetary relief in this case are not certain.

3         While Plaintiffs believe that their liability case is strong, despite losing at the trial

4    court level, Defendant has consistently argued that they are not entitled to *any* monetary

5    relief because such relief must be measured by the difference between the amount paid

6    and value received which, Defendant argues, equals zero.  While Plaintiffs dispute this,

7    and have proposed other alternative measures, the fact and amount of monetary relief still

8    remain hotly contested and subject to the Court's discretion.  *Pulaski & Middlman, LLC v.*

9    *Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015).  Accordingly, there is considerable

10   uncertainty as to whether Plaintiffs could recover any monetary relief even if they were

11   able to prove liability at trial.  That is because, in addition to the inherent risk associated

12   with proving liability, Plaintiffs face the risk that it may be difficult to prove a legally and

13   factually supportable measure of damages or restitution.  Indeed, this has been perhaps the

14   most hotly disputed issue in this case, even more so than the question of liability.  See,

15   e.g., *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR (N.D. Cal. May 11,

16   2017) at *11-13 (dismissing plaintiffs' claims for monetary relief in deceptive price tag

17   case); *Chowning v. Kohl's Dept. Stores, Inc.*, No. 15-cv-008673-RGK (C.D. Cal.

18   March 15, 2016), aff'd in *Chowning v. Kohl's Dept. Stores, Inc.*, No. 16-56272 (9th

19   Cir. June 18, 2018) (same); *Sperling v. DSW, Inc.*, No. 16-55231 (9th Cir. Oct. 19,

20   2017) (affirming District Court's dismissal of deceptive price tag case).

21        The decision in *In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881 (Cal. App. 2015)

22   ("*Tobacco*"), illustrates this risk.  In *Tobacco*, the plaintiffs established liability on their

23   false advertising claims but the trial court declined to award *any* monetary relief because

24   the plaintiffs failed to prove that the value of the products they purchased was lower than

25   the pric they paid. *Id.* at 894.  Further, the court in *Tobacco* ordered the plaintiffs to pay

26   the *defendant's* litigation costs of nearly $800,000. *Id.*  The court of appeals affirmed.  *Id.*

27   This Court would likely follow the *Tobacco* ruling. *See, Dimidowich v. Bell & Howell*,

28

-20-

803 F.2d 1473, 1482 (9th Cir. 1986) ("Decisions by state intermediate appellate courts are data which are not to be disregarded by a federal court.").

Here, each Class Member received products with *some* value. It could therefore be argued that restitution should be limited to the difference between price paid and value received, which could conceivably result in no monetary recovery. *Id.* While Plaintiffs believe their case is distinguishable from *Tobacco*, and that alternative measures for monetary relief remain viable in this case, there can be no doubt that Defendant would have moved forward in the Circuit Court with its argument concerning Plaintiffs' entitlement to monetary relief if this case did not settle. Settlement negotiations in this case took place with the *Tobacco* decision in mind. (Caiafa Dec. at ¶32).

In evaluating the Settlement, it is appropriate to consider the amount that Settlement Class Members will actually recover. Here, Claimants will receive Merchandise Certificates, and the amount that they receive will depend on the number of Claims submitted and the fees and costs awarded by the Court. (Ex. A at ¶¶ 1.14, 3.1-3.2).

Assuming that Notice and Administration Costs equal CPT's estimate of $600,000, and assuming *arguendo* that the Court awards the full amount requested for Attorneys' Fees ($1,213,500), Costs ($50,000) and Enhancement Payments ($10,000), there will be $2,980,500 remaining for distribution to Claimants. (Caiafa Dec. at ¶36). From that, it is possible to calculate a range of expected benefits to Settlement Class Members based on estimated claim rates. (Id.).

For example, a 1% claim rate would provide a benefit of approximately $33.39 for each Claimant; a 2% claim rate would provide a benefit of approximately $16.70 per Claimant; and a 3% claim rate would provide a benefit of approximately $11.13. The percentage of class members who submit claims in consumer class settlements typically run in the range of 2% to 3%. *See, e.g., Spann*, 211 F.Supp.3d at 1257 (2.75% claim rate in deceptive price tag case); *In re Online DVD*, 779 F.3d 934 (3.4% claim rate).

Any evaluation of Plaintiffs' theoretical recovery must also consider the additional costs and delay of the appeal of this Court's judgment in favor of Defendant. Then,

-21-

should Plaintiffs be able to reverse this Court's decision, additional delays and costs of trial exist as well as the risk that Plaintiffs could prove liability yet still recover nothing. *See e.g., Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."); *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not . . . mean that the proposed settlement is grossly inadequate and should be disapproved.").

Defendant prevailed on its MSJ and Plaintiffs' Cert Motion was denied as moot. Even if Plaintiffs were able to reverse this Court's decision on appeal, recovering at trial would be speculative. The monetary amount recovered at trial, if any, could vary widely depending on a number of factors. And, if anything were recovered, it could take years to secure, as Defendant would undoubtedly appeal any adverse judgment. In comparison, the Settlement provides a fixed, immediate and substantial recovery of up $4.854 million, plus meaningful prospective remedial relief. The Settlement is therefore fair and reasonable, and certainly within the range of possible final approval.

**C.    The Settlement Does Not Improperly Grant Preferential Treatment to the Class Representatives:**

The Agreement authorizes Class Representative Payments for the named Plaintiffs in an amount to be determined by the Court, but not to exceed $5,000 each. (Ex. A at ¶¶1.10, 3.1.4). Incentive awards typically range from $2,000 to $10,000. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). In evaluating incentive awards, the Court may consider whether there is a "significant disparity between the incentive award[] and the payments to the rest of the class members" such that it creates a conflict of interest. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). More importantly, however, are "the number of class representatives, the average incentive award amount, and the proportion of the total

-22-

settlement that is spent on incentive awards." *In re Online DVD*, 779 F.3d at 947. Finally, the Court must evaluate whether the incentive award was conditioned on the class representatives' approval and support of the Settlement. *Radcliffe*, 715 F.3d at 1161. Here, it was not. (Caiafa Dec. at ¶ 35).

The $5,000 incentive awards requested here are justified and do not rise to the level of unduly preferential treatment. Indeed, courts have approved similar or greater disparities between incentive awards and individual class member payments. *See e.g. Fulford v. Logitech, Inc.*, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding incentive award payments ranging from $5,000 to $40,000).

Here, there are only two class representatives who seek approximately one-fifth of 1% (0.2%) of the $4.854 million total settlement amount. Each of the two Plaintiffs were significantly involved in this action from the outset, including responding to extensive discovery, and preparing for and sitting for all-day depositions. This amount is reasonable considering how small the award is in relation to the full amount of the settlement fund. *See, In re Online DVD*, 779 F.3d at 947-948 (approving incentive awards that "ma[d]e up a mere .17% of the total settlement fund."). Finally, Plaintiffs did not condition their approval and support of the Settlement on either of them receiving an incentive award. (Caiafa Dec. at ¶35). Accordingly, Plaintiffs' interests do not conflict with or diverge from the interests of the Settlement Class. *Radcliffe*, 715 F.3d at 1161.

**D.     The Proposed Settlement Has No Obvious Deficiencies:**

The Settlement makes available a large amount of monetary relief, plus remedial relief, for the benefit of Settlement Class Members. It is structured to be consistent with *In re Online DVD*, where settlement proceeds were allocated on a pro rata basis, regardless of specific amounts spent by each claimant. 779 F.3d at 941. Examination of the Settlement here reveals no obvious defects.

**VI.     THE PROPOSED NOTICE SHOULD BE APPROVED:**

Rule 23(e) requires that the notice to the Class describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

-23-

forward and be heard." *In re Online DVD*, at 946; *see also, Rodriguez*, 563 F.3d at 962
(notice is adequate when it describes "the aggregate amount of the settlement fund and the
plan for allocation."). It "does not require detailed analysis of the statutes or causes of
action forming the basis for the plaintiff class's claims, and it does not require an estimate
of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th
Cir. 2012).

**A.     The Proposed Form of Notice is Accurate and Adequately Informs Class
        Members of Their Rights**:

The Website Notice, Email Notice, and Publication Notice, attached respectively as
Exhibits 2, 3, and 4 to the Agreement, as well as the he Notice program described in detail
in Section III (B)(4) hereinabove, are accurate, adequate and satisfy due process. *In re
Online DVD*, 779 F.3d at 946.

**B.     The Proposed Method of Notice Provides for the Best Notice Practicable:**

Rule 23(c)(2) requires the Court to direct to Class Members the "best notice
practicable" under the circumstances, including "individual notice to all members who can
be identified through reasonable effort." *Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir.
1994). In summary, individual notice through email, publication, internet banner ads, and
targeted social media notice, is "clearly the 'best notice practicable'" where the names and
physical addresses of Class Members are not easily ascertainable, if ascertainable at al.
*See e.g., Keirsey v. eBay, Inc.,* 2014 WL 644697, at *1 (N.D. Cal. Feb. 14, 2014).

Here, CPT will email direct summary notification of the settlement to 3 million
potential Settlement Class Members. (Green, Dec., ¶s 10 & 14). CPT will include links
to the settlement website in the email notice to encourage Settlement Class Members
to access the long form notice, as well as the other Settlement documents, to learn
more about the proposed Settlement. (Green Dec., Exhibit B, Sections 2 & 3; Id.).

CPT will create and manage a digital outreach campaign which will include
programmable digital banner advertising utilizing 37,414,710 impressions over an 8-week
period (72.09% estimated reach to target audience), reaching Class Members through

-24-

MEMO. OF POINTS & AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1  applicable demographic websites, Google Display Network and social media networks

2  (i.e. Facebook Exchange). (Green Dec. ¶10, Exhibit B, Section 5).

3       CPT will cause the Publication Notice to be printed in the national edition of People

4  Magazine covering 1/3 of a full page, having a circulation of 3,475,000. CPT anticipates

5  that the People Magazine notice will reach approximately 18% of the target audience.

6  (Green Dec. ¶10, Exhibit B, Section 4).

7       Finally, a Website Notice will be posted on the dedicated Settlement Website.

8       In sum, the Parties have proposed a comprehensive notice campaign that is

9  reasonably calculated to provide the best notice practicable, and that is consistent with

10  court approved notice programs in similar matters. (Green Dec. at ¶¶ 9-12, 27). The

11  Notice program here satisfies any due process concerns and therefore should be approved.

12  **VII.**  **CONCLUSION:**

13       The parties have negotiated a fair and valuable Settlement that provides Settlement

14  Class Members with ample financial compensation and important prospective remedial

15  relief. None of this would have happened but for the use of class action procedures,

16  dedicated and informed Class Representatives, and experienced Class Counsel. Plaintiffs

17  respectfully request that the Court certify the Settlement Class as requested, preliminarily

18  approve the Settlement, direct that Notice be provided to Settlement Class Members, and

19  set a Final Approval hearing date on April 15, 2019, or as soon thereafter as the Court's

20  calendar permits.

21

22  Dated: September 27, 2018     Respectfully submitted,
                                   DOUGLAS CAIAFA, A PROF. LAW CORP.

23

24                           By: */s/ Douglas Caiafa*

25                              Douglas Caiafa
                            Attorneys for Plaintiffs
                            JOSE JACOBO, et al.

26

27

28

MEMO. OF POINTS & AUTH. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS